**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **INTERSECTIONS INC.** ) | |
| **and** ) | |
| **NET ENFORCERS, INC.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CASE NO. 1:09-cv-00597-LMB-TCB** |
| ) | |
| **JOSEPH C. LOOMIS** ) | |
| **and** ) | |
| **JENNI M. LOOMIS,** ) | |
| ) | |
| **Defendants**. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

This memorandum is submitted in support of Defendants' Motion to Dismiss. Defendants Joseph C. Loomis and Jenni M. Loomis each move to dismiss the Complaint in part. Defendant Joseph C. Loomis moves to dismiss Count I (Securities Fraud), Count III (Fraud), Count IV (Tortious Interference) and Count VII (Conspiracy). In addition, Defendant Joseph C. Loomis moves to dismiss any claim for rescission arising from any count of the Complaint and to dismiss and compel arbitration of the tax related damage claims. Defendant Jenni M. Loomis moves to dismiss the two counts in which she is named as a defendant, Count III (Fraud) and Count VII (Conspiracy). (Defendant Joseph C. Loomis is referred to hereinafter as "Loomis." Defendant Jenni M. Loomis is referred to as "Jenni Loomis").

**ARGUMENT**

Under Federal Rule of Civil Procedure 12(b)(6), a Court may dismiss a Complaint for "failure to state a claim upon which relief can be granted." Dismissal is warranted where the

facts alleged by a plaintiff, if assumed true, would not entitle a plaintiff to any legal relief.  The Rule is designed to test "the legal sufficiency of the complaint."  *Brooks v. Arthur*, 611 F. Supp. 2d 592, 596 (W.D. Va. 2009).  This Motion to Dismiss assumes that all facts alleged in the Complaint are true and that the documents attached thereto are full and complete.  Moreover, the Exhibits to the Complaint, which are incorporated in the Complaint by reference, are deemed full and complete.[1]

Under Federal Rule of Civil Procedure 8(a)(2), a claim must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  In order to withstand a motion to dismiss, however, a Complaint must contain more than "labels and conclusions and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Further, the factual allegations pled in support of a claim must be sufficient to make the claim "plausible on its face."  *Brooks*, 611 F. Supp. 2d at 597 (quoting *Twombly*, 550 U.S. at 570).

In its recent decision in *Ashcroft v. Iqbal*, the Supreme Court explained its decision in *Twombly* and stated two principles underlying whether to grant a motion to dismiss: first, the rule that a court accept as true all allegations in a complaint applies only to factual allegations and not

---

[1]    In considering a Motion to Dismiss, the court must consider all well-plead, factual allegations put forth in the Complaint. *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).   The court may also consider "attached exhibits and documents incorporated by reference." *Kittrell v. Johnson*, No. 2:08cv00603, 2009 WL 1616573, at *4 (E.D.Va. June 9, 2009) (citing *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 31 (4th Cir.1985)). This Court has also explicitly held that if a plaintiff fails to include a pertinent document as part of the Complaint, that document may be attached to a motion to dismiss and the Court need not convert the motion to one for summary judgment.  *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995). "This ruling encompasses not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Id.*

to legal conclusions, and second that a complaint must include a plausible claim in order to survive motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

Under *Iqbal*, a court may begin to assess a claim by identifying legal conclusions that are not entitled to be presumed true. *Id*. at 1950. Allegations that restate elements of a claim "are conclusory and not entitled to be assumed true." *Id*. at 1951. A court should then assume that properly pleaded factual allegations are true and determine whether those facts make an entitlement to relief plausible. *Id*. at 1950. In order to be considered facially plausible, a claim must be sufficiently supported to allow the court to infer reasonably that the defendant is liable for the alleged conduct. *Id.* at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

The Complaint here relies heavily on theories of fraud, and much of it is subject not only to the requirements of Rule 8(a)(2), but also to Rule 9(b) which requires particularity when pleading fraud. Pleading the bare elements of fraud is insufficient to survive a motion to dismiss.

The counts identified in this Motion will not survive scrutiny. An examination of the particular allegations of fact reveals that the Complaint is improperly conclusive and summary. Moreover, with regard to the merits of the causes of action, the Complaint is insufficient.

## I.    COUNT I ALLEGING SECURITIES FRAUD SHOULD BE DISMISSED BECAUSE IT IS LEGALLY INSUFFICIENT.

Plaintiffs' claim against Joseph Loomis for securities fraud violations under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 fails for a multitude of reasons. First, Plaintiffs have failed to plead facts constituting the alleged fraud, including the alleged falsity of the representations, with the particularity required by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 9(b). Second, Plaintiffs have failed to plead facts giving rise

to a "strong inference" of scienter, as required by the PSLRA and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2504 (2007). Third, many of Plaintiffs' allegations of misconduct are couched as "group pleadings," a form of pleading rejected by this Circuit. Finally, Plaintiffs have failed to state with sufficient specificity that they have suffered a loss as a result of its reliance on Loomis' alleged misrepresentations. Accordingly, Plaintiffs have failed to state a valid § 10(b) claim and it must be dismissed under Rule 12(b)(6).[2]

A.    **Plaintiffs' § 10(b) Claim is Governed by the Heightened Pleading Requirements of Rule 9(b) and the Private Securities Litigation Reform Act**

To state a valid § 10(b) claim against Loomis, Plaintiffs must allege that (1) in connection with the sale of a security (2) Loomis made a material misrepresentation or omission with (3) scienter (4) upon which Plaintiffs relied (5) causing it to suffer (6) economic loss. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,* 552 U.S. 148, 128 S. Ct. 761, 768 (2008) (enumerating the six elements of a § 10(b) claim); *In re Mutual Funds Inv. Litig.*, 566 F.3d 111, 119 (4th Cir. 2009) (adopting the six elements enumerated in *Stoneridge*). As detailed below, Plaintiffs have failed to plead sufficiently the second, third, and sixth elements.

Standard notice pleading does not govern a § 10(b) claim. Rather, its elements must be pled with the particularity required by the PSLRA and Rule 9(b).[3] *See Mutual Funds*, 566 F.3d

---

[2]    Plaintiffs' § 10(b) claim appears to be made against Loomis only, and not his sister and co-defendant, Jenni Loomis. To the extent that Plaintiffs are asserting a securities fraud claim against Jenni Loomis, it would warrant dismissal, as there is no aiding and abetting liability under § 10(b) and Plaintiffs have not alleged that any of the allegedly false representations were made by Jenni. *See Stoneridge Inv. Partners, LLC v. Scientific Atlanta,* 552 U.S. 148, 128 S. Ct. 761, 769 (2008) (holding that the "§ 10(b) implied private right of action does not extend to aiders and abettors. The conduct of a secondary actor must satisfy each of the elements or preconditions for liability").

[3]    Rule 9(b) provides that in "all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."

at 119-20 (indicating that the PSLRA is applicable to the elements of misrepresentation and scienter and Rule 9(b) is applicable to the elements of reliance and loss causation). Where, as here, a § 10(b) claim is based upon alleged misrepresentations or omissions, the PSLRA mandates that the complaint specify "each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The PSLRA additionally provides that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Mutual Funds*, 566 F.3d at 120 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Moreover, as with any other claim, "conclusory allegations regarding the legal effect of the facts alleged need not be accepted." *In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 766 (E.D. Va. 2007) (citation omitted).

With respect to the element of scienter, the PSLRA mandates that "the complaint shall, with respect to each act or omission alleged to violate [§ 10(b)], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). If either of the PSLRA's strict pleading requirements is not met, dismissal is mandatory. 15 U.S.C. § 78u-4(b)(3)(a).

### B.     The Alleged Misrepresentations

The allegations constituting Plaintiffs' § 10(b) claim cluster around the following four alleged misrepresentations:

> **(1)     The Alleged Misrepresentation Concerning NEI's Top 20 Customers:** Loomis is alleged to have provided a list of NEI's top 20 customers by revenue and represented in the Stock Purchase Agreement that Intersections entered into with

Loomis ("SPA") that none had terminated its contract with NEI or notified Loomis of its intent to terminate its contract with NEI. (Cmpt. ¶ 24). Plaintiffs allege that this representation is false because four of the listed customers had allegedly terminated their contracts and were no longer customers of NEI at Closing. (Cmpt. ¶¶ 8, 51).

**(2)**    **The Alleged Misrepresentation Concerning NEI's Financial Information:** Plaintiffs allege that Loomis represented in the SPA that the financial information concerning NEI provided to Intersections was complete and correct in all material respects, in accordance with the Books and Records of NEI, and presented fairly, in all material respects, the financial condition and operating results of NEI. (Cmpt. ¶ 23) (the "Financial Information Representation"). Plaintiffs allege that this representation was false and that in order to increase NEI's revenue, Defendants (a) agreed to continue to invoice Customer B and Customer C after these customers cancelled their contracts with NEI (Cmpt. ¶ 51); (b) both before and after closing, overcharged Customers A and F for services not rendered (Cmpt. ¶ 8, 52); (c) booked fake invoices for Customer F and upon information and belief, other companies; and (d) moved revenue around in Quickbooks by back dating entries pre-Closing (Cmpt. ¶¶ 8, 53).

**(3)**    **The Alleged Misrepresentation Concerning the Built-In Gains Tax (the "Built-In Gains Tax Representation"):** Plaintiffs allege Loomis agreed in the SPA that he would be responsible for and reimburse Intersections for the payment of any built-in gains tax triggered by Intersections' acquisition of NEI. (Cmpt. ¶¶ 8, 27, 54). Plaintiffs further allege Loomis represented that the built-in gains tax would not exceed $350,000. (Cmpt. ¶¶ 27, 54). However, Plaintiffs allege that Intersections paid $532,726 in built-in gains tax and has not been reimbursed by Loomis. (Cmpt. ¶¶ 27, 54).

**(4)**    **The Alleged Misrepresentation Concerning An Arizona Tax Return (the "Tax Return Representation"):** Plaintiffs allege that Loomis represented that NEI had prepared and filed all required tax returns. (Cmpt. ¶¶ 26, 55). Plaintiffs further allege that Loomis had not filed Arizona state taxes for NEI since opening an office in Arizona, and Plaintiffs paid in excess of $92,000 in back taxes and penalties to Arizona. (Cmpt. ¶¶ 8, 55). Plaintiffs allege that Loomis agreed to indemnify Intersections for any NEI tax liabilities for all taxable periods ending on or before the Closing date. (Cmpt. ¶ 26).[4]

---

[4]    In two places in their Complaint, Plaintiffs allege that Loomis represented to Intersections that NEI's revenue would continue to increase substantially after it was acquired by Intersections. (Cmpt. ¶¶ 2, 19). Plaintiffs do not include this representation in the section of the Complaint in which they purport to list Loomis' alleged misrepresentations. Even if Plaintiffs had alleged that this forecast constituted a misrepresentation of material fact, this forecast is not actionable. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 626 (1st Cir. 1996)("Forecasts are not guarantees of, or insurance policies for, a firm's future performance, nor are they understood as such by reasonable investors."); *Raab v. General Physics Corp.*, 4 F.3d 286, 290

**C.      The Alleged Misrepresentations Suffer from a Multitude of Pleadings Failures and Do Not Satisfy the Requisite Pleading Requirements**

The allegations surrounding the four alleged misrepresentations suffer from a multitude of pleading failures, including the failure to plead with any degree of particularity the facts constituting the alleged fraud, including the falsity of the alleged misrepresentations, or facts giving rise to a "strong inference" that Loomis acted with scienter.

**1.      Plaintiffs Have Failed to Allege the Particularities of the Alleged Financial Misconduct Much Less that the Financial Information Provided by Loomis was False**

As noted above, where, as here, a § 10(b) claim is based upon an alleged misrepresentation, the PSLRA mandates the complaint specify "each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiffs have not pled with particularity the reasons why the Financial Information Representation is misleading.

First, the allegation that after Customers B and C cancelled their contracts with NEI, Defendants continued to bill them as well as booked the revenue from Customer B's billings through Closing (Cmpt. ¶ 51) is not pled with any particularity. Much less with sufficient particularity to indicate that the Financial Information Representation was false. Plaintiffs do not specify (1) the amount that the customers were invoiced; (2) the date the customers were invoiced; (3) the goods or services for which they were invoiced; (4) whether they were invoiced for goods or services received prior to their cancellation of their respective contracts; (5) whether the invoicing after the cancellation of the contracts was or was not permitted under

_____

(4th Cir. 1993) ("projections of future performance not worded as guarantees are generally not actionable under the federal securities laws")(citations omitted); *In re Visual Networks, Inc. Sec. Litig.*, 217 F. Supp. 2d 662, 667 (D. Md. 2002) ("Defendants' prediction that revenues would grow by 50% in 2000 and 2001" are "predictions . . . about future growth" and therefore immaterial) (citation omitted).

the contracts; (6) whether the invoiced amounts were paid; and (7) whether the "booked" revenue appeared in the financial information provided to Plaintiffs prior to Closing, and if so, whether its addition to NEI's revenue figures would be sufficient to constitute a material misstatement. Although Plaintiffs attempt to create the impression that Defendants' invoicing of Customers B and C was improper, they nowhere allege that NEI's actions were improper under the contracts with these customers or that either customer objected to the billing.

Similar pleading failures pervade Plaintiffs' allegations of overcharging and double-billing. (Cmpt. ¶¶ 8, 52). In particular, Plaintiffs do not allege the dates or amounts of the alleged improper billing. Plaintiffs also allege that the practice occurred both before and *after* closing. Clearly, Intersections cannot allege that it entered in the SPA in reliance on any of Loomis' post-closing actions because they obviously had not occurred at the time the transaction closed. However, Plaintiffs do not specify how much, if any, of the alleged $100,000 in "overcharges" appeared on the financial information Intersections received from Loomis prior to closing. Plaintiffs do not allege that this amount—whatever it may be—was at all material to a potential $20 million dollar transaction.[5] They do not allege that any customer ever objected to the alleged billings or refused to pay them. They do not allege that the billings were not, in fact, correctly classified as revenue. They do not allege that the billings were improper under the customers' contracts. Nor do they allege that the $100,000 in "overcharges" were not actually received by NEI.

---

[5] A fact is considered material "if there is a substantial likelihood that it would have assumed actual significance in the deliberations of a reasonable investor; that is, the disclosure of the omitted statement or revelation of the true circumstances would have been viewed by the reasonable investor as having significantly altered the total mix of available information." *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004).

The last alleged reason that Plaintiffs adduce for believing the Financial Information Representation is false or misleading is that Defendants allegedly "booked fake invoices for Customer F and, upon information and belief, other companies, and moved revenue around in Quickbooks by back dating entries pre-Closing…" (Cmpt. ¶¶ 8, 53).  However, Plaintiffs provide no factual basis for this exceedingly vague and conclusory allegation.  Plaintiffs do not even identify the "other companies" to which they are referring or indicate when such alleged backdating occurred, the number or amount of invoices backdated, or the amount of revenue "moved around."  Since this allegation is made on information and belief, the PSLRA requires Plaintiffs to "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Plaintiffs fail to allege any facts, much less with particularity, on which they base their belief that Defendants booked fake invoices and moved around revenue is formed.

Plaintiffs' failure to plead the aforementioned information is particularly inexcusable here.  Unlike other § 10(b) cases in which plaintiffs have limited or no access to the financial records of a company prior to discovery, Plaintiffs presumably have had full access to NEI's financial books and records and customer contracts since acquiring NEI in 2007.  Nevertheless, they have not alleged the basic facts discussed above, all of which would be easily obtainable from the materials in their possession. This suggests that Plaintiffs' *failure* to plead the requisite facts may in fact be an *inability* to plead such facts.    Because Plaintiffs have failed to plead with sufficient particularity that any of the financial information provided by Loomis was inaccurate or misleading, it has not pled that the Financial Information Representation was false or misleading.

## 2. Plaintiffs Have Failed to Plead Facts with Particularity that Give Rise to a Strong Inference of Scienter

Pursuant to the PSLRA, Plaintiffs must state with particularity facts giving rise to a "strong inference" that Loomis acted with the required state of mind. 15 U.S.C. § 78u-4(b)(2); *Public Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 306 (4th Cir. 2009). Under Fourth Circuit law, scienter may be pled by pleading facts with particularity that give rise to a strong inference of either "intentional misconduct" or "such severe recklessness that the danger of misleading investors was either known to the defendant or so obvious that the defendant must have been aware of it." *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 623 (4th Cir. 2008) (citations omitted). The mental state of severe recklessness, which is considered "a slightly lesser species of intentional misconduct," does not "lower the bar much below intentional fraud." *BearingPoint,* 525 F. Supp. 2d at 767 (citations omitted).

The "strong inference" of scienter required by the PSLRA is not satisfied by a merely plausible or reasonable inference; rather, the inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 127 S. Ct. at 2504. Accordingly, a § 10(b) claim cannot survive a motion to dismiss unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2510.

### (i) Plaintiffs Have Not Alleged Facts Giving Rise to a Strong Inference of Scienter with Respect to The Built-In Gains Tax Representation and Tax Return Representation

There are no allegations that even remotely suggest Loomis knew that (a) an Arizona tax return was required to be, but had not been, filed or (b) the amount of built-in tax gains would exceed $350,000. This counts against an inference of scienter. *See Tellabs*, 127 S. Ct. at 2511 (holding that a pleading omission "count[s] against inferring scienter," because "plaintiffs must

10

state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").  This pleading failure is also fatal under Rule 9(b), as Plaintiffs must allege both that Loomis knew the statements were false and the facts that support such an allegation.  *See Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.,* 432 F. Supp. 2d 571, 579 (E.D. Va. 2006) (holding that under Rule 9(b)'s specificity requirements "plaintiffs must plead specific facts concerning, for example, when each defendant ... learned that a statement was false, how that defendant learned that the statement was false, and the particular document or other source of information from which the defendant came to know that the statement was false").  Additionally, the fact that Loomis allegedly agreed to be responsible for and reimburse Plaintiffs for any built-in tax gains and to indemnify Plaintiffs for any outstanding NEI tax liability, such as the taxes due to Arizona, strongly militates against a finding of scienter. Allegedly, in agreeing to assume responsibility for and indemnify Plaintiffs against these tax liabilities, Loomis agreed to bear all tax liability risk should the statements turn out to be untrue. Accordingly, these two alleged representations, even if false, provide no basis for an inference of scienter, much less a strong inference of scienter.

Loomis' estimation of the amount of built-in gains tax likely to be assessed as a result of the transaction is also subject to dismissal because it is a non-actionable statement of opinion. Only in limited circumstances are statements of opinion actionable in a securities fraud case.  *See Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004)("[I]n a securities fraud case, a statement of opinion may be a false factual statement if the statement is false, disbelieved by its maker, and related to matters of fact which can be verified by objective evidence."). Specifically, in order to plead that an opinion constitutes a false factual statement, "the complaint must allege that the opinion expressed was different from the opinion actually held by the

speaker." *Id.* Here, there is no allegation that Loomis actually held a different opinion regarding the built-in gains tax. Accordingly, this opinion cannot be considered a false statement, and thus cannot serve as a predicate for a claim of securities fraud.

> (ii)     *Plaintiffs Have Not Alleged Facts Giving Rise to a Strong Inference of Scienter with Respect to the Financial Information Representation*

With respect to the Financial Information Representation, the fact that Loomis is alleged to have represented and warranted in the SPA that the financial information provided to Intersections was complete and correct in all material respects, and presented an accurate picture of the financial condition of NEI, does not, in and of itself, give rise to an inference of scienter, even if, contrary to fact, Plaintiffs had pled adequately the falsity of this representation. As this court has held in the context of financial statements certified pursuant to Sarbanes-Oxley, the "fact that a corporate officer certified financial statements later proved to be erroneous does not, in and of itself, give rise to an inference of scienter." *Bearingpoint*, 525 F. Supp. 2d at 773. Rather, little weight is ascribed to such certifications unless a plaintiff has alleged other "facts establishing that the signor recklessly ignored red flags that the attested-to financial statements contained material falsities." *Id.* As discussed above, Plaintiffs failed to plead with particularity that any of the actions that Loomis is alleged to have engaged in rendered the financial information false or misleading. Accordingly, Plaintiffs have failed to plead any "red flags" that Loomis ignored in warranting the accuracy of the financial information. Therefore, the alleged fact that Loomis warranted the accuracy of the financial information cannot serve as a basis for inferring scienter, even if this information contained material that happened to be false.

Additionally, Plaintiffs nowhere plead facts with particularity that would suggest that Loomis ever had knowledge that Customers A and F were being over billed. While Plaintiffs allege in conclusory fashion that Defendants "knowingly and willfully" overcharged two of

NEI's customers (Cmpt. ¶ 52), conclusory allegations of "knowing" or "reckless" conduct are insufficient to make the requisite showing of scienter.  *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 714-15 (E.D. Va. 2003).  Plaintiffs do not even plead in conclusory fashion that he had knowledge of the alleged overcharging *prior* to Closing.  Accordingly, even if this practice took place and rendered the financial information provided by Loomis to Intersections materially misleading, there is simply no well-pleaded allegation that Loomis had knowledge that the financial information was misleading at the time he certified its accuracy.

> (iii)    *Plaintiffs Have Failed to Plead Facts With Particularity That Would Allow the Top Customer Allegations to Give Rise to a Strong Inference of Scienter*

The final alleged misrepresentation—the Top 20 Customers Representation—alleges that Loomis provided a list of NEI's top 20 customers by revenue and represented in the SPA that none had terminated its contract with NEI or notified Loomis of its intent to terminate its contract with NEI.  (Cmpt. ¶ 24).  Plaintiffs allege this representation was false because four of the listed customers had terminated their contracts and were no longer customers of NEI before Closing.  (Cmpt. ¶¶ 8, 51).  Plaintiffs further allege that email communications between Loomis and his sister show that Loomis knew Customer B had cancelled its contract prior to Closing. (Cmpt. ¶ 51).

This alledged misrepresentation has similarly not been pled with sufficient particularity to support an inference of scienter.  In particular, other than Customer B, Plaintiffs have not alleged that Loomis knew that any of the other three customers had cancelled their contract prior to Closing.  Nor has Plaintiffs pled any facts that would suggest that Loomis should have known about such alleged cancellations.  With respect to Customer B, although Plaintiffs have pled that Loomis had knowledge that Customer B cancelled its contract, Plaintiffs have not pled with particularity the facts underlying this claim.  Instead, they simply reference emails, the dates and

particular contents of which they do not plead, and allege that these emails "show" that Loomis had knowledge that Customer B cancelled its contract with NEI prior to Closing. (Cmpt. ¶ 51). There is no attempt made to explain how these emails "show" that Loomis had knowledge of Customer B's contract cancellation. The PSLRA requires more: a plaintiff *must* "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Accordingly, because Plaintiffs have not pled with particularity Loomis' alleged knowledge of Customer's B's contract cancellation, it cannot, either alone or in combination with other allegations, give rise to a strong inference of scienter.

*(iv)    Plaintiffs' Allegations of Motive and Opportunity Are Insufficient to Give Rise to a Strong Inference of Scienter*

In numerous places in the Complaint, Plaintiffs allege in conclusory fashion that Loomis made false representations to induce Intersections to pay more for NEI than it was worth so that Loomis could realize more gains. (Cmpt. ¶¶ 8, 50-53). These allegations of motive, however, are insufficient to give rise to a strong inference of scienter. Nearly every seller of a company or business could be alleged to have the motive that Plaintiffs allege Loomis had, *i.e.*, to make as much profit from the transaction as possible. However, as the Fourth Circuit explained in a similar context: "allowing a plaintiff to prove a motive to defraud by simply alleging a corporate defendant's desire to retain his position with its attendant salary, or realize gains on company stock, would force the directors of virtually every company to defend securities fraud actions every time that company effected a merger or acquisition. Because the stockholders' allegations pertain to motivations common to *every corporate merger*, those allegations cannot demonstrate scienter." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 623 (4th Cir. 1999) (emphasis added and citations omitted). So too here. The motives that Plaintiffs allege of Loomis could be ascribed to any seller of a business. Accordingly, formulaic allegations that Loomis was motivated to

14

make false representations by the prospect of greater gains are insufficient to give rise to an inference of scienter, let alone the required strong inference.

### D. Plaintiffs' Group Pleadings Fail to Satisfy the Particularity Requirements of the PSLRA and Rule 9(b)

In addition to the multitude of pleading failures detailed above, Plaintiffs' pleadings also violate the Fourth Circuit's bar on group pleading. *See Bearingpoint*, 525 F. Supp. 2d at 767 (discussing the Fourth Circuit's rejection of the group pleading doctrine). In rejecting the so-called group pleading doctrine, by which a plaintiff may allege scienter generally against a group of defendants, the Fourth Circuit requires a plaintiff to "specifically allege scienter on the part of each individual defendant." *Id.* Accordingly, a plaintiff must "specify[] which defendant committed which wrong" by "sett[ing] forth with particularity each defendant's culpable conduct." *In re Cable & Wireless, PLC*, 321 F. Supp. 2d 749, 773 (E.D. Va. 2004) (citation omitted). *See also Iron Workers*, 432 F. Supp. 2d at 579 (holding that under Rule 9(b) "[g]rouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity"); *In re Cable & Wireless*, 321 F. Supp. 2d at 773 ("[T]he Fourth Circuit, as well as various district courts within the Fourth Circuit, have held that group pleading goes against the grain of the particularity requirement of both the PSLRA and Fed.R.Civ.P. 9(b)."). The rationale for this requirement is manifest: Because group pleading "is insufficient either to provide a defendant with fair notice of the claim against him or to protect a defendant from harm to his reputation or goodwill … the burden rests on the plaintiffs to enable a particular defendant to determine with what it is charged." *In re Cable & Wireless*, 321 F. Supp. 2d at 773 (quotations and citations omitted).

In pleading their securities fraud claim, Plaintiffs allege that Loomis (1) "directly engaged in a common plan, scheme, and unlawful course of conduct, as described above,

pursuant to which he knowingly and recklessly engaged in acts, practices, and courses of business, as described above, which operated as a fraud and deceit upon Intersections," and (2) "made various deceptive and untrue statements of material facts, as described above." (Cmpt. ¶ 59). When one examines the "as described above" pleadings that underlie these allegations, it is clear that Plaintiffs rely on the very "group pleadings" rejected by this Circuit: "*Defendants* continued to bill Customer C thereafter…"; "*Defendants* knowingly and willfully overcharged NEI's top two revenue generating customers…"; "*Defendants* billed the companies…"; "*Defendants* double billed these customers…"; "*Defendants* booked fake invoices…"; and "Intersections relied upon *Defendants'* material misrepresentations…." (Cmpt. ¶¶ 51-53, 56) (emphasis added). These allegations make no attempt to specify which particular defendant committed which wrong, nor do they set forth with particularity each defendant's culpable conduct. Instead, they simply allege a variety of misconduct allegedly engaged in by "Defendants," without any attempt to specify the who, what, when, where, why, and how of their amorphous claims. This is plainly insufficient under the PSLRA and Rule 9(b).[6]

### E.    Plaintiffs Have Failed to Plead Loss Causation

To recover damages under § 10(b), "a plaintiff must allege and prove that the defendant's misrepresentation proximately caused the plaintiff's economic loss." *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 185 (4th Cir. 2007). A plaintiff cannot plead loss causation by simply alleging that it paid artificially inflated prices for a security and suffered damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 1634 (2005) (holding that an artificially

---

[6] Because the bar on group pleadings is grounded in Rule 9(b), the above discussion applies with equal force to Plaintiffs' Third Count for fraud against both Loomis and Jenni Loomis. The "group pleading" failures are even more apparent in that count, as each of Paragraphs 70, 71, and 72 begin by alleging "Defendants …" Accordingly, and in addition to the reasons enumerated in Section II below, Plaintiffs' Third Count for fraud should be dismissed.

inflated purchase price is not itself a relevant economic loss).  More is required.  In particular, a plaintiff must plead loss causation "with sufficient specificity to enable the court to evaluate whether the necessary causal link exists" between the material representation and the loss suffered.  *Hunter*, 477 F.3d at 186.  Plaintiffs have not pled loss causation with sufficient specificity.  In particular, Intersections has not alleged any "loss" beyond its purchase of allegedly overpriced NEI stock.

Intersections repeatedly alleges that it paid more for NEI's stock than it was worth. (Cmpt. ¶¶ 8, 50, 61).[7]  It links its allegedly overpriced purchase of NEI stock to its reliance on false financial and customer information concerning NEI provided by the Defendants (Cmpt. ¶¶ 8, 50, 61), and it alleges that it never would have purchased NEI's stock—or at least not at the price at which it did—if it had known that these representations were false.  (Cmpt. ¶¶ 9, 56, 61). In a final threadbare allegation, it asserts that it "suffered substantial economic loss as a direct result of the wrongs herein alleged."  (Cmpt. ¶ 62).  There is no further attempt to specify what this substantial economic loss was, or how it was directly caused by Defendants' wrongs.[8]

These thin allegations simply cannot satisfy Plaintiffs' burden of pleading facts with sufficient specificity to allow this court to evaluate whether a causal links exists between Defendants' alleged wrongs and Intersections' alleged losses.  In fact, this court has already found that loss allegations nearly identical to Plaintiffs' allegations fail to satisfy the pleading

---

[7]   Of note, although Plaintiffs allege that it overpaid for NEI, they nowhere allege how much NEI's stock was worth prior to Closing, after Closing, or currently.

[8]   Intersections admittedly alleges that it has paid over $600,000 in taxes allegedly owed by Loomis.  (Cmpt. ¶¶ 8, 27, 54-55).  However, as Plaintiffs' own allegations make clear, Loomis' alleged tax liability arises from principles of *contract*, not tort.  *See* Cmpt. ¶¶ 26-27 ("Loomis *agreed* to indemnify [Plaintiffs] for any NEI tax liabilities" and "Loomis also *agreed* that he would be responsible for any taxes incurred by reason of an election under Section 338(h)(10) of the Internal Revenue Code.") (emphasis added).  Accordingly, these are, at most, allegations of contract, not tort, damages.

requirements of loss causation.  *See BearingPoint.*, 525 F. Supp. 2d at 779 ("Plaintiff alleges that "[h]ad Lead Plaintiff and the other members of the class and the marketplace known of the true financial condition and business prospects of BearingPoint, which were not disclosed by defendants, Lead Plaintiff and other members of the Class would not have purchased or otherwise acquired their BearingPoint securities, or, if they had acquired such securities … they would not have done so at the *artificially inflated prices* which they paid. … This loss allegation fails under *Dura*, as it alleges only artificially inflated prices, not an actual economic loss proximately caused by any misrepresentation or omission on the part of any Defendant."). Likewise, Plaintiffs' allegations of loss causation fail under *Dura*.  Accordingly, Plaintiffs' § 10(b) claim against Loomis must be dismissed.

## II.    COUNT III ALLEGING FRAUD SHOULD BE DISMISSED BECAUSE IT IS LEGALLY INSUFFICIENT.

Plaintiffs' claim against Loomis and Jenni Loomis for fraud fails because it does not plead with particularity any facts which, if presumed true, would constitute fraud. To state a valid claim for fraud, Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Rule 9(b). This requires pleading the "time, place, and contents," of the allegedly fraudulent representations, "as well as the identity of the person making the misrepresentation and what he obtained thereby." *Arnlund v. Smith*, 210 F. Supp. 2d 755, 760 (E.D. Va. 2002) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Plaintiffs do not plead any facts in support of Count III beyond those provided for Count I, and as outlined above, Plaintiffs have failed to set forth sufficient facts, as required by Rule 9(b), to support either of these claims. Supra, I.C.1.

As discussed above, this Court has rejected the "group pleading doctrine," and explicitly held that "defendants cannot be grouped 'together without specif[ication of] which defendant

committed which wrong.'" *Arnlund*, 210 F. Supp. 2d at 760 (quoting *David F. Apple, M.D. Prof'l Corp. Pension Plan v. Prudential-Bache Sec., Inc.*, 820 F. Supp. 984, 987 (W.D.N.C. 1992) aff'd, 993 F.2d 228 (4th Cir. 1993)); *In re Cable & Wireless, PLC*, 321 F. Supp. 2d 749, 773-74 (E.D. Va. 2004). Throughout the Complaint, Plaintiffs allege that "Defendants" provided financial information to Intersections, but Plaintiffs entirely fail to allege what financial information was provided or by which defendant. This lack of particularity is not sufficient to meet the standard of Rule 9(b).

While Plaintiffs' claim against Loomis is legally insufficient, with regard to Jenni Loomis, the allegations of fraud are entirely unsupported and incredible because Plaintiffs fail to allege even a single false or misleading statement she supposedly made to Intersections. There is also no allegation in the Complaint that Jenni Loomis ever received anything in return for this alleged fraud. Accordingly, Plaintiffs' fraud claim against Loomis and Jenni Loomis must be dismissed.

III. **PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

The Complaint fails to state a claim for tortious interference. In order to make a prima facie showing for tortious interference with a business relationship or expectancy, a plaintiff must allege: (1) the existence of a valid contractual relationship or business expectancy; (2) defendant's knowledge of the relationship or expectancy; (3) intentional interference by the defendant causing or inducing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff whose relationship or expectancy was disrupted. *Nortec Commc'ns, Inc. v. Lee-Llacer*, 548 F. Supp. 2d 226, 232 (E.D. Va. 2008) (citing *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 835-36 (1987)). Further, in Virginia, if a Complaint alleges interference with an at-will contract, the plaintiff must also show (5) that the defendant

employed improper methods.  *Id.* (citing *Hechler Chevrolet Inc. v. Gen. Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744 (1985)).

NEI has failed to identify any particular relationship or expectancy with which they allege its former shareholder and CEO Loomis interfered.  Such an identification is necessary because merely showing the expectation of remaining in business is insufficient to support a tortious interference claim.  *Levine v. McLeskey*, 881 F. Supp. 1030, 1057 (E.D. Va. 1995) vacated in part on other grounds, *Levine v. McLeskey*, 164 F.3d 210 (4th Cir. 1998).  This Court has explicitly held that with regard to tortious interference, "[f]ailure to allege any specific, existing economic interest is fatal to the claim."  *Masco Contractor Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

The Supreme Court recently stated in its decision in *Iqbal* that, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1949.  As was the case in *Iqbal*, NEI's assertions for tortious interference do not rise above a formulaic recitation of the elements of the claim.  The Complaint makes the sweeping claim that NEI has relationships with employees, customers, and others with whom they do business and that they had a reasonable expectation of business relationships with these entities or others, but never identifies with which of these relationships or expectancies they allege Loomis interfered.  NEI's only factual assertion is that its expectation of continued business was reasonable because of the "considerable time, energy, resources, and personnel it takes to develop and run a venture," and maintain good will. (Cmpt. ¶ 76.)  This allegation is certainly insufficient to meet the requirement used by this Court that "there must be a particular expectancy which [Plaintiff] is reasonably certain will be realized."  *Levine*, 881 F. Supp. at 1057(citation omitted).

A claim for tortious interference must include an allegation that Defendant intentionally caused or induced a breach or termination of a relationship or expectancy. *Nortec Commc'ns Inc.*, 548 F. Supp. 2d at 232. NEI has failed to identify any actions of Loomis that either induced or caused any employee or customer to breach or terminate a contract or expectancy with NEI. Further, NEI has alleged no facts that would allow the Court to determine what actions Loomis supposedly undertook that interfered with the relationships between NEI and its customers.

NEI has also failed to identify any actions by Loomis that meet the requirement of inducing or causing a breach or termination. The mere statement that Loomis's acts of interference "proximately impaired" those relationships and expectancies does not provide the facial plausibility required to withstand a motion to dismiss, as stated by the Supreme Court in *Iqbal*. *Iqbal*, 129 S. Ct. at 1949.

In Virginia, if a contract is terminable at-will, in order to present a *prima facie* case for tortious interference, a plaintiff must show that the defendant used improper methods in addition to intentionally interfering. *Duggin*, 234 Va. at 836. This Court has found that improper methods may include breach of fiduciary duty or misuse of confidential information. *Nortec Commc'ns, Inc.*, 548 F. Supp. 2d at 232 (quoting *Duggin,* 234 Va. at 227). NEI has not made any allegation that Loomis employed improper methods in any actions he is alleged to have taken. The Complaint's solitary description of "wrongful acts" does not constitute a pleading that improper means were used.[9]

This Court has held that, because a Plaintiff had not properly alleged whether a contract in question was at-will, it was impossible for the Court to determine the analysis applicable to

---

[9] While breach of fiduciary duty is a count in the Complaint, NEI does not allege that any of the factual allegations made in support of that count relate to any party with which NEI had a business relationship or expectancy.

the count for tortious interference such that the Motion to Dismiss should be granted.  *Nortec Commc'ns, Inc.*, 548 F. Supp. 2d at 232.  Here, NEI has failed even to allege that contracts or expectancies were interfered with, much less whether any of those were at-will.  Because the Complaint does not plead any improper methods were utilized by Loomis, it fails to meet this element of tortious interference.

The facts that *are* alleged in the Complaint underscore the missing ingredients for this claim. In alleging fraud, Plaintiff NEI asserts that Loomis concealed the fact that some customers "actually had terminated their contracts."  (Cmpt. ¶ 8.)  Again, Plaintiffs allege that Customer B was billed after it had terminated its relationship with NEI.  (Cmpt. ¶ 51). Thus, to the extent the Complaint contains any detail about customer relationships, there is no hint that Loomis caused the customer to terminate the relationship.

Loomis was the sole shareholder of NEI until the closing on the SPA in November 2007. Thereafter, until November 19, 2008, he was, by virtue of the Employment Agreement, the Chief Executive Officer of NEI.  The Complaint fails to specify whether the alleged contractual interference took place before or after the SPA was executed; it fails to allege whether the alleged interference took place before or after he was terminated as CEO.  Thus, without more, the Court cannot determine if Plaintiff NEI is complaining of actions Loomis took when he owned and controlled NEI.  Nor can the Court determine if NEI is complaining of actions Loomis took while CEO of NEI and acting on its behalf in that capacity.  To the extent that any of the actions or intent of Loomis upon which NEI might rely occurred prior to November 19, 2008, NEI is attempting to claim interference with contract by one of the parties to the contract, a legal impossibility.  *Brown v. Loudon Golf & Country Club Inc*., 573 F. Supp. 399, 404 (E.D. Va 1983).

## IV.    PLAINTIFFS' CLAIM FOR CIVIL CONSPIRACY TO COMMIT FRAUD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The Complaint fails to properly state a claim for civil conspiracy to commit fraud. Under Delaware law, which governs the SPA, in order to state a claim for civil conspiracy, a claim must allege: (1) a confederation or combination of two or more individuals; (2) an unlawful act in furtherance of the conspiracy; and (3) actual damage. *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, n. 8 (Del. 2005) (citing *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987)). Similarly, in order to state a claim for civil conspiracy in Virginia, a plaintiff must allege (1) an agreement between two or more persons (2) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (3) results in damage to the plaintiff. *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass,* 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984)). Plaintiffs have failed to state a claim that meets either of these standards because the Complaint does not properly allege that two or more persons acted to accomplish an unlawful act or purpose.

The Complaint alleges that Loomis and his sister, Jenni Loomis, conspired to injure Intersections. However, the Complaint fails to allege that Jenni Loomis ever acted as an individual as opposed to within her capacity as an agent of NEI.[10] The District of Delaware has held that a corporation may not conspire with its agents or employees because it would amount to a corporation conspiring with itself. *Coulbourne v. Rollins Auto Leasing Corp*., 392 F. Supp. 1198, 1201 (D. Del. 1975) (citing *Nelson Radio & Supply Co. v. Motorola Inc.*, 200 F.2d 911 (5th Cir. 1952) and *Goldlawr, Inc. v. Shubert*, 276 F.2d 614 (3d Cir. 1960)). The Supreme Court

---

[10]   The Complaint alleges nothing more than that Jenni Loomis acted for NEI in providing bookkeeping services. (Cmpt. ¶ 8.) In this capacity, she was an agent of NEI. As an agent of NEI, she took instructions from Loomis, the president and sole shareholder of NEI, and all of her alleged actions with regard to NEI were done in her capacity as an agent. The Complaint alleges nothing as to Jenni Loomis's motives, only that Loomis promised to pay her a bonus. (*Id.* ¶ 51.)

of Virginia has also held that defendants acting in either a principal-agent or an employer-employee relationship are not separate entities for the purposes of a conspiracy. *Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 317, 485 S.E.2d 140, 144 (1997). Similarly, this Court has found that "an agent cannot conspire with its principal." *Mich. Mut. Ins. Co. v. Smoot,* 128 F. Supp. 2d 917, 925 (E.D. Va. 2000). Without separate entities, this Court has held that a conspiracy is "legally impossible" because a single entity cannot conspire with itself. *Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 429 (E.D. Va. 2006)(aff'd, 258 Fed. App'x 526 (4th Cir. 2007).

This lack of multiple entities is not cured by suing the agents in their individual capacity. *Chavez v. McIntyre*, 424 F. Supp. 2d 858, 861 (W.D. Va. 2006) (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)). This Court has held that "[t]he only exception to the rule that an employee, agent, or officer cannot conspire with a corporation is when the employee, agent, or officer has an independent stake in achieving the corporation's illegal objective." *Boyce v. Fleet Fin., Inc.*, 802 F. Supp. 1404, 1410 (E.D. Va. 1992). The District of Delaware has further suggested that in order for employees or agents to be considered separate individuals for the purposes of a conspiracy, they must be acting with personal reasons, such as personal animus or a desire for financial gain beyond a salary. *Coulbourne*, 392 F. Supp. at 1201.

As Jenni Loomis is not alleged to have acted as an individual, the Complaint fails to allege two or more persons acted, as required to allege a civil conspiracy and, therefore, this claim must be dismissed.

## V. INTERSECTIONS IS BARRED FROM SEEKING RESCISSION OF THE STOCK PURCHASE AGREEMENT

Plaintiffs' request for relief in the form of rescission of the Stock Purchase Agreement, whether arising from its claim of breach of contract or fraud, should be dismissed. Rescission is

an equitable remedy available only where it is possible to return the parties to the *status quo ante*. At the present time – twenty months after the agreement was effectuated – it is no longer possible to restore the parties to their original positions. Even if rescission were a possibility, Plaintiffs have waived their right to rescind the agreement by continuing to treat the agreement as binding, notwithstanding their alleged discovery at least seven months ago of facts that they allege would justify rescission. Thus, Intersections is barred from seeking such a remedy in this suit.

As a principle of equity, rescission is an appropriate remedy only where each party to a contract may be substantially restored to the position it occupied prior to entering the agreement. *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 115, 661 S.E.2d 834, 837 (Va. 2008); *Midland Grange No. 27 Patrons of Husbandry v. Walls*, No. 2155-VCN, 2008 WL 616239, at *9 (Del. Ch. Feb. 8, 2008) (noting that "it is well established that rescission generally is appropriate only when the plaintiff offers and is capable of restoring the defendant's status quo."). "If a court finds that a condition exists which renders it impossible to restore the parties to their original positions, rescission will be refused." *Orsi v. Kirkwood*, Civ. No. 2:91cv744, 1992 WL 511406, at *5 (E.D. Va. 1992) aff's, 999 F.2d 86 (4th Cir. 1993); *Ferry v. Clarke*, 77 Va. 397, 442 (1883); *see also Midland Grange*, 2008 WL 616239, at *9 (holding that impracticality of returning parties to the status quo ante bars the remedy of rescission).

It is apparent on the face of the Complaint that Intersections has sat on its right to ask for rescission for at least seven months. Loomis was suspended by NEI in a letter dated October 20, 2008 (Exhibit 4 to the Complaint) which accused him of breaching his fiduciary duties, among other things, and which promised that an investigation of other matters was under way. This action was not filed until May 27, 2009. Meanwhile, Intersections has continued to treat the

agreement as valid. "When a ground for rescission is discovered, prompt action is necessary. If a party, after discovering facts which would justify rescission, continues to treat the contract as a subsisting obligation, leading the other party to believe that it is still in effect, the right to rescind is waived." *Lake Holiday Country Club, Inc. v. Teets*, 56 Va. Cir. 113, 125, 2001 WL 34037926, at *10 (Va. Cir. 2001) (quoting *McLeskey v. Ocean Park Investors, Ltd.*, 242 Va. 51, 55, 405 S.E.2d 846, 848 (1991)); *see also Richardson v. Horn*, 31 A. 896, 897 (Del. Super. Ct. Stat. 1887) ("[T]he party desiring [rescission] must take his steps for that purpose within a reasonable period from the time when he discovers the alleged fraud; otherwise his right to rescind will be treated as waived . . .").

Moreover, since the execution of the Stock Purchase Agreement nearly two years ago, at least two significant changes have occurred that preclude the possibility of restoring Loomis to his original position. First, Intersections and NEI terminated Loomis and implemented alternative management, as alleged in the Complaint. Second, in the passage of time, Intersections has reported in its filings to the Securities and Exchange Commission that the business of NEI has been "negatively impacted" by the changes in the economy and that "we are attempting to make corresponding reductions in our costs" at NEI. (Intersections, Annual Report (Form 10-K), at 52 (Mar. 16, 2009). This report, which makes no reference to rescission of the acquisition (nor has any public filing of Intersections), clearly signals that the business it now manages is being changed and formed as it sees fit in the current rapidly changing economy. The Court may take judicial notice of these filings for purposes of this motion. *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

From the earliest decisions on this subject, the Virginia courts have noted it "obvious" that rescission is not appropriate where the requesting party is responsible for changes altering

the *status quo ante*.  *See* Ferry, 77 Va. at 404 (noting it is "obvious no rescission should have been decreed" where the requesting party, "by her own conduct, created the only impediment" to restoring the status quo).

The request for rescission appears in the Complaint to be an after-thought.  Indeed, the thrust of the Complaint is an effort to enforce multiple aspects of the transaction.  In Paragraph 65 of the Complaint, Plaintiffs themselves characterize the SPA as a "valid and binding contract between Intersections, NEI, and Loomis." (Cmpt. ¶ 65).  But, to the extent Intersections seeks simultaneously to hold out the prospect of alternative relief or rescission, that relief should be denied now as a matter of law.

## VI.    THE CLAIM FOR DAMAGES ALLEGED TO ARISE FROM PAYMENT OF BUILT-IN GAINS TAX MUST BE ARBITRATED AND SHOULD BE DISMISSED BECAUSE IT IS NOT RIPE

To the extent Plaintiffs' claim of breach of the SPA seeks damages stemming from allegations relating to the payment of built-in gains tax, as discussed in Paragraphs 8, 27, and 54 of the Complaint, this Court should dismiss those claims because the claim is not ripe for decision. The Complaint does not tie this damage claim to specific counts of the Complaint, but it appears to be a claim for breach of contract.  The SPA provides both conditions precedent for such a claim to be asserted and a procedure for dealing with it. The Complaint ignores those requirements of the SPA.

### 1.    The Holdback Amount cannot yet be determined.

Under § 6.11 of the SPA, Exhibit 1 to the Complaint, Intersections is both entitled and required to offset any Corporate Tax Liability Amount against the Holdback Amount.  Only to the extent that the Holdback Amount is less than the Corporate Tax Liability Amount shall Loomis be obligated to reimburse Intersections for the difference.

The Holdback Amount, as defined in § 1.6 of the SPA is an amount, up to $1.5 million, funded by the Earnout to be retained by Intersections to serve as security for payment obligations of the Seller under, among others, § 6.11.  Because the Holdback Amount constitutes the first $1.5 million of the Earnout to be earned, the actual value of the Holdback Amount cannot be calculated until either it is fully funded or the Earnout Period ends.  At this time, neither of these events has taken place, therefore it is impossible to determine the value of the Holdback Amount and thus the availability of funds to satisfy the payment obligations subscribed to it in the SPA. Until Intersections is able to determine whether the Holdback Amount is sufficient to meet any of the obligations subscribed to it, any claim for damages exceeding that amount is premature and not ripe for decision.

### 2.    Plaintiffs have ignored the procedures set forth in the Stock Purchase Agreement.

Intersections does not allege that it has met the requirements of the SPA with regard to the payment of built-in gains tax, rather the Complaint states only that Intersections has paid an amount for built-in gains tax and Loomis has refused to reimburse that amount.  (Cmpt. ¶¶ 8, 27, 54.)  Under § 6.11(d) of the SPA, Intersections is required to provide to Loomis a draft of any tax return at least thirty days prior to the due date.  Also under this Section, Loomis has fifteen days to respond and notify Intersections of any disagreement.[11]  At that point, if no agreement could be reached before the due date, the SPA requires Intersections to file the tax return and an Arbitrator is to be retained to resolve the disagreement.  Similarly, under § 6.11(h) an Appraiser was to be retained by Intersections and Loomis if they were not able to come to an agreement regarding the valuation for purposes of the built-in gains tax.

---

[11]   While not alleged in the factual statement of the Complaint, Loomis timely objected to the valuation and the tax return.

Plaintiffs acknowledge in the Complaint that there is a disagreement regarding the built-in gains tax.  (Cmpt.  ¶¶ 27, 54.)  Intersections has not alleged that it has complied with the requirements of the SPA to retain either an Appraiser or an Arbitrator.  This issue is subject to the Arbitration provision included in the SPA and is, therefore, not ripe for decision by this Court.  Accordingly, Loomis asks this Court to order Arbitration with respect to this issue and to dismiss without prejudice from this action any claim for damages relating to the tax matters.

## <u>CONCLUSION</u>

For the reasons set forth above, these claims raised by Plaintiffs against Loomis and Jenni Loomis fail as a matter of law and should be dismissed, and the proposed order with this motion should be entered.

Respectfully submitted,

**BRYAN CAVE LLP**

/s William E. Olson_____
William E. Olson (VSB #47251)
Rodney F. Page (VSB #12402)
Jennifer M. Kies (VSB #73102)
1155 F Street, NW
Washington, DC  20004
Tel.:  (202) 508-6002
Fax:  (202) 508-6200
weolson@bryancave.com
rfpage@bryancave.com
jennifer.kies@bryancave.com

Dated:  July 2, 2009                 *Counsel for Defendants Joseph C. Loomis*
                                     *and Jenni M. Loomis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of July 2009, I caused the foregoing to be served by hand and to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Ryan C. Berry
> Tara Lee
> DLA PIPER LLP (US)
> 1775 Wiehle Avenue, Suite 400
> Reston, VA 20190
>
> *Counsel for Plaintiffs Intersections, Inc. and Net Enforcers, Inc.*
>
>
> <u>/s William E. Olson</u>
> William E. Olson, VA Bar. No. 47251
> Bryan Cave LLP
> 1155 F Street, NW
> Washington, D.C. 20005-3960
> Telephone:  (202) 508-6000
> Facsimile:  (202) 508-6200
> weolson@bryancave.com
>
> *Counsel for Defendants Joseph C. Loomis and Jenni M. Loomis*