**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **INTERSECTIONS INC.**<br>**and**<br>**NET ENFORCERS, INC.,**<br><br>   **Plaintiffs,**<br><br> **v.**<br><br>**JOSEPH C. LOOMIS**<br>**and**<br>**JENNI M. LOOMIS,**<br><br>   **Defendants**. | )<br>)<br>)<br>)<br>)<br>)<br>)  **CASE NO. 1:09-cv-00597-LMB-TCB**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

   Plaintiffs defend their Complaint by relying on the barest possible "notice pleading" and upon a request that many required allegations be "inferred." In an Opposition to Defendants' Motion to Dismiss, Plaintiffs devote half of their thirty page discussion to repeating, virtually verbatim, the allegations of the Complaint. Moreover, Plaintiffs fail to discuss, or even cite, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the most recent articulation of the pleading standards required at this point. As explained below, the Motion to Dismiss is meritorious, and the requested relief for dismissal should be granted.

## I. COUNT I ALLEGING SECURITIES FRAUD SHOULD BE DISMISSED BECAUSE IT IS LEGALLY INSUFFICIENT.

### A. Intersections Has Not Pled with Sufficient Particularity that the Financial Information Representation was False

   Defendants made clear in their opening brief that Intersections had failed to plead with particularity the falsity of the Financial Information Representation of Section of 2.7 of the

SPA.[1]  (Defendants' Brief, pp. 7-9).  Defendants' argument was grounded in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires that for "each statement alleged to have been misleading," the plaintiff must plead "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  Defendants adduced a number of pieces of information that Intersections had failed to plead, the absence of which rendered it impossible to determine if any of the alleged financial misconduct could have rendered the Financial Information Representation materially false.

In response, Intersections argues that it has pled with the requisite particularity all the facts that it needs to plead surrounding Loomis's alleged misrepresentations.  Intersections, however, misconceives the pleading standard for securities fraud claims under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.  For example, Intersections readily concedes that it has not pled any details concerning Defendants' alleged invoicing of cancelled customers, such as the dollar amounts and dates of the alleged invoices; the goods or services for which the customers were invoiced; whether the invoices were paid; whether revenue from these invoices appeared in the financial information provided to Intersections prior to Closing, and if so, whether the amounts were sufficient to constitute a material misstatement; or even whether the invoices were improper.[2]  It shockingly contends, however, that "such details are not necessary to put Loomis on notice of the misrepresentations alleged against him" because "Defendants' invoicing of the cancelled customers … was a part of their efforts to conceal their status from Intersections before Closing."  (Plaintiffs' Opposition, p. 15).  In other words, Intersections

---

[1] Defined terms shall have the same meaning ascribed to them in Defendants' Opening Brief.

[2] There is plainly nothing *per se* improper about invoicing a customer after it cancels its contract. A customer might be invoiced after cancellation of a contract for goods or services it received prior to the contract's cancellation.

circularly argues that because Loomis allegedly committed the fraud, it does not have to give him details of the fraud. Not only is this proposition not supported by any case law, it runs completely contrary to the case law in this Circuit and vitiates the heightened pleading standard of the PSLRA. A § 10(b) claim must be pled with sufficient particularity to "provide a defendant with fair notice of the claim against him," and "protect a defendant from harm to his reputation or goodwill." *In re Cable & Wireless, PLC,* 321 F. Supp. 2d 749, 773 (E.D. Va. 2004) (internal quotation and citation omitted). Accordingly, "the burden rests on the plaintiffs to enable a particular defendant to determine with what it is charged." *Id.* As the Fourth Circuit has stated:

> These substantive elements of a securities fraud claim are demanding. But the potential liability for defendants also can be significant. As a result, there is a danger that some Exchange Act suits seek only valuable settlements and fees rather than success on the merits. Indeed, securities fraud actions, "if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007).

> To eliminate such abuse, Congress enacted the Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737. *See Tellabs*, 127 S.Ct. at 2504. Through the "[e]xacting pleading requirements" of the PSLRA, Congress charged courts to be vigilant in preventing meritless securities fraud claims from reaching the discovery phase of litigation. *Id.* at 2504, 2508. In particular, Congress required that plaintiffs make specific allegations of false statements or else face dismissal. *See* 15 U.S.C. § 78u-4(b).

*Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 623 (4th Cir. 2008).

Intersections similarly is under the misapprehension that it is somehow absolved of the PSLRA's exacting pleading requirement with respect to its allegation that Defendants booked fake invoices for Customer F and other companies. Without citing any authority, Intersections asserts that it "is not required to allege the number and amount of fake invoices, as Intersections has alleged that the misrepresentations were material and substantially affected its valuation of

NEI." (Plaintiffs' Opposition at 16). In other words, Intersections argues that a conclusory allegation of materiality relieves it of particularizing the alleged fraud. No case stands for this absurd proposition. Moreover, under *Iqbal*, such a conclusory allegation of law is to be disregarded. *Iqbal*, 129 S. Ct. at 1950-51. In addition, Intersections contends that because it identified Company F as a company for which Defendants allegedly booked fake invoices, it "is not required to identify other companies for which Defendants booked fake invoices." *Id.* In effect, Intersections argues that it has satisfied its pleading obligations by identifying a single customer by a letter in the alphabet. Even if it had identified Company F by name, this would still be insufficient "to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity" as to the other companies, and even as to Company F. *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006). Without more information, such as the dates and amounts of the alleged fake invoices and the identity of the customers who were allegedly invoiced, it is impossible to determine if any of the allegations provide a reason for believing that the Financial Information Representation was false, much less materially false.

A plaintiff's failure to plead the type of information identified by Defendants commonly serves as a basis for dismissing claims under the PSLRA. *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 892 (S.D. Tex. 2004) (finding plaintiffs' allegations of improper accounting insufficiently particularized under the PSLRA where plaintiffs failed to plead facts showing the date, amount, and accounting treatment of certain contracts, as well as the reasons why the accounting treatment was improper and why such treatment falsified the company's financial statements); *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1308-14 (N.D. Ga. 2006) (finding that plaintiffs allegations of channel-stuffing, which plaintiffs alleged rendered

certain statements misleading, were insufficiently particularized under the PSLRA and Rule 9(b) because plaintiffs failed to plead the who, what, where, when and how of the channel stuffing, such as the identity of the clients who ordered additional products, when the purchases were made, when the products were delivered, and in what quantities).

**B.**     **Intersections Has Failed to Establish That Its Group Pleading Is Permissible**

Intersections argues that its group pleadings do not violate the Fourth Circuit's bar on group pleading because its pleadings are "sufficiently particular with respect to each defendant to satisfy the requirements of the [PSLRA]," and "specif[y] which actions were taken by Loomis alone, by Jenni Loomis alone, and by them together." (Plaintiffs' Opposition, pp. 16-17). This is simply not the case. The vast majority of the misconduct that Intersections alleges is couched in group pleadings. (Cmpt. ¶¶ 50-53, 56). Intersections cannot escape this pleading failure by simply stating that "both Joseph Loomis and Jenni Loomis provided false information to Intersections." (Plaintiffs' Opposition, p. 17). As explained by Defendants in their Opening Brief, since group pleading goes against the grain of the particularity requirements of both the PSLRA and Rule 9(b), a plaintiff must specify "which defendant committed which wrong" and set forth "with particularity each defendant's culpable conduct." *In re Cable & Wireless*, 321 F. Supp. 2d at 773. A plaintiff who fails to specify which defendant imparted which allegedly false information plainly does not satisfy this standard.

Additionally, Intersections suggests that its group pleading is permissible because the SPA is not a "group document" prepared by a committee. (Plaintiffs' Opposition, p. 17). It fails to explain how this relieves it of its obligation to specify each of the Defendants' alleged wrongful conduct. For example, Intersections alleges that "*Defendants* continued to bill Customer C thereafter…"; "*Defendants* knowingly and willfully overcharged NEI's top two

revenue generating customers…"; "*Defendants* double billed these customers…"; and "*Defendants* booked fake invoices…" (Cmpt. ¶¶ 51-53, 56)(emphasis added). Intersections cites no case to support its position that the fact that the SPA is not a "group document" relieves it of its obligation of specifying which defendant committed which of these alleged wrongs by "sett[ing] forth with particularity each defendant's culpable conduct." *In re Cable & Wireless*, 321 F. Supp. 2d at 773. Accordingly, Intersections has failed to provide any reason why its group pleadings are not fatal to its securities fraud claim against Loomis.

### C. Intersections Has Failed to Allege Facts Giving Rise to a Strong Inference of Scienter

In their Opening Brief, Defendants identified four statements alleged in the Complaint around which Intersections's allegations clustered, and explained that for each representation, Plaintiff had failed to state with particularity facts giving rise to a strong inference of scienter. (Defendants' Brief, pp. 5-6, 10-15). Intersections's contentions to the contrary lack merit.

#### 1. Intersections Has Not Stated Facts with Specificity Sufficient to Give Rise to a Strong Inference of Scienter with Respect to the Financial Information Representation

Intersections begins by objecting to Defendants' reliance on *In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 773 (E.D. Va. 2007) for the proposition that an inference of scienter does not arise simply from the fact that a corporate officer has certified financial statements that turn out to contain inaccuracies, and a certification of the accuracy of financial statement is accorded little weight unless the signor recklessly ignored red flags. Intersections labels this argument "nonsensical," because, it claims, "as alleged in the Complaint, Loomis and his sister personally discussed how to rearrange data to create the false financial statements that were given to Intersections." (Plaintiffs' Opposition, p. 19). Noticeably absent from this assertion is any reference to where in the Complaint this allegation can be found. In fact, there is no such

allegation. The Complaint contains one allegation concerning conversations between Loomis and his sister, and this allegation concerns invoicing a customer, not rearranging data on financial statements. (Cmpt. ¶ 51).

Intersections also states that it does not need to plead that Loomis ignored any "red flags" because "Loomis himself manipulated data to create the false financial statements." (Plaintiffs' Opposition, p. 19). However, Intersections again fails to reference where in the Complaint it alleges that Loomis *himself*, as opposed to "Defendants," manipulated data. As explained above, all the allegations concerning (1) invoicing customers who had canceled their contracts, (2) overcharging current customers, (3) booking fake invoices, and (4) providing financial data to Intersections (Cmpt. ¶¶ 8, 19-20, 51-53) are couched as group pleadings and therefore fail to satisfy the pleading requirements of Rule 9(b) and the PSLRA.

Intersections's assertion that Paragraph 52 of the Complaint adequately alleges that Loomis knowingly and willfully overcharged NEI's two top customers is unsupported.[3] As Defendants noted in their Opening Brief, conclusory allegations of "knowing" conduct are insufficient to make the requisite showing of scienter. *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 714-15 (E.D. Va. 2003). *See also Iqbal*, 129 S. Ct. at 1950-1951 (holding that legal conclusions and conclusory allegations are not assumed true on a motion to dismiss).

---

[3] Plaintiff contends that "out of all the misrepresentations regarding NEI's financial condition plead in the Complaint, Loomis points to only one as lacking facts establishing an inference of scienter," *i.e.*, this alleged overbilling of customers. (Plaintiffs' Opposition, p. 20). This is patently false. The alleged overbilling is an action, not a misrepresentation. Defendants addressed the lack of scienter as to all of the Complaint's alleged misrepresentations. For example, Defendants argued in their Opening Brief that since Intersections failed to plead with particularity that any of the actions in which Loomis is alleged to have engaged rendered the financial information false or misleading, his warranting the accuracy of the financial information cannot serve as a basis for inferring scienter.

Moreover, this allegation is yet another instance of Intersections's impermissible use of group pleading.

>    **2.    Intersections Has Not Stated Facts with Specificity Sufficient to Give Rise to a Strong Inference of Scienter with Respect to the Top Customer Representation**

Intersections asserts, without citation to any supporting legal authority, that because Loomis (1) had a motive to increase his payout on the sale of NEI, (2) was the CEO of a start-up company, (3) personally provided the top customer information to Intersections, and (4) purportedly emailed his sister before Closing to indicate that he was going to continue to invoice one cancelled customer to increase NEI's revenue, that Intersections had pled facts giving rise to a strong inference of scienter. (Plaintiffs' Opposition, p. 21). Intersections is mistaken.

First, as explained in Defendants' Opening Brief, the motive that Intersections attributes to Loomis could be attributed to any corporate officer involved in a merger or acquisition of a company. Accordingly, such an allegation does not support an inference of scienter. (Defendants' Brief, p. 14 (citing *Philips v. LCI Int'l, Inc.*, 190 F.3d 609, 623 (4th Cir. 1999))). Second, although Intersections has pled that Loomis was the CEO of NEI, it nowhere alleges any facts concerning, for example, his day to day role in NEI, the type of information to which he had access, or the decisions he regularly made. Accordingly, the bare allegation that he was the CEO of NEI provides little basis for concluding that he had knowledge of customer cancellations. *See Circuit City*, 286 F. Supp. 2d at 719 (rejecting plaintiffs' attempt to establish defendants' scienter because of their status as senior officers, access to information, and interaction with other executives). Third, there is simply no allegation in the Complaint concerning the size of NEI or whether it could be classified as a start-up company at the time of the negotiation of the SPA. Fourth, Intersections's allegation that Loomis "personally provided the customer information to Intersections" (Plaintiffs' Opposition, p. 21) actually conflicts with

the Complaint itself, which states that "Defendants"—and not specifically Loomis—"provided Intersections with a list of NEI's top customers." (Cmpt. ¶¶ 2, 19). However, even if Intersections had alleged in the Complaint that Loomis personally provided the list, such an allegation would not support an inference that Loomis personally researched or authored the list. Finally, the allegation concerning the emails purportedly evidencing Loomis' knowledge of Customer B's cancellation of its contract have not been pled with any specificity whatsoever—there is no allegation quoting or summarizing the statements made in the emails, no allegation concerning the date of the emails, and no explanation of how these emails "show" that Loomis had knowledge of Customer B's cancellation. Accordingly, none of these four contentions support an inference of scienter, let alone a strong inference of scienter.

> ### 3. Intersections Has Not Stated Facts with Specificity Sufficient to Give Rise to a Strong Inference of Scienter with Respect to Either the Built-In Gains Tax Representation or the Tax Return Representation

Defendants made clear in their Opening Brief that there was simply no factual allegation that even remotely suggested that Loomis knew an Arizona tax return was required to be, but had not been, filed, or that the amount of the built-in gains tax would exceed $350,000. (Defendants' Brief, pp. 10-12). Defendants also argued that the built-in gains tax representation was a non-actionable statement of opinion. (*Id.*, p. 11). Intersections responds that, under the "totality of the circumstances alleged in the Complaint, Intersections has alleged sufficient facts to support a strong inference of scienter." (Plaintiffs Opposition, p. 21). However, some of the "circumstances" upon which Intersections now relies are not even alleged in the Complaint, such

as that "Loomis was in the best position to know the amount of the tax" and was "responsible for the conversion from a C-Corp to an S-Corp."  (Plaintiffs' Opposition, p. 21).[4]

Moreover, the fact that the built-in gains tax ended up exceeding the amount represented in the SPA does not make the representation an actionable misrepresentation by Loomis, particularly in light of the fact that there is no allegation that Loomis played any role in the calculation of the tax or had any knowledge of the method for calculating the tax.

In sum, Intersections simply has pled no facts, let alone facts with particularity, sufficient to give rise to a strong inference of scienter with respect to either of the two tax representations. Accordingly, these representations cannot serve as the basis of a securities fraud claim.

**D.**     **Intersections Has Failed to Plead Loss Causation**

Under the standards set forth in *Dura Pharmaceuticals., Inc. v. Broudo*, 544 U.S. 336 (2005) and *Teachers' Retirement System of Louisiana  v. Hunter*, 477 F.3d 162 (4th Cir. 2007), Intersections has not adequately pled loss causation.  (Defendants' Brief, pp. 16-18).  The central holding of *Dura* is that an allegation that a plaintiff paid an artificially inflated price for stock is not itself a relevant economic loss.  *Dura*, 544 U.S. at 347.  Instead, a plaintiff must plead facts "provid[ing] the defendants with notice of what the relevant economic loss might be" as well as what "the causal connection might be between that loss and misrepresentation."  *Id.*  In addition, *Hunter* requires a plaintiff to "plead [loss causation] with *sufficient specificity* to enable the court to evaluate whether the necessary causal link exists" between the material misrepresentation and the economic loss suffered.  *Hunter*, 477 F.3d at 186 (emphasis added).

---

[4] As explained above, allegations that a defendant must have known a particular fact because of his title are insufficient to establish a strong inference of scienter.  *Circuit City*, 286 F. Supp. 2d at 719.

Intersections has pled nothing more than conclusory statements that it paid more for NEI's stock than what it was worth, causing it to suffer economic loss. (Cmpt. ¶¶ 8, 50, 61, 62). This is the very sort of amorphous loss allegation that *Dura* found insufficient. *See Dura*, 544 U.S. at 347 (holding that an allegation that plaintiff paid artificially inflated prices for stock and suffered damages is insufficient to plead loss causation). *See also BearingPoint*, 525 F.Supp.2d at 779 (finding insufficient allegations of loss causation nearly identical to Intersections's allegations). Additionally, because Intersections makes no attempt to identify the nature or extent of the economic loss, the Court cannot determine whether a causal link exists between the alleged wrongs and the economic loss, as required by *Hunter*. Therefore, Intersections' securities fraud claim must be dismissed.

Instead of arguing that its pleadings pass muster under *Dura*, *Hunter*, and *BearingPoint*, Intersections argues that the loss causation requirements of *Dura* does not apply to it because, unlike *Dura*, this is not a fraud on the market case. (Plaintiffs' Opposition, pp. 22-23). Rather than explain why this is a distinction with a difference, Intersections simply cites *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 949 n.2 (9th Cir. 2005), a Ninth Circuit decision which states in a footnote, with little explanation, that *Dura* does not apply in the context of a private sale of privately traded stock where the plaintiff has alleged that the loss it sustained was causally related to the defendants' misrepresentations. Intersections then argues that its allegation that Intersections "suffered substantial economic loss as a direct result of the wrongs herein alleged" (Cmpt. ¶ 62) satisfies the applicable pleading requirements.[5]

---

[5] Although Intersections cites other paragraphs of the Complaint in an attempt to bolster the argument that it adequately pled loss causation (*see* Plaintiffs' Opposition, p. 23), none of the paragraphs cited concern the element of loss causation. As Intersections itself explains, the cited paragraphs concern (1) the provision of financial information and Loomis' certification as to the accuracy of that information, (2) the materiality of the alleged misrepresentations, and (3)

Intersections is mistaken. While it is true that *Dura* was a fraud on the market case, the Supreme Court made no attempt to limit its holding to such cases. The Court's rationale, as well as its holding, makes clear that it applies to all § 10(b) securities fraud cases, whether or not they are fraud on the market cases. The Court's rationale is firmly grounded in the "common-law of deceit and misrepresentation actions." *Dura*, 544 U.S. at 343. None of the cases relied upon by the Court in examining the "common-law roots of the securities fraud action" can be described as being more germane to a "fraud on the market" case than this action. To the contrary, all the cited cases are standard fraud and misrepresentation cases. *Id.* at 343-44. It would be absurd to conclude that cases involving the private sale of a privately traded security—a transaction with a close affinity to traditional cases of fraud and misrepresentation—*would not* be subject to the Court's holding, while the more recently developed fraud on the market cases, which do away with the traditional element of actual reliance and are thus further removed from traditional deceit and misrepresentation actions—*would be* subject to the Court's holding. Further, the Court in no way limited its holding to fraud on the market cases. The Court held, without qualification, that PSLRA "makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss." *Id.* at 346. Accordingly, neither the Court's rationale nor its holding provide the slightest hint that these traditional elements would not apply to cases concerning the private sale of privately traded securities.[6]

Intersections's reliance on those alleged misrepresentations. (Plaintiffs' Opposition, p. 23). None of these concern the nature of the economic loss suffered, much less how the economic loss was caused by the alleged misrepresentations.

[6] Moreover, at least two courts have recently rejected *Livid*'s apparent refusal to apply *Dura* to non fraud on the market securities cases. *See McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 433 (3rd Cir. 2007) (finding *Dura* persuasive authority to a non fraud on the market securities fraud action); *Hardin County Sav. Bank v. City of Brainerd*, 602 F. Supp. 2d 1012, 1022 (N.D. Iowa

Moreover, even if *Dura* and its progeny were not controlling precedent here, Intersections has not satisfied the pleadings requirements under either *Livid* or *EP Medsystems, Inc. v. EchoCath Inc.*, 235 F.3d 865 (3d Cir. 2000), the two cases Intersections cites in support of its argument. First, in each of these cases, the plaintiff identified the particular economic loss it suffered, namely the complete value of its investment. *See Livid*, 416 F.3d at 949 (noting that plaintiff lost the entire value of its investment); *EP Medsystems*, 235 F.3d at 884 (noting that plaintiff alleged its entire investment in EchoCath had become worthless). In contrast, Intersections has made no attempt to identify either the nature or extent of its economic losses. Additionally, in both *Livid* and *EP Medsystems*, the plaintiff specifically linked its economic losses to particular misrepresentations. *Livid*, 416 F.3d at 949; *EP Medsystems*, 235 F.3d at 884. In contrast, Intersections alleges that the "*wrongs* herein alleged" (Cmpt. ¶ 62) (emphasis added)—of which there are many—caused it to suffer economic loss. Of note, Intersections does not allege that *all* of the alleged wrongs constitute violations of § 10(b). This is fatal to Intersections's securities fraud claim because the plaintiff "shall have the burden of proving that the act or omission of the defendant *alleged to violate this chapter* caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4) (emphasis added). As pled, it is impossible to determine if the wrongs alleged to have caused Intersections's economic loss were also wrongs alleged to have violated § 10(b). Thus, even if *Dura* and its progeny are not applicable, Plaintiff has failed to adequately plead loss causation.

---

2008) (finding that *Dura*'s holding was not limited to fraud on the market cases and applying to it to a non fraud on the market securities fraud case).

## II. COUNT III ALLEGING FRAUD SHOULD BE DISMISSED BECAUSE IT IS LEGALLY INSUFFICIENT.

As stated at length above, Intersections's claim for fraud is wholly inadequate, as it entirely fails to state the "circumstances constituting fraud" with the specificity required by Rule 9(b). In both the Complaint and its Opposition, Intersections fails to identify the "time, place, and contents," of the allegedly fraudulent representations made by Defendants. *Arnlund v. Smith*, 210 F. Supp. 2d 755, 760 (E.D. Va. 2002). Nor does Intersections adequately identify who made these allegedly fraudulent representations.

In its Opposition, Intersections argues that it has alleged both Loomis and Jenni Loomis "provided Intersections with materially false financial and business information," since Defendants allegedly overcharged customers, booked fake invoices, moved revenue on NEI's books from one year to another, and provided false lists of customers and amounts of revenue. (Plaintiffs' Opposition, p. 25). Not one of these allegations is alleged with the particularity required by Rule 9(b). Intersections fails to provide any information about how, when, or which customers were overcharged, or whether any customers refused to pay these allegedly incorrect bills. It fails to identify any particular fake invoices. It also fails to identify what amounts of revenue were moved and when. Further, it fails to identify what amounts of revenue reported were false. As described above, Intersections's failure to provide this basic information renders its allegations conclusory, and woefully inadequate to meet *Iqbal's* pleading standard. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50 (holding that a complaint must include a plausible claim sufficiently supported by facts to allow a court to reasonably infer that the defendant is liable for the alleged conduct in order to withstand a motion to dismiss).

As outlined above, in both its Complaint and Opposition, Intersections also fails to identify sufficiently what actions it ascribes to Loomis or Jenni Loomis, and it also fails to give

any reasons why its group pleading should be permitted. Supra, I.B. As in its claim for securities fraud, Intersections repeatedly speaks of actions by the collective Defendants in its Opposition: "Defendants overcharged certain customers," and "they also moved revenue." (Plaintiffs' Opposition, p. 24). These allegations are not only insufficient for failing to allege any identifying information regarding these transactions, but also for failing to identify which of the defendants Intersections claim undertook them.

The meager facts pled by Intersections in the Complaint do not sufficiently support a claim for fraud against either Loomis or Jenni Loomis, and this count must be dismissed.

## III.   NEI'S CLAIM FOR TORTIOUS INTERFERENCE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

NEI's claim for tortious interference against Loomis fails because it offers no factual allegations as to what business relationship or expectancy with which Loomis is alleged to have interfered, how or when Loomis allegedly interfered with that business relationship or expectancy; or, if the relationship is acknowledged to be at-will, what improper means Loomis allegedly used to interfere. NEI's grasping claim that it had relationships and expectancies with "employees, customers, and others with whom NEI does business" is woefully insufficient. (Cmpt. ¶ 76).

NEI attempts to avoid the pleading requirements for this count by citing this Court's decision in *Signature Flight Support Corp. v. Landow Aviation L.P.*, No. 1:08cv955 (JCC), 2009 U.S. Dist, LEXIS 1938, at *2 (E.D. Va. Jan. 13, 2009), but that reliance is misplaced and unsupported. That case does not stand for the proposition that a party need not provide factual allegations in order to support a claim of tortious interference. To the contrary, this Court found that the plaintiff identified business expectancies based upon a specific identified contract that allowed plaintiff to offer its services to a group of customers. *Id.*. That plaintiff also identified

customer relationships with which it claimed the defendant had interfered. *Id*. at *8. In addition, the plaintiff in *Signature Flight Support Corp.* adequately alleged "an identifiable business expectancy" in the continued provision of its services based on its prior and ongoing business. *Id*. at **7-8. The Court's determination that the plaintiff in that case need not plead exactly which particular aircraft would be serviced and at what fees is far from a finding that no contract or expectancy needs to be pled to support a claim for interference.

Unlike the plaintiff in *Signature*, NEI has failed to identify a single contract or business relationship with which Loomis interfered. NEI states that it has relationships with "employees, customers, and others with whom NEI does business." (Cmpt. ¶¶ 76, 79). In its Opposition, NEI claims that Loomis has misinterpreted the Complaint as alleging interference with customer relationships, and it states that, in fact, it is alleging interference only with certain NEI employee relationships.[7] This assertion is contradicted by the unsupported allegation in the Complaint that Loomis's actions have caused some part[ies] to "refuse to do business with NEI." (Cmpt. ¶ 79). Even if the Court accepts that NEI meant to exclude two of the three groups listed in its Complaint, it has entirely failed to identify any such employees, nor does NEI plead the existence of any business relationship or reasonable expectancy between NEI and such employees with which Loomis allegedly interfered. The only individual identified by NEI is an "independent contractor" hired to work for both NEI and Loomis Enterprises. NEI alleges that this individual spent most of his time doing work for Loomis Enterprises, in violation of his contract with NEI, however, there is no allegation in the complaint that Loomis either caused or

---

[7] Plaintiff concedes in footnote 4 to the Opposition that Plaintiffs have not alleged any facts to support a claim for interference with NEI relationships or expectancies with either "customers" or "others" with whom NEI does business.

induced this behavior, nor does NEI plead any provision in any contract with this individual that would be breached if such an allegation were assumed true.

The case law is clear that a claim for tortious interference requires pleading with a greater amount of specificity than NEI has offered. NEI offers nothing more than mere conclusions poorly cloaked as factual allegations, and the Supreme Court has definitively stated that such a pleading is insufficient: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. NEI has not offered any factual allegations that, if true, would support a claim of tortious interference and, therefore, this count must be dismissed.

## IV. INTERSECTIONS'S CLAIM FOR CIVIL CONSPIRACY TO COMMIT FRAUD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Intersections appears to concede that, generally, a principal and an agent cannot conspire with each other. It points out that one exception to this rule is that "immunity can be destroyed, however, if an agent is performing an *unauthorized* act in furtherance of the conspiracy." *Chavez v. McIntyre*, 424 F. Supp. 2d 858, 861 (W.D. Va. 2006) (finding that excessive use of force by police officers during an arrest may be considered an unauthorized act in furtherance of a conspiracy to deprive the plaintiff of his Fourth and Fourteenth Amendment rights) (emphasis in original); *see also Hodgin v. Jefferson*, 447 F. Supp. 804, 807 (D. Md. 1978) (finding that employees of the Security Savings and Loan Administration could be charged with conspiracy to deprive women of equal rights by discriminating on the basis of gender). While the Fourth Circuit has adopted this reasoning, the point is moot because Intersections has failed to allege that Jenni Loomis committed any unauthorized actions. To the contrary, her actions as bookkeeper were under the direction of Loomis, NEI's CEO. All of Jenni Loomis's actions as

bookkeeper were as an agent of NEI, and as such she cannot be considered a separate individual for the purposes of a conspiracy charge.

Intersections also argues in its Opposition that Jenni Loomis had an independent financial interest that caused her to act outside the course of her normal duties as NEI's bookkeeper. This conclusion is not supported by the pleadings submitted by Intersections. In fact, the Complaint makes only bare-bones allegations regarding Jenni Loomis's supposed role in a conspiracy. *See* (Cmpt. ¶¶ 8, 51, 91). Intersections states that Loomis and Jenni Loomis acted "upon information and belief, to increase the revenue and give Loomis a bigger payout at Closing. . . Loomis promised to pay Jenni Loomis a substantial bonus after the closing." It never alleges either that she received such a bonus, or even that she undertook any actions in order to receive such a bonus. Defendants believe that Intersections is aware its allegations are lacking, and that it failed to make such an allegation because it knows very well that she did not receive any "substantial" bonus related to the sale of NEI. In point of fact, this appears to be nothing more than an *in terrorem* action to name Jenni Loomis as a defendant when her role at NEI was so minor, and she did not act outside the scope of her employment. Intersections has failed to plead any factual allegations to support the elements of a claim of conspiracy and, therefore, this claim must be dismissed.

## V.    INTERSECTIONS'S REQUEST FOR RESCISSION OF THE CONTRACT SHOULD BE DISMISSED.

Rescission of the Stock Purchase Agreement is not a viable remedy in this case. In their Opposition, Plaintiffs contend that rescission is an appropriate remedy irrespective of whether the parties may be substantially restored to the status quo ante. In support of this proposition, however, Plaintiffs cite *Griggs v. E. I. DuPont de Nemours & Co.*, 385 F.3d 440, 447 (4th Cir. 2004), in which the Fourth Circuit plainly recognizes the general principle that rescission is not

an appropriate remedy unless the parties can be substantially returned to their original positions. *Id.* at 448 (characterizing complete restoration as a general rule, subject to exception only "where required"). Although the *Griggs* court recognized that a limited exception permitting partial restoration may apply in the context of the Employee Retirement Income Security Act, the plaintiffs were not entitled to such relief. S*ee Id.* at 449 (holding that plaintiff unreasonably delayed seeking rescissionary relief). No analogous exception has been (or could be) articulated here.

Plaintiffs also assert that the appropriateness of rescission cannot properly be determined on a motion to dismiss. (*See* Plaintiffs' Opposition, p. 30). In support, Plaintiffs cite only two narrow, fact-intensive cases, neither of which purports to stand for such a general proposition. To the contrary, a party may prevail on a motion to dismiss where, as here, rescission is an inappropriate remedy on the face of the Complaint. *See, e.g., Bartley v. Merrifield Town Ctr. Ltd. P'ship*, 580 F. Supp. 2d 495, 502 (E.D. Va. 2008) (granting motion to dismiss rescission claim where contract at issue delineated available remedies); *Schmidt v. Household Fin. Corp., II,* 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008) (upholding demurrer of rescission claim where allegations showed that parties could not be substantially restored to the status quo ante).

It is undisputed that Plaintiffs undertook ownership and control of NEI in November 2007. (*See* Cmpt. ¶ 2). Like the contract in *Bartley*, the SPA articulated the remedies available to the parties in the event of a dispute, (*See* SPA Article 8 and § 10.13 ), and Intersections acknowledge the contract's validity on the face of the Complaint. (*See* Cmpt. ¶ 65). Intersections waited until May 27, 2009, to attempt to rescind this agreement. In the intervening years, Plaintiffs exercised their authority, making complex business and personnel decisions which cannot now be undone. Particularly in light of the passage of time and complexity of these

transactions, it is not possible to substantially restore the parties to their respective positions prior to the execution of the SPA.  For these reasons, Plaintiffs' request for rescission of the SPA should be dismissed.

## **CONCLUSION**

Plaintiffs failed to respond to the request that the allegations of damages regarding tax payments must be referred to arbitration in accordance with the SPA, and the Motion to Dismiss must be taken as conceded on that point.  For the reasons set forth above, Counts I, III, IV, and VII as well as the claim for rescission claims fail as a matter of law and should be dismissed.

Respectfully submitted,

**BRYAN CAVE LLP**

/s William E. Olson _____
Rodney F. Page (VSB #12402)
William E. Olson (VSB #47251)
Jennifer M. Kies (VSB #73102)
1155 F Street, NW
Washington, DC  20004
Tel.:  (202) 508-6002
Fax:  (202) 508-6200
rfpage@bryancave.com
weolson@bryancave.com
jennifer.kies@bryancave.com

Dated:  July 21, 2009

*Counsel for Defendants Joseph C. Loomis and Jenni M. Loomis*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July 2009, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Ryan C. Berry
> Tara Lee
> DLA PIPER LLP (US)
> 1775 Wiehle Avenue, Suite 400
> Reston, VA 20190
>
> *Counsel for Plaintiffs Intersections, Inc. and Net Enforcers, Inc.*
>
>
> /s William E. Olson
> William E. Olson, VA Bar. No. 47251
> Bryan Cave LLP
> 1155 F Street, NW
> Washington, D.C. 20005-3960
> Telephone: (202) 508-6000
> Facsimile: (202) 508-6200
> weolson@bryancave.com
>
> *Counsel for Defendants Joseph C. Loomis and Jenni M. Loomis*