**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| Intersections Inc. and NEI, Inc.,<br><br>        Plaintiffs,<br><br>    v.<br><br>Joseph C. Loomis and Jenni M. Loomis,<br><br>        Defendants. | Civil Action No.  1:09CV597 (LMB/TCB) |

**MEMORANDUM OF LAW IN SUPPORT OF
INTERSECTIONS INC.'S AND NET ENFORCERS, INC.'S MOTION FOR
<u>PROTECTIVE ORDER AND SANCTIONS</u>**

Defendant Joseph C. Loomis ("Loomis") and his counsel, Hunter, Humphrey & Yavitz, PLC, have engaged in a continuous and systematic pattern of conduct meant to harass and intimidate Plaintiffs Intersections Inc. ("Intersections") and Net Enforcers, Inc. ("NEI" and, with Intersections, "Plaintiffs"), and their counsel, DLA Piper LLP (US).   The conduct is compromising this litigation, threatening the parties' ability to meet the discovery deadline set by this Court, and now jeopardizing the freedom and livelihood of Plaintiffs' counsel.  Plaintiffs, therefore, move for this protective order and for sanctions against Loomis and his counsel for this egregious behavior.   Plaintiffs' counsel certifies under Federal Rule of Civil Procedure 26(c)(1) that it has made good faith efforts with Defendants' counsel concerning the issues raised in this Motion for Protective Order.  *See* Declaration of Michelle J. Dickinson ("Declaration"), filed in support of this Motion and attached hereto as Exhibit 1, ¶ 27.

**I.      Factual Background**

**A.      The Litigation**

This case arises out of Loomis' sale of all of his NEI stock to Intersections in November

2007 and his subsequent employment by NEI as its Chief Executive Officer.  NEI was a closely-held corporation co-founded by Loomis.  Together with his sister, co-Defendant Jenni M. Loomis, Loomis defrauded Intersections out of millions of dollars in connection with Intersections' acquisition of NEI's stock by providing false financials and customer base information.  Intersections paid Loomis $14 million in cash in addition to possible options and earnout payments, which together could total up to an additional $6 million, for NEI's stock, and installed him as Chief Executive Officer of NEI.

What Intersections did not know, however, was that it had grossly overpaid Loomis for his NEI stock based on false information provided by Defendants.  Then, instead of running NEI, as promised, Loomis turned his time and energy to starting up and running other companies – using NEI resources and assets.  It was not until Loomis' improper use of NEI resources and assets was discovered, he was suspended, and an investigation was launched, that Defendants' fraudulent scheme began to come to light.

In a last-ditch, desperate effort to conceal Defendants' fraud after NEI suspended him and denied him access to its offices and computer system, Loomis unlawfully accessed NEI's central computer server by intimidating an employee into providing him remote access and then *destroyed* company data.  Loomis also caused his brother, Chris Loomis, to steal from NEI's offices a computer tower containing additional company data, only moments before a computer technician was to image the computer to preserve the data.[1]  This prompted the termination of

---

[1]  Loomis maintains that prior to his termination, he copied all of the files from the computer tower to an external drive and gave that drive to an NEI employee.  Loomis further contends that after his brother stole the computer tower on Loomis' behalf from NEI's offices, the computer was no longer functional, so Loomis returned the hard drives of the computer to the manufacturer and has installed replacement hard drives.  A witness has confirmed, however, that Loomis returned the drives to the manufacturer to avoid giving the data to Intersections and NEI.  As of this date, despite Plaintiffs' repeated requests to image the hard drives of the computer

2

Loomis for cause, a deeper investigation into the financials of the company and Loomis' conduct, and ultimately led to this lawsuit, which was filed in May 2009 for claims of Securities Fraud, Fraud, Conspiracy, Tortious Interference, Breach of Contract, Breach of Fiduciary Duty, and Declaratory Judgment.

### B.  The Threats

On September 10, 2009, almost a full year after NEI terminated Loomis, Loomis' counsel contacted Plaintiffs' counsel and suggested that Loomis had just discovered that, after his termination, Loomis had retained possession of a laptop belonging to NEI and that he had accidentally returned to NEI a laptop belonging to him.  *See Id.*, Exh. A.  In response, on September 16, 2009, Plaintiffs' counsel requested that Loomis provide documentation supporting his claim so that Plaintiffs could investigate.  *See Id.*, Exh. B.  On September 17, 2009, counsel for Loomis provided Plaintiffs with documentation and the model number of the laptop in Loomis' possession.  *See Id.*, Exh. C.

Plaintiffs' counsel then undertook to determine the veracity of Loomis' claim by reviewing the documentation provided and by obtaining and then reviewing documentation obtained from Plaintiffs regarding the laptop in NEI's possession.  *See Id.*, ¶ 3.  By letter dated September 25, 2009, Plaintiffs' counsel advised Loomis' counsel that it had confirmed that Loomis had indeed retained the wrong laptop upon his termination from NEI and that the laptop in his possession was NEI's property.  *See Id.*, Exh. D.  Plaintiffs' counsel indicated that, prior to exchanging the laptops, NEI would remove and preserve a copy of all data contained on the laptop then in its possession in case it was needed for this litigation.  *See id*.  In the interest of cooperation, Plaintiffs' counsel suggested that they would send a computer consultant to Arizona

---

tower and  Loomis' agreement to permit Plaintiffs to do so,  Loomis has not made the computer tower available for imaging by Plaintiffs.

EAST\42593457.1

to exchange the laptops and, at the same time, image any computer owned, leased, or used by Loomis during and/or after his employment with NEI, in accordance with an outstanding discovery request. *See id.* This would include the computer tower he stole from NEI after he was terminated. *See id.*

A full week later, by email dated October 2, 2009, Loomis' counsel acknowledged receipt of Plaintiff's counsel's September 25, 2009 letter and accepted Plaintiffs' offer to have a computer technician facilitate the exchange of the laptops. Loomis' counsel suggested they would be available to do so the following Monday (October 6) or Tuesday (October 7). *See Id*, Exh E. Loomis' counsel did not respond to the request regarding imaging the computers.

In response that same day, Plaintiffs' counsel again suggested that the parties arrange for the computer consultant to image Loomis' other computers pursuant to the outstanding discovery requests on the same day of the exchange to avoid the unnecessary additional expenses associated with the consultant having to make more than one trip to Arizona. *See Id*., Exh F.

Loomis' counsel did not respond until Monday, October 5, 2009, where they rescinded their agreement to allow the computer consultant to facilitate the exchange. *See id*., Exh G. Plaintiffs' counsel immediately responded that a computer consultant was necessary and stated that "In light of the data destruction issues in this case, our client is taking extra measures to ensure that the exchange of computers does not unnecessarily lead to a data destruction problem." *See id*., Exh H. In response, Loomis' counsel threatened to add a conversion counterclaim and have her client call the police:

> If I do not have Joe's laptop by the end of the business day tomorrow, we will move to add a conversion count to the counterclaim and Joe will call the police. I am not conditioning the release of NEI's laptop on the resolution of any of our discovery issues, and there is no excuse for you conditioning the release of Joe's laptop on any of those issues.

*See id.,* Exh. I.

In response, Plaintiffs' counsel advised of their intention to return Loomis' laptop in "the next week or so" after any NEI data was removed:

> We are prepared to retrieve Net Enforcers' laptop and return Loomis' laptop with the software intact and only the data removed. We will do so, however, only under circumstances that will protect our clients from potential claims from Loomis that our clients destroyed data or damaged either computer. Further, we will do so under circumstances such that a qualified computer technician may testify that the computer Loomis provides was not damaged after the exchange and before any forensic analysis can be performed. Accordingly, we will send a computer technician to your offices to make the exchange and transport the computer back to the East Coast for examination. We should be able to do so in the next week or so after the data has been removed. We trust this will assuage your desire to bring civil or criminal charges against our clients related to the laptop computer and will enable you to refocus your energies on the actual issues in this case.
>
> We again request that you provide Loomis' computers for imaging by the computer technician we send to exchange the laptops. This will save the parties time and resources. Rather than threatening a counterclaim or criminal action, perhaps you could respond to our request for the computer images directly and indicate whether you intend to produce Loomis' computers for imaging, an image of his computers, or nothing at all. If so, we can arrange for the images to be made by the computer technician at the time of the laptop exchange. If not, we will move forward with seeking the court's assistance with this matter.

*See id.*, Exh. J.

Loomis' counsel demanded the return of Loomis' laptop by 5:00 p.m. the next day, October 6. She agreed, however, that that if Plaintiffs' computer consultant could give sufficient notice for Loomis to arrange to get the computer tower to their offices prior to the consultant's visit, he could image the hard drives on the computer tower that same day. *See id.*, Exh. K.

Plaintiffs' counsel advised that the laptop was on its way to Washington, D.C., so that its computer consultant could remove NEI's company data. *See id.*, Exh. L. Plaintiffs' counsel advised that they were taking extra precautions in light of the data destruction issues in this case:

5

> The laptop Joe returned to NEI last year is on its way to Washington, D.C. so that our computer consultant can remove the data, not the software. Once it has been removed, we will arrange for a time for him to deliver it to your office in Arizona and pick up the NEI laptop. We will schedule the exchange for a day when Joe can provide the computer tower for imaging as well. We understand that you do not care whether we take special precautions with Joe's computer, but we must protect our clients from allegations Joe likely will make if we don't do so. If you recall, a just few hours ago, he had you ready to file a counterclaim and call the police over a laptop he gave NEI over a year ago and that we already agreed to return. We're covering ourselves. We expect you would do the same in this situation.

*Id.*

Loomis' counsel responded and again raised the spector of criminal charges and a counterclaim. *See id.,* Exh. M. Loomis' counsel did not provide a date or time for the technician to image the computer tower.

On October 14, 2009, Loomis' counsel sent a person to NEI's offices to return the laptop Loomis wrongfully retained. NEI's employees did not know about or understand the nature of the dispute, and thus refused to accept the laptop. *See id*. at ¶ 11 and Exh. N. Loomis' counsel stated in an email that day that Loomis had contacted the police regarding the alleged theft of his laptop. *Id.*

Later that evening, Plaintiffs' counsel advised by email that the computer consultant had determined that there was no company data on the laptop then in Plaintiffs' possession. Plaintiffs' counsel, therefore, suggested that Loomis advise as to when he could arrange for the computer tower to be retrieved from storage so that a computer consultant could facilitate the exchange of the laptops and image the computer tower on the same day. *See id.*, Exh. O.

On October 15, 2009, Loomis' counsel demanded that Plaintiffs immediately retrieve the laptop then in Loomis' possession. Loomis' counsel accused Plaintiffs' counsel of the interstate transportation of stolen goods and advised that the police were being notified:

> Michelle, Isabel is out of the office today, but I saw this email and must respond. You were informed on September 10 that NEI was in possession of Joe's laptop, that it had no NEI data on it and that Joe wanted it back immediately. The laptop was in this building in AZ, but you and NEI refused to return it, and to make matters worse, NEI removed it from the building and from Arizona (interstate transportation of stolen goods). Now over a month later, you finally send this email, acknowledging that everything Joe told you about the laptop was true. Let me make myself clear, **you are holding stolen property**. The police are being notified. You can make all of the excuses that you want to, but continuing to hold someone else's property after they have demanded its return is theft. Look it up.
>
> Regarding NEI's computer, we have tried to return it to you, but you have not agreed to accept it. We tried to deliver it to NEI right here in the building (as they are moving out) but they refused it, claiming they had to talk to "their lawyer" first. I WILL NOT KEEP THIS COMPUTER IN THIS OFFICE FOR ANOTHER DAY. It's your choice, either NEI accepts it downstairs or I will personally deliver it to the DLA Piper office at 1 pm AZ time today. Your choice. If I don't hear from you in the next two hours, I will make the choice for you.

*See id.*, Exh. P.

Before Plaintiffs' counsel had the opportunity to respond, Loomis' counsel sent another email stating:

> Only 45 minutes to go and, if I don't hear from you, I will make the choice for you. Either it will go to NEI's office here in our building or to the DLA Piper office in AZ (that I can see out my window). Make the choice in the next 45 minutes, or I'll make it for you. No more fooling around.

*See id.*, Exh. Q.

In response to the first email, Plaintiffs' counsel advised of their understanding that Loomis' counsel had agreed to exchange the laptops on the same day that a computer consultant imaged the computer tower and that as soon as Loomis provided a date, Plaintiffs would send a computer technician to Arizona. *See Id.*, Exh. R. *See also,* Exh. S.

Loomis' counsel responded:

> Wrong.  Read my lips - The NEI laptop WILL NOT remain in our office for one more day.  Your time is up.

*See id.,* Exh. T.

Later that afternoon, Loomis had the laptop in his possession delivered to the Phoenix office of Plaintiffs' counsel.  *See Id.*, Exh. U:

> MIchelle, attached is an Acknowledgement of Receipt signed by your law firm's AZ receptionist Paula Hawley, acknowledging the receipt of NEI's laptop. <u>The police have been notified that your client, with your help, has stolen Joe's laptop and transported the stolen laptop out of state.</u> We demanded its return September 10. It was right here in our building when you learned that it was Joe's laptop and that he wanted it back immediately. After that, you and/or your client spirited it out of the building and transported it accross [sic] state lines. You have spent the last 35 days making excuses on why you didn't return it. <u>I don't know about your jurisdiction, but in AZ, if a lawyer aided and abetted a client in a theft (and then encouraged the client to transport the stolen property across state lines) the AZ state bar would frown on that. We are done fooling around with this. It is now a police matter.</u> **<u>I won't be surprised if you and your client are arrested when you arrive in AZ.</u>**

By letter sent via email on Friday, October 16, 2009, Plaintiffs' counsel advised that a computer consultant would arrive at Loomis' counsel's law offices on Monday, October 19, 2009 to deliver the laptop and to image the computer tower.  Plaintiff's counsel expressed their hope that this was the end of Loomis' and his counsel's diversionary tactics and that the parties could get back to litigating this case.  *See id.,* Exh. V.

On Monday, October 19, 2009, Plaintiffs' computer technician delivered the laptop to Loomis' counsel.  Loomis' counsel did not, however, provide the computer tower for imaging.  *See id.*, ¶ 19.

On the night of October 19, 2009, <u>Loomis</u> sent an email to Plaintiffs' counsel threatening criminal charges:

> Fyi, I have a criminal attorney working on this. She was the public defender for Phoenix for many years and knows the city prosecutor very well. Relationships I built while working for the feds. I expect to have the investigation and charges filed within a week, including Dickinson and also INTX.
>
> I wonder if they are going to try to lie their way out of this one also. It sure will be a circus act for their shareholders. I feel bad for those who own stock of intx, a identity theft company stealing property. I also expect to also explain this to the wsj also.

*See id.,* Exh. W.

On October 20, 2009, Loomis' counsel emailed Plaintiffs' counsel and again accused Plaintiffs' counsel and Plaintiffs of theft and threatened to have them thrown in jail:

> I have to tell you a true story.  My daughter is also an attorney in AZ, and she had a witness in a case that was in jail, and the sheriff failed to transport the woman to court.  I asked why the woman was in jail and learned that the woman had a boyfriend who always left his car unlocked and his keys under the seat of his car while he was at work.  He had told that woman that if she needed transportation, she could use his car *but it had to be back when he got off work.*  Some time later the woman had a need for transportation and borrowed his car from his place of work.  When he came out of work...no car.  He called the police, and while the police were standing there, she drove up with his car to return it.  She is now doing 2 years in jail for the theft of that car!!! In AZ we frown upon folks taking other people's property without permission.

*See id.,* Exh. X.

### C. The Intimidation

Since the filing of the Complaint of this action in May 2009,  Loomis has continuously attempted to contact both Intersections and NEI executives and employees, despite repeated requests that he not do so.   Loomis' current counsel has condoned their client's behavior.

Since August 3, 2009, Loomis has repeatedly emailed and even left a voicemail message for Intersections' CEO Michael Stanfield regarding fabricated business opportunities and settlement offers consisting of both parties walking away.  *See id*., Exh. Y.  Plaintiffs' counsel has repeatedly requested that Loomis cease all communications, but Loomis' counsel has

refused.  *See id.,* ¶ 23.

On October 22, 2009, however, Loomis crossed the line from irritation to harassment and intimidation when he emailed Mr. Stanfield threatening criminal action against Intersections and counsel as well as a bar complaint.  Indeed, Loomis even threatened to reveal an alleged extra-marital affair by an Intersections employee.

> To date, your "brilliant" representation   has only demonstrated how to be a criminal, earned themselves a bar complaint and investigation and soon is only going to land either NEI, [Intersections] or themselves in Jail . . . .  This is no threat either, its [sic] merely explaining to you the continued collateral manage [sic] that your counsel and "team" are creating. Once the newspapers get a hold of this, what do you think the shareholders are going to say about this? . . .  [Intersections] hasn't been in the newspapers very much but it seems that the "team" is going to make it pretty popular.

*See Id.*, Exh Y.

Loomis, however, has not limited his harassment to Intersections' CEO.  Indeed, on August 31, 2009, Loomis contacted an NEI employee by telephone and threatened that if he testified in this action Loomis would adversely affect his career.  Loomis also attempted to call a female employee of NEI that day.  The NEI employees are in such fear for the personal safety because of Loomis' harassment, that NEI has had to hire Allied Barton security to protect its employees and witnesses. *See Id.*, ¶ 25.

On September 9, 2009, Plaintiffs' counsel *again* told Loomis' counsel that neither Plaintiff wanted to have any direct contact with Loomis and requested that  Loomis' counsel advise him to stop communicating directly with Plaintiffs and stop calling and intimidating Plaintiffs' employees.  Two days later, on September 11, 2009, counsel for  Loomis responded to Plaintiffs' request with the following: "I received a letter from you responding to mine.  I forget the date because I placed it so quickly in the round file.  In the future, please don't waste your

time or mine writing to me with another audience in mind." *See id.*, Exh. Z.  Plaintiffs' counsel

responded:

> The letter to which I believe you are referring dealt with, among other things, your clients' intimidation of witnesses.  I cannot image how you would consider such a serious topic to be a waste of your time, much less mine.  We take this matter very seriously and will not hesitate to escalate it to the court, if it continues.  And yes, my letter was written with the expectation that the court may at some point need to see its contents.  Regardless of the topic, however, I always treat opposing counsel with respect, whether deserved or not.  I would expect the same from you in the future.

*See id.*

## D.  The Depositions

Both parties in this case have noted or stated their intention to take numerous depositions

in the State of Arizona.  According to Loomis and Loomis' counsel, however, if Plaintiffs'

counsel or Intersections representatives travel to Arizona for depositions, they should expect to

be arrested and thrown in jail.  Accordingly, on October 22, 2009, Plaintiffs' counsel met and

conferred with Loomis' counsel and advised that the depositions would have to take place in

Virginia or another state.  Loomis' counsel advised by email that Plaintiffs' counsel should travel

to Arizona and "face the music."  Loomis' counsel has refused to agree to depositions in Virginia

or any other location for these witnesses:

> Michelle, I think it is very appropriate that Joe has given you fair notice of a pending criminal complaint rather than ambushing you.  You should thank him for acting fairly and responsibly.  If you feel you are not criminally liable for directing the theft and interstate transportation of stolen property, I'm sure there are a few (hundred) criminal attorneys at your firm who could attempt to persuade the prosecutor not to prosecute.  Hiding is not the answer.
>
> In addition, it may be a violation of your ethical obligations as an officer of the court to attempt to avoid a warrant for your arrest, if indeed any such warrant has been issued.  (We believe it would be an ethical violation in Arizona, at least, but perhaps your state has different rules.)  Moreover, given principles of comity, we doubt that any federal judge would want to participate in assisting an attorney in avoiding criminal prosecution in another jurisdiction.  You may not respect Arizona, but the federal courts generally treat it like a state just like any other.

As it turns out, there are a number of deponents with no attachment to either side who reside in Arizona. You have noticed depositions of Larry Heimer, Sheila Snyder, Keith Jenkins, Matt Leberer and Chris Loomis. These can take place nowhere but Arizona. It is perhaps a small thing to be deposed in Maryland vs. DC vs. Virginia. Phoenix is 250 miles from any border. People will not simply "step over the border" as you stated, to protect you, to whom they owe no favors. Since you have to be in Arizona in any event for these 5 depositions, reneging on our stipulations to depose Jenni and Joe Loomis in Arizona (after flight arrangements have been made and paid for) and seeking a protective order to force us to take the depositions of Stuart Bennett and Daniel DiDio outside Arizona will do you no good.

I know you are panicked, but you have not developed a sensible response. Let me suggest three. (1) Come to Arizona and face the music; (2) take the depositions by video conference; and (3) send another of the 1500 DLA Piper lawyers.

*See id.*, Exh. AA. This left Intersections and its counsel no other choice but to seek a protective order from this Court requiring all party and Arizona depositions to be taken in Virginia.

## II.  A Protective Order Is Warranted

Loomis and his current counsel, Hunter, Humphrey & Yavitz, PLC, are engaged in a continuous and systematic pattern of harassment and intimidation directed towards Plaintiffs, Intersections and NEI, as well as their counsel, DLA Piper LLP (US). As discussed more fully above, this conduct has become so pervasive that Plaintiffs and their counsel seek (1) the Court's assistance in restraining Loomis and his counsel from any further harassment, (2) a protective order specifying that all Arizona depositions and party depositions be held in Virginia, and (3) Court-ordered sanctions.

### A.  Loomis and His Counsel Have Threatened to File Baseless Criminal Charges Against Intersections and Its Counsel In Arizona and Have Them Thrown in Jail If They Enter Arizona for Depositions

Within days of entering their appearance in this case, Loomis' counsel went from cooperative new kids on the block to playground bullies. As explained in the Motion to Compel Discovery, filed contemporaneously herewith and incorporated herein, Loomis' counsel appear

12

to have done everything but work on this case in a meaningful and ethical manner.   Far surpassing their everyday hi jinx of refusing to produce documents, then promising them right before a motion to compel could be filed, then not following through on those promises, etc., Loomis' counsel have condoned conduct on behalf of their client meant to harass and intimidate Plaintiffs and their counsel and now have taken to harassing and intimidating counsel themselves – threatening counsel's freedom and livelihood.

The most egregious form of harassment by Loomis and his counsel revolves around the return of a laptop computer.  In short, Loomis took the wrong computer when he was terminated by NEI.  He figured this out in September and his counsel requested a swap of laptops – Loomis' laptop for NEI's laptop, which he had retained for almost a year.  Plaintiffs' counsel conducted an investigation and determined Loomis had indeed kept the wrong computer.  Thus, Plaintiffs' counsel had the laptop in NEI's possession delivered to Navigant Consulting in Washington, D.C., for removal of any NEI data.  Plaintiffs' counsel advised Loomis' counsel of its intention to remove the data and make the swap.  In response, Loomis' counsel repeatedly threatened criminal charges against counsel for moving stolen property across state lines (the laptop Loomis gave to NEI in 2008).  Navigant determined there was no company data on the machine, and Plaintiffs' counsel offered to set up the exchange and image one of Loomis' other computers at the same time, but received only threats in return.  Loomis' counsel delivered NEI's laptop to Plaintiffs on Friday, October 16, 2009.  Plaintiffs then delivered Loomis' laptop to his counsel on Monday, October 19, 2009.

There can be no question that the laptop was not stolen.  Loomis' counsel, however, insists that criminal charges have been filed and that counsel and Intersections will be arrested if they travel to Arizona for depositions.  Any criminal charges or bar complaints related to this or

13

any other matter in this case against Intersections, NEI or their counsel would be preposterous and a flagrant violation of the ethical rules by counsel and an abuse of the criminal process by Loomis.

**B.      Loomis, with the Approval and Support of His Counsel, Continues to Attempt Direct Contact with Intersections and NEI Despite Their Request that He Cease Such Conduct**

Rather than litigating this case, Loomis has turned his attention to harassing and intimidating Intersections and NEI employees/witnesses and their counsel to prevent them from properly litigating this case and exposing Defendants' fraud to the Court.  Loomis' counsel has condoned and refused to put a stop to this conduct.  Indeed, Loomis has stooped so low as to threaten Intersections' CEO with disclosure of an Intersections' employees alleged infidelity, threaten an NEI employee with the ruin of his career, and has made NEI employees so fearful for their safety that NEI has had to hire full-time security.  This cannot be allowed to continue.

**C.      All Depositions of Parties and Arizona Witnesses Must Be Taken In Virginia**

No theft has been committed.  No criminal charges are warranted.  Notwithstanding, Loomis and his counsel have informed Plaintiffs and their counsel that criminal charges have been filed in Arizona against Intersections and their counsel and that they should expect to be arrested and thrown in jail if they travel to Arizona for the depositions.  Currently, both Defendants' depositions are scheduled for November in Arizona, as are depositions of the accountant, and several other witnesses.  This Court properly has jurisdiction over most of the witnesses, as they are parties to this case or perform work in NEI's Virginia office.  The parties should be compelled to take all Arizona depositions in Virginia.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that the

Court grant their Motion for Protective Order, order sanctions against Loomis and his counsel in

an amount and/or form to be determined at the hearing, and award its attorneys' fees and costs.

Dated: October 23, 2009                                        Respectfully submitted,


By: _____/s/_____
      Tara Lee (Virginia Bar No. 71594)
      Ryan C. Berry (Virginia Bar No. 67956)
      Attorneys for Plaintiffs
      DLA PIPER LLP (US)
      1775 Wiehle Avenue, Suite 400
      Reston, Virginia 20190
      Telephone: 703.773.4000
      Facsimile: 703.773.5000
      Tara.Lee@dlapiper.com
      Ryan.Berry@dlapiper.com

      David Clarke (admitted *pro hac vice*)
      Michelle J. Dickinson (admitted *pro hac vice*)
      Melissa R. Roth (admitted *pro hac vice*)
      DLA Piper LLP (US)
      6225 Smith Avenue
      Baltimore, Maryland 21209
      Telephone: 410.580.3000
      Facsimile: 410.580.3001
      David.Clarke@dlapiper.com
      Michelle.Dickinson@dlapiper.com
      Melissa.Roth@dlapiper.com


      *Attorneys for Plaintiffs*
      *Intersections Inc. and NEI, Inc.*

EAST\42593457.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October, 2009, I caused the foregoing

Memorandum in Support of Intersections Inc.'s and Net Enforcers, Inc.'s Motion for Protective

Order and Sanctions to be electronically filed with the Clerk of the Court using the CM/ECF

system, which will then send a notification of such filing (NEF) to the following:

> Thomas M. Dunlap, Esquire
> Email:  tdunlap@dglegal.com
> David Ludwig, Esquire
> Email:  dludwig@dglegal.com
> Dunlap, Grubb & Weaver P.C.
> 199 Liberty Street, S.W.
> Leesburg, Virginia 20175

And I hereby certify that I will electronically mail the document to the following non-

filing users:

> Randy Yavitz
> Email:  yavitz@hhylaw.com
> Candess J. Hunter
> Email:  candess@hhylaw.com
> Isabel M. Humphrey
> Email:  isabel@hhylaw.com
> Hunter Humphrey & Yavitz, PLC
> 2633 E. Indian School Road, Ste. 440
> Phoenix, Arizona 85016

*Counsel for Defendants Joseph C. Loomis and Jenni M. Loomis*

> _____/s/_____
> Tara Lee
> Virginia bar number 71594
> Attorney for Plaintiffs
> DLA PIPER LLP (US)
> 1775 Wiehle Avenue, Suite 400
> Reston, Virginia 20190-5159
> Phone: (703) 773-4150
> Facsimile: (703) 773-5000
> tara.lee@dlapiper.com

EAST\42593457.1