IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Intersections Inc. and Net Enforcers, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Joseph C. Loomis and Jenni M. Loomis, <br><br> Defendants. | Civil Action No. 1:09CV597 (LMB/TCB) |

### DECLARATION OF MICHELLE J. DICKINSON

I, Michelle J. Dickinson, Esquire, hereby declare:

1. I am a partner with the law firm of DLA Piper LLP (US) in Baltimore, Maryland. I have been practicing law with DLA Piper since 1998. I am the lead litigation attorney handling discovery in the above-referenced litigation on behalf of Plaintiffs Intersections Inc. ("Intersections") and Net Enforcers, Inc. ("NEI").

2. On September 10, 2009, almost a full year after NEI terminated Joseph Loomis ("Loomis"), Loomis' counsel contacted me and suggested that Loomis had just discovered that, after his termination, Loomis had retained possession of a laptop belonging to NEI and that he had accidentally returned to NEI a laptop belonging to him. *See* Exh. A. In response, on September 16, 2009, I requested that Loomis provide documentation supporting his claim so that Plaintiffs could investigate. *See* Exh. B. On September 17, 2009, counsel for Loomis provided documentation and the model number of the laptop in Loomis' possession. *See* Exh. C.

3. I then undertook to determine the veracity of Loomis' claim by reviewing the documentation provided and by obtaining and then reviewing documentation obtained from Plaintiffs regarding the laptop in NEI's possession. By letter dated September 25, 2009, I

advised Loomis' counsel that we had confirmed that Loomis had indeed retained the wrong laptop upon his termination from NEI and that the laptop in his possession was NEI's property. *See* Exh. D. I indicated that, prior to exchanging the laptops, NEI would remove and preserve a copy of all data contained on the laptop then in its possession in case it was needed for this litigation. In the interest of cooperation, I suggested that we would send a computer consultant to Arizona to exchange the laptops and, at the same time, image any computer owned, leased, or used by Loomis during and/or after his employment with NEI, in accordance with an outstanding discovery request. This would include the computer tower he stole from NEI after he was terminated.

4. A full week later, by email dated October 2, 2009, Loomis' counsel acknowledged receipt of our September 25, 2009 letter and accepted our offer to have a computer technician facilitate the exchange of the laptops. Loomis' counsel suggested they would be available to do so the following Monday (October 6) or Tuesday (October 7). *See* Exh. E. Loomis' counsel did not respond to our request regarding imaging the computers.

5. In response that same day, I again suggested that the parties arrange for the computer consultant to image Loomis' other computers pursuant to the outstanding discovery requests on the same day of the exchange to avoid the unnecessary additional expenses associated with the consultant having to make more than one trip to Arizona. *See* Exh. F.

6. Loomis' counsel did not respond until Monday, October 5, 2009, where they rescinded their agreement to allow the computer consultant to facilitate the exchange. *See* Exh. G. I immediately responded that a computer consultant was necessary and stated that "In light of the data destruction issues in this case, our client is taking extra measures to ensure that the exchange of computers does not unnecessarily lead to a data destruction problem." *See* Exh. H.

2

In response, Loomis' counsel threatened to add a conversion counterclaim and have her client call the police:

> If I do not have Joe's laptop by the end of the business day tomorrow, we will move to add a conversion count to the counterclaim and Joe will call the police. I am not conditioning the release of NEI's laptop on the resolution of any of our discovery issues, and there is no excuse for you conditioning the release of Joe's laptop on any of those issues.

See Exh. I.

7. In response, I advised of our intention to return Loomis' laptop in "the next week or so" after any NEI data was removed:

> We are prepared to retrieve Net Enforcers' laptop and return Loomis' laptop with the software intact and only the data removed. We will do so, however, only under circumstances that will protect our clients from potential claims from Loomis that our clients destroyed data or damaged either computer. Further, we will do so under circumstances such that a qualified computer technician may testify that the computer Loomis provides was not damaged after the exchange and before any forensic analysis can be performed. Accordingly, we will send a computer technician to your offices to make the exchange and transport the computer back to the East Coast for examination. We should be able to do so in the next week or so after the data has been removed. We trust this will assuage your desire to bring civil or criminal charges against our clients related to the laptop computer and will enable you to refocus your energies on the actual issues in this case.
>
> We again request that you provide Loomis' computers for imaging by the computer technician we send to exchange the laptops. This will save the parties time and resources. Rather than threatening a counterclaim or criminal action, perhaps you could respond to our request for the computer images directly and indicate whether you intend to produce Loomis' computers for imaging, an image of his computers, or nothing at all. If so, we can arrange for the images to be made by the computer technician at the time of the laptop exchange. If not, we will move forward with seeking the court's assistance with this matter.

See Exh. J.

8. Loomis' counsel demanded the return of Loomis' laptop by 5:00 p.m. the next day, October 6. She agreed, however, that that if our computer consultant could give sufficient

3

notice for Loomis to arrange to get the computer tower to their offices prior to the consultant's visit, he could image the hard drives on the computer tower that same day. *See* Exh. K.

9. I advised that the laptop was on its way to Washington, D.C., so that our computer consultant could remove NEI's company data. *See* Exh. L. I advised that we were taking extra precautions in light of the data destruction issues in this case:

> The laptop Joe returned to NEI last year is on its way to Washington, D.C. so that our computer consultant can remove the data, not the software. Once it has been removed, we will arrange for a time for him to deliver it to your office in Arizona and pick up the NEI laptop. We will schedule the exchange for a day when Joe can provide the computer tower for imaging as well. We understand that you do not care whether we take special precautions with Joe's computer, but we must protect our clients from allegations Joe likely will make if we don't do so. If you recall, a just few hours ago, he had you ready to file a counterclaim and call the police over a laptop he gave NEI over a year ago and that we already agreed to return. We're covering ourselves. We expect you would do the same in this situation.

10. Loomis' counsel responded and again raised the spector of criminal charges and a counterclaim. *See* Exh. M. Loomis' counsel did not provide a date or time for the technician to image the computer tower.

11. On October 14, 2009, Loomis' counsel sent a person to NEI's offices to return the laptop Loomis wrongfully retained. NEI's employees did not know about or understand the nature of the dispute, and thus refused to accept the laptop. *See* Exh. N. Loomis' counsel stated in an email that day that Loomis had contacted the police regarding the alleged theft of his laptop.

12. Later that evening, I advised by email that the computer consultant had determined that there was no company data on the laptop. I, therefore, suggested that Loomis advise as to when he could arrange for the computer tower to be retrieved from storage so that a computer consultant could facilitate the exchange of the laptops and image the computer tower

on the same day. *See* Exh. O.

13. On October 15, 2009, Loomis' counsel demanded that we immediately retrieve the laptop then in Loomis' possession. Loomis' counsel accused us of the interstate transportation of stolen goods and advised that the police were being notified:

> Michelle, Isabel is out of the office today, but I saw this email and must respond. You were informed on September 10 that NEI was in possession of Joe's laptop, that it had no NEI data on it and that Joe wanted it back immediately. The laptop was in this building in AZ, but you and NEI refused to return it, and to make matters worse, NEI removed it from the building and from Arizona (interstate transportation of stolen goods). Now over a month later, you finally send this email, acknowledging that everything Joe told you about the laptop was true. Let me make myself clear, **you are holding stolen property**. The police are being notified. You can make all of the excuses that you want to, but continuing to hold someone else's property after they have demanded its return is theft. Look it up.
>
> Regarding NEI's computer, we have tried to return it to you, but you have not agreed to accept it. We tried to deliver it to NEI right here in the building (as they are moving out) but they refused it, claiming they had to talk to "their lawyer" first. I WILL NOT KEEP THIS COMPUTER IN THIS OFFICE FOR ANOTHER DAY. It's your choice, either NEI accepts it downstairs or I will personally deliver it to the DLA Piper office at 1 pm AZ time today. Your choice. If I don't hear from you in the next two hours, I will make the choice for you.

*See* Exh. P.

14. Before I had the opportunity to respond, Loomis' counsel sent another email stating:

> Only 45 minutes to go and, if I don't hear from you, I will make the choice for you. Either it will go to NEI's office here in our building or to the DLA Piper office in AZ (that I can see out my window). Make the choice in the next 45 minutes, or I'll make it for you. No more fooling around.

*See* Exh. Q.

15. In response to the first email, I advised of our understanding that Loomis' counsel had agreed to exchange the laptops on the same day that a computer consultant imaged the

EAST\42594318.1

computer tower and that as soon as Loomis provided a date, we would send a computer technician to Arizona. *See*, Exh. R.

16. Loomis' counsel responded:

Wrong. Read my lips - The NEI laptop WILL NOT remain in our office for one more day. Your time is up.

*See* Exh. T.

17. Later that afternoon, Loomis had the laptop in his possession delivered to the Phoenix office of DLA Piper. *See Id.*, Exh. U:

MIchelle, attached is an Acknowledgement of Receipt signed by your law firm's AZ receptionist Paula Hawley, acknowledging the receipt of NEI's laptop. <u>The police have been notified that your client, with your help, has stolen Joe's laptop and transported the stolen laptop out of state.</u> We demanded its return September 10. It was right here in our building when you learned that it was Joe's laptop and that he wanted it back immediately. After that, you and/or your client spirited it out of the building and transported it accross [sic] state lines. You have spent the last 35 days making excuses on why you didn't return it. <u>I don't know about your jurisdiction, but in AZ, if a lawyer aided and abetted a client in a theft (and then encouraged the client to transport the stolen property across state lines) the AZ state bar would frown on that. We are done fooling around with this. It is now a police matter.</u> **I won't be surprised if you and your client are arrested when you arrive in AZ.**

18. By letter sent via email on Friday, October 16, 2009, I advised that a computer consultant would arrive at Loomis' counsel's law offices on Monday, October 19, 2009 to deliver the laptop and to image the computer tower. I expressed our hope that this was the end of Loomis' and his counsel's diversionary tactics and that the parties could get back to litigating this case. *See* Exh. V.

19. On Monday, October 19, 2009, Plaintiffs' computer technician delivered the laptop to Loomis' counsel. Loomis' counsel did not, however, provide the computer tower for imaging.

6

20. On the night of October 19, 2009, Loomis sent an email to me threatening criminal charges:

> Fyi, I have a criminal attorney working on this. She was the public defender for Phoenix for many years and knows the city prosecutor very well. Relationships I built while working for the feds. I expect to have the investigation and charges filed within a week, including Dickinson and also INTX.
>
> I wonder if they are going to try to lie their way out of this one also. It sure will be a circus act for their shareholders. I feel bad for those who own stock of intx, a identity theft company stealing property. I also expect to also explain this to the wsj also.

*See* Exh. W.

21. On October 20, 2009, Loomis' counsel emailed me and again accused me and Intersections of theft and threatened to have us thrown in jail:

> I have to tell you a true story. My daughter is also an attorney in AZ, and she had a witness in a case that was in jail, and the sheriff failed to transport the woman to court. I asked why the woman was in jail and learned that the woman had a boyfriend who always left his car unlocked and his keys under the seat of his car while he was at work. He had told that woman that if she needed transportation, she could use his car *but it had to be back when he got off work*. Some time later the woman had a need for transportation and borrowed his car from his place of work. When he came out of work...no car. He called the police, and while the police were standing there, she drove up with his car to return it. She is now doing 2 years in jail for the theft of that car!!! In AZ we frown upon folks taking other people's property without permission.

*See* Exh. X.

22. Since the filing of the Complaint of this action in May 2009, Loomis has continuously attempted to contact both Intersections and NEI executives and employees, despite repeated requests that he not do so. Loomis' current counsel has condoned their client's behavior.

23. Since August 3, 2009, Loomis has repeatedly emailed and even left a voicemail message for Intersections' CEO Michael Stanfield regarding fabricated business opportunities

7

and settlement offers consisting of both parties walking away. *See* Exh. Y. Plaintiffs' counsel has repeatedly requested that Loomis cease all communications, but Loomis' counsel has refused.

24.   On October 22, 2009, however, Loomis crossed the line from irritation to harassment and intimidation when he emailed Mr. Stanfield threatening criminal action against Intersections and counsel as well as a bar complaint. Indeed, Loomis even threatened to reveal an alleged extra-marital affair by an Intersections employee.

> To date, your "brilliant" representation has only demonstrated how to be a criminal, earned themselves a bar complaint and investigation and soon is only going to land either NEI, [Intersections] or themselves in Jail . . . . This is no threat either, its [sic] merely explaining to you the continued collateral manage [sic] that your counsel and "team" are creating. Once the newspapers get a hold of this, what do you think the shareholders are going to say about this? . . . [Intersections] hasn't been in the newspapers very much but it seems that the "team" is going to make it pretty popular.

*See* Exh. Y.

25.   Loomis, however, has not limited his harassment to Intersections' CEO. Indeed, on August 31, 2009, Loomis contacted an NEI employee by telephone and threatened that if he testified in this action Loomis would adversely affect his career. Loomis also attempted to call a female employee of NEI that day. The NEI employees are in such fear for the personal safety because of Loomis' harassment, that NEI has had to hire Allied Barton security to protect its employees and witnesses.

26.   On September 9, 2009, I *again* told Loomis' counsel that neither Intersections and NEI wanted to have any direct contact with Loomis and requested that Loomis' counsel advise him to stop communicating directly with Plaintiffs and stop calling and intimidating Plaintiffs' employees. Two days later, on September 11, 2009, counsel for Loomis responded to Plaintiffs'

request with the following: "I received a letter from you responding to mine. I forget the date because I placed it so quickly in the round file. In the future, please don't waste your time or mine writing to me with another audience in mind." *See* Exh. Z. I responded:

> The letter to which I believe you are referring dealt with, among other things, your clients' intimidation of witnesses. I cannot image how you would consider such a serious topic to be a waste of your time, much less mine. We take this matter very seriously and will not hesitate to escalate it to the court, if it continues. And yes, my letter was written with the expectation that the court may at some point need to see its contents. Regardless of the topic, however, I always treat opposing counsel with respect, whether deserved or not. I would expect the same from you in the future.

27. Both parties in this case have noted or stated their intention to take numerous depositions in the State of Arizona. According to Loomis and Loomis' counsel, however, if Plaintiffs' counsel or Intersections representatives travel to Arizona for depositions, they should expect to be arrested and thrown in jail. Accordingly, on October 22, 2009, I met and conferred with Loomis' counsel and advised that the depositions would have to take place in Virginia or another state. Loomis' counsel advised by email that we should travel to Arizona and "face the music." Loomis' counsel has refused to agree to depositions in Virginia or any other location for these witnesses:

> Michelle, I think it is very appropriate that Joe has given you fair notice of a pending criminal complaint rather than ambushing you. You should thank him for acting fairly and responsibly. If you feel you are not criminally liable for directing the theft and interstate transportation of stolen property, I'm sure there are a few (hundred) criminal attorneys at your firm who could attempt to persuade the prosecutor not to prosecute. Hiding is not the answer.
>
> In addition, it may be a violation of your ethical obligations as an officer of the court to attempt to avoid a warrant for your arrest, if indeed any such warrant has been issued. (We believe it would be an ethical violation in Arizona, at least, but perhaps your state has different rules.) Moreover, given principles of comity, we doubt that any federal judge would want to participate in assisting an attorney in avoiding criminal prosecution in another jurisdiction. You may not respect Arizona, but the federal courts generally treat it like a state just like any other.

EAST\42594318.1

> As it turns out, there are a number of deponents with no attachment to either side who reside in Arizona. You have noticed depositions of Larry Heimer, Sheila Snyder, Keith Jenkins, Matt Leberer and Chris Loomis. These can take place nowhere but Arizona. It is perhaps a small thing to be deposed in Maryland vs. DC vs. Virginia. Phoenix is 250 miles from any border. People will not simply "step over the border" as you stated, to protect you, to whom they owe no favors. Since you have to be in Arizona in any event for these 5 depositions, reneging on our stipulations to depose Jenni and Joe Loomis in Arizona (after flight arrangements have been made and paid for) and seeking a protective order to force us to take the depositions of Stuart Bennett and Daniel DiDio outside Arizona will do you no good.
>
> I know you are panicked, but you have not developed a sensible response. Let me suggest three. (1) Come to Arizona and face the music; (2) take the depositions by video conference; and (3) send another of the 1500 DLA Piper lawyers.

*See* Exh. AA. This left Intersections and its counsel no other choice but to seek a protective order from this Court requiring all party and Arizona depositions to be taken in Virginia.

I declare under penalty of perjury under the laws of the State of Virginia and the United States that the foregoing is true and correct and that this document is executed on October 23, 2009 in Baltimore, Maryland.

*Michelle J. Dickinson*
Michelle J. Dickinson

EAST\42594318.1