1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




-------------------------------:
                               :
INTERSECTIONS INC, et al.,     :
           Plaintiffs,         :
                               :
 -vs-                          :      Case No. 1:09-cv-597
                               :
                               :
JOSEPH C. LOOMIS, et al.,      :
           Defendants.         :
                               :
-------------------------------:




                         HEARING ON MOTIONS

                         October 30, 2009

             Before:  Mag. Judge Theresa C. Buchanan
```

APPEARANCES:

Michelle J. Dickinson and Ryan C. Berry,
Counsel for the Plaintiffs

Candess J. Hunter and David Ludwig,
Counsel for the Defendants

```
 1              NOTE:  The case is called to be heard at 9:59 a.m.
 2   as follows:
 3              THE CLERK:  Civil action number 09-cv-597,
 4   Intersections Incorporated, et al. versus Joseph C. Loomis.
 5              THE COURT:  Good morning.
 6              MS. DICKINSON:  Good morning, Your Honor.
 7              THE COURT:  Would counsel identify themselves for
 8   the record, please.
 9              MS. DICKINSON:  Michelle Dickinson and Ryan Berry
10   for the plaintiffs, Intersections and Net Enforcers, Your
11   Honor.
12              THE COURT:  All right.
13              MR. LUDWIG:  Good morning, Your Honor.  David Ludwig
14   and Candess Hunter for the defendants.
15              THE COURT:  All right.  This comes on the
16   plaintiffs' two motions.
17              Do you have anything to add to your motions?  I've
18   read all of the briefs.
19              MS. DICKINSON:  Yes, Your Honor, just a short bit,
20   if I may.
21              THE COURT:  All right.
22              MS. DICKINSON:  Your Honor, there have been a few
23   developments as of late.  As you can imagine, this is sort of
24   a quickly moving issue in this case.  If I can just turn to
25   the motion for protective order first, please.
```

1           THE COURT:  Certainly.

2           MS. DICKINSON:  In--  We have been advised that the Phoenix Police Department is not planning on pressing criminal charges against Intersections with respect to this laptop issue.

6           In the opposition to the motion for protective order the defendants indicated that, they provided the criminal report number and the name of the police officer who is in charge of the case, and they indicated that Intersections and counsel, me, were going to be the subject of criminal charges.

11          What we did was we had to hire criminal counsel. And our criminal counsel contacted the Police Department and actually learned that there were no criminal, there was no criminal report filed against me at all.  That--  That was my reaction.  That the, there was a criminal report filed by Mr. Loomis against Intersections only, and that he did not advise the police officer that there was an underlying civil action or that the computer actually was returned.

19          So, it's not clear to me because I don't have a crystal ball as to whether he will do this again or whether he plans to file other charges.  But it seems hard for me to ask the Court at this point or for us to ask the Court at this point to move depositions from Arizona to Virginia if there aren't any criminal charges pending.  We certainly don't want to be overstepping our bounds.

1        But I think what we do need the Court's help with
2   today is stopping the harassment and the intimidation of
3   witnesses and this blackmail and extortion that they have,
4   that Mr. Loomis has thrust upon the CEO of Intersections.
5        And I know that's all detailed in my papers.  I can
6   go through it with you if you like.
7        THE COURT:  No.  Now, who were you going to depose
8   in Arizona who is not a party and not an employee of the
9   defendants?
10       MS. DICKINSON:  There are certain former employees
11  and an accountant.  And our thought was the accountant has
12  already said that he would go outside the state to have his
13  deposition taken.  So, I don't think he's a problem.
14       The former employees, I believe we could get them to
15  come out, to come to Virginia for their depositions.  It's a
16  real concern, we have safety concerns.  We have--
17       THE COURT:  And are the former employees defendants'
18  witnesses or your witnesses?
19       MS. DICKINSON:  They're our witnesses.
20       THE COURT:  Your witnesses.
21       MS. DICKINSON:  Well, except for one, they're our
22  witnesses.  One is the defendants' brother, and at this point
23  I don't know that I would care all that much if I take his
24  deposition or not.
25       THE COURT:  Well, what I mean to say is, these

```
 1   witnesses, are they witnesses whom the defendant has
 2   designated as possibly testifying on their behalf at trial, or
 3   are these witnesses that you want to depose who you may use at
 4   trial?
 5            MS. DICKINSON:  Both.
 6            THE COURT:  I see.  All right.  Anything else?
 7            MS. DICKINSON:  I'm assuming you don't want me to go
 8   through the underlying facts--
 9            THE COURT:  No.
10            MS. DICKINSON:  Okay.
11            THE COURT:  I don't need that.  I've read
12   everything.
13            MS. DICKINSON:  I understand.
14            THE COURT:  All right.  Thank you.
15            MS. DICKINSON:  Thank you, Your Honor.
16            THE COURT:  Ms. Candess, what do you have to say,
17   Ms. Candess Hunter?
18            MS. HUNTER:  Well, quite a lot.  I learned a lot
19   just in the last few moments of allegations.  That I have
20   talked to the accountant and he says he's not leaving Arizona,
21   he's not going out of state for any deposition.  And that was
22   Wednesday.  So, if it's changed since then, it's new to me.
23   But I was in a flight to come here, so I haven't talked to him
24   since then.
25            I guess where I would really like to start, Your
```

1  Honor, is with the motion to compel, just to give you an idea
2  of what's been going on in this case.
3           THE COURT:  I think I understand what's been going
4  on.
5           MS. HUNTER:  Do you have it?
6           THE COURT:  I've read everything.
7           MS. HUNTER:  Okay.
8           THE COURT:  I've read your e-mails, I've read
9  everything.
10          MS. HUNTER: Excellent.  Excellent.  And I have a
11 timeline, it ended up in several pages, two pages on my
12 briefing, but it's down to one page, it makes it very clear,
13 Your Honor, of the precipitous nature of that motion to
14 compel.  For reasons that are truly beyond us all, that was
15 filed within a day of being told that the things were on their
16 way to her.  Filing a motion to compel in these circumstances
17 was clearly done, talk about harassment, to get us to come out
18 here and deal with this issue, which is truly a nonissue.
19          She is asking for sanctions.  I would request, Your
20 Honor, that sanctions and at least the costs of this trip and
21 exercise in futility on this motion to compel be assessed
22 against the plaintiffs.
23          The two issues that were brought up in her motion to
24 compel are the load file.  She received all of the documents,
25 she could look at all of the documents.  Two of the elements

```
 1  of the load file were inadvertently omitted.  That was
 2  discovered on October 21.
 3          On the 22nd we had a meet and confer, and yet--  By
 4  phone, of course.  And in that meet and confer we said, we
 5  will get them to you immediately.
 6          And it was truly a meet and disregard because that
 7  discussion was completely disregarded.  The next day we got
 8  the load file, we overnighted it to her for Saturday delivery
 9  as she had requested.  But meantime at 5 p.m. on Friday, she
10  filed a motion to compel for--  I think that is an abuse of
11  process.
12          Then we get to the Jenni Loomis documents.  We
13  discovered on October 21 that the plaintiffs were questioning
14  whether or not Jenni Loomis' documents were included.  We
15  thought they were, but we met with our clients, called our
16  clients to make sure.  And they had misunderstood, they didn't
17  know that duplicative documents needed to be Bates labeled and
18  sent as well.
19          So, we straightened them out on that and talked to
20  Ms. Dickinson on Thursday, October 22, explained the mix-up.
21  And it said that her documents would be imaged and forwarded
22  to her within the next few days.
23          The next day Ms. Dickinson filed her motion to
24  compel.  They knew the documents were coming.  They came on,
25  we overnighted them on October 28.  I am sure they arrived in
```

8

1   their office yesterday.
2           This motion to compel is completely spurious and
3   should be not only denied, but assessed the costs.
4           Then we get to the other one, the motion for
5   protective order.  Now, Ms. Dickinson's claim that she wasn't
6   mentioned in the police report is certainly news to me because
7   that was certainly my, what Joe had been telling the police
8   officer, was Ms. Dickinson and her clients, Intersections and
9   NEI, that were, that had the laptop computer, his laptop
10  computer in our building.
11          NEI is on, was on the second floor of our building.
12  Hunter, Humphrey & Yavitz, our law firm, is on the fourth
13  floor.  So, it was right downstairs.
14          There was no doubt that he filed the complaint about
15  all of them and gave notice.  And to tell you the truth, I
16  think that is incredibly appropriate notice.  We had been
17  telling her for weeks, you can't keep somebody's property, it
18  is not discovery to steal people's documents or property--
19          THE COURT:  Steal?
20          MS. HUNTER:  Well, to take them.
21          THE COURT:  Take?
22          MS. HUNTER:  Yes.  Your Honor, they--
23          THE COURT:  Take?
24          MS. HUNTER:  They had--
25          THE COURT:  Your client left it behind.

```
 1              MS. HUNTER:  Yes, yes, he did.
 2              THE COURT:  How is it taking on their part?
 3              MS. HUNTER:  Well, by not returning it.  And by
 4   taking it, they not only didn't return it--
 5              THE COURT:  That's a misrepresentation.
 6              MS. HUNTER:  Okay.
 7              THE COURT:  They didn't take anything, Ms. Hunter.
 8              MS. HUNTER:  Well, they actually took it out of
 9   building, Your Honor, and flew it to Washington, D.C. to have
10   it taken apart--
11              THE COURT:  Well, you're getting yourself in hot
12   water.
13              MS. HUNTER:  Okay.
14              THE COURT:  You're getting yourself in deeper with
15   every word coming out of your mouth, I have got to tell you,
16   Ms. Hunter.
17              MS. HUNTER:  Okay.  Okay.
18              THE COURT:  Anything else you want to say?
19              MS. HUNTER:  Yeah, I would like to talk to you a
20   little bit about what's happening today.
21              THE COURT:  Good, I would like to hear it.
22              MS. HUNTER:  Today we have a 30(b)(6) deposition
23   that was noticed for 9 o'clock on October 30.  And that is of
24   the Intersections person, the CEO of Intersections.
25              Anyway, that was scheduled for 9 o'clock out in
```

1   Reston, which is about, I understand about 20 miles from here.
2   That was scheduled to go, everything was set.  Last Friday
3   night we received the fax of the notice of this hearing.
4               THE COURT:  Yes.
5               MS. HUNTER:  Set for the same day.  So--
6               THE COURT:  This is when we always hear motions.
7               MS. HUNTER:  Yes, exactly, Your Honor.
8               THE COURT:  Yes.
9               MS. HUNTER:  So, we both--  So, we made
10  arrangements--  We are a very small law firm, there is three
11  of us attorneys.  We made arrangements for two of us to fly
12  out here so that we could handle the deposition and the
13  hearing.
14              And Wednesday night we hear from Ms. Dickinson that
15  she is not going to be at the, she is not going to have her
16  client at the deposition until after this hearing.  And we
17  explained that we had--
18              THE COURT:  When did you fly out here, Ms. Hunter?
19              MS. HUNTER:  Yesterday, Your Honor.
20              THE COURT:  So, you knew about that before you came
21  out?
22              MS. HUNTER:  But we had already paid for the tickets
23  and were set to go.  So, we had told Ms. Dickinson that we had
24  already booked into this thing.
25              Certainly DLA Piper has got 1,500 lawyers, Your

1   Honor.  And there is only three of us.  And if we can be,

2   manage to be in two places, it seemed absurd that DLA Piper

3   couldn't manage to be, to cover both things for some short

4   period of time.

5            So, I would like your help on that, Your Honor.

6            THE COURT:  Anything else?

7            MS. HUNTER:  I think that's the latest.

8            THE COURT:  All right.  Mr. Ludwig, could you come

9   to the podium, please.

10           Mr. Ludwig, did you have any idea that Arizona

11  counsel was having her client file a criminal complaint

12  against counsel here in D.C.?

13           MR. LUDWIG:  No, Your Honor, I did not.

14           THE COURT:  Have you been in on any of these

15  conversations back and forth about the computer or about the

16  depositions or about the discovery?

17           MR. LUDWIG:  Not actively, Your Honor.  I have been

18  receiving file copies of the correspondence.

19           THE COURT:  Well, I suggest that your conduct then

20  and your participation in this case is going to step up

21  markedly.  As local counsel, we expect you to be responsible

22  for conduct of pro hac vice counsel.  You were the one who

23  moved her in pro hac vice in this case, and you're going to be

24  held responsible for defendants' counsel's conduct from this

25  point on.

```
 1              And quite frankly, it's at your peril when you
 2   decide to be local counsel for out-of-state attorneys and then
 3   not be involved enough to understand what's going on and what
 4   they are doing in the case.
 5              I am going to not hold you personally responsible
 6   for this today, but from today on I will.
 7              MR. LUDWIG:  Understood, Your Honor.  And for the
 8   record, our firm sent--
 9              THE COURT:  I assume that you know how an attorney
10   is expected to conduct him or herself in this court.
11              MR. LUDWIG:  Of course, Your Honor.  For the record,
12   our firm sent notice of our intent to file a motion to
13   withdraw to defendants just a few days ago.
14              THE COURT:  Okay.
15              MR. LUDWIG:  And we'll be filing those papers
16   shortly.
17              THE COURT:  All right, thank you.
18              This is without a doubt the most outrageous conduct
19   by an attorney that I have ever seen, not only on the bench
20   but in private practice and in the U.S. Attorney's Office.
21              You can sit down, Mr. Ludwig.
22              I have absolutely no doubt that counsel's caution in
23   making arrangements for the exchange of the computers was
24   justified by your conduct and by your client's conduct.  It
25   was amply justified.  And there was no significant delay in
```

1  arranging that.

2              If you were seriously concerned about that laptop
3  being returned immediately after your client had left it
4  behind for a year, you could have brought a motion before me
5  to have it returned.  Instead, you chose to have your client
6  file a criminal complaint apparently against the plaintiff,
7  but you misrepresented to plaintiffs' counsel that it was also
8  against them and that--  Yes, you did.  I looked at the
9  e-mail.  And that they might be subject to arrest when they
10 step into the state for depositions.

11             How dare you.  How dare you do something like that.
12 I just cannot believe it.  I will not allow you to conduct
13 yourself in this manner and practice before this Court.  It
14 will not happen in the future, period.

15             I also believe that their motion to compel was amply
16 justified by your failure to repeatedly provide documents that
17 were promised.  You failed repeatedly to provide the documents
18 on dates that you had promised them.  And then when they were
19 promised, when they were provided, they weren't complete.

20             So, their motion to compel was justified.  There was
21 no reason for them to think that your promise to produce them
22 over the weekend last weekend was going to be complied with.
23 They needed to file their motion by now last Friday to get it
24 heard by this Friday, and I think it was totally justified.

25             I can't believe your conduct is the norm in Arizona,

1  I refuse to believe that.  I'm amazed if you've engaged in
2  this conduct before in Arizona, you haven't been sanctioned by
3  a court before.  But I'll tell you, you're going to be subject
4  to sanctions from here on out.
5          I am going to grant, first, the plaintiffs' motion
6  to compel.  All documents that are still outstanding that have
7  not been produced and all documents that have been produced
8  will be produced in the format agreed to by next Friday,
9  including proper load files.  They must be--
10         MS. HUNTER:  That's already.
11         THE COURT:  Pardon?
12         MS. HUNTER:  That's already been done, Your Honor.
13         THE COURT:  Pardon?
14         MS. HUNTER:  That's already done, Your Honor.  They
15 received--
16         THE COURT:  Well, you better make sure it's done.
17         And if plaintiffs' counsel thinks it hasn't been
18 done, I would like you to send her an e-mail or give her a
19 letter today and tell her what is deficient.
20         And whatever is on there, I expect it to be done by
21 next Friday, that's November 6 at 5 p.m.  It will be delivered
22 to counsel's offices here in D.C. by that time complete and in
23 format that is required.
24         I'm also going to grant the motion for protective
25 order.  And I will tell you that all communication, first of

```
 1   all, both oral and written from here on out will only be made
 2   through local counsel.  You are not to contact plaintiffs'
 3   counsel directly by phone, by e-mail, by letter.
 4             You will also direct that your client will have no
 5   contact with the plaintiffs, the plaintiffs' employees or the
 6   plaintiffs' witnesses.
 7             And as I said before, I will hold local counsel
 8   responsible for all of your communications from this point
 9   forward.  And you will have to sign off on any e-mails or
10   letters, and you will have to have any discussions with them
11   about discovery.
12             There will be absolutely no more harassment of
13   plaintiffs' counsel by you.  And all of the depositions by the
14   plaintiff will be held either in Virginia or by telephone
15   deposition at their choice.
16             If they are to be held in Virginia, then you will
17   pay, the defendants will pay the cost of transportation and
18   lodging for all of the witnesses who are to appear in Virginia
19   for deposition.
20             If plaintiff decides that they want to take some of
21   them by video deposition, I will allow them to do that.
22   Otherwise, you are going to have to make them show up.  And if
23   it is somebody who you want to appear for trial to testify on
24   your behalf, then I suggest that you comply with their
25   directions as to that.
```

1              I will further order that, and I will tell you that
2     if you violate my orders today or if you engage in any of this
3     conduct in the future, including, I am going to include how
4     you behave and act at depositions, it will not only result in
5     sanctions as to you and your clients monetarily, jointly and
6     severally, it will also be sanctions, substantive sanctions
7     against your defendants', your clients' defense, and I will
8     revoke your pro hac vice status.
9              If your motion to withdraw as local counsel is
10    granted, I would expect that there will be local counsel who
11    will be immediately substituted.  I am not going to allow you
12    to operate without local counsel.
13             So, before you get out, you're going to have to have
14    new local counsel in place.  And they are going to also be
15    subject to my orders.
16             And Mr. Ludwig, I expect that you will inform local
17    counsel yourself that this Court will expect that they will be
18    personally responsible for Arizona counsel's conduct.
19             Now, as to the deposition today, what time would you
20    like it to start?
21             MS. DICKINSON:  Your Honor, the witness is prepared
22    to be there at 11:30.  They could maybe be there a little
23    earlier.  We have security guards meeting us there at 11:30.
24             THE COURT:  All right.  11:30 it will be.
25             Is there anything else today?

```
 1              MS. DICKINSON:  Your Honor, there is, there is one
 2   other thing.
 3              THE COURT:  All right.
 4              MS. DICKINSON:  The depositions that are scheduled
 5   in Arizona are very important depositions.
 6              THE COURT:  Yes.
 7              MS. DICKINSON:  Jenni Loomis is scheduled for next
 8   Sunday, a week from this Sunday.  Joe Loomis is scheduled for
 9   Monday.  And the accountant is scheduled for Tuesday.  And
10   then our expert reports are due on Friday.
11              So, it is very important for us to get those in.
12              THE COURT:  A week from Monday they are scheduled
13   for?
14              MS. DICKINSON:  They are a week from this Sunday.
15              THE COURT:  A week from this Sunday.
16              MS. DICKINSON:  Actually Sunday, Monday, Tuesday.
17   It would be a hardship on us if those were, if we had to then
18   negotiate with counsel to reschedule them--
19              THE COURT:  Your discovery cutoff is December 11?
20              MS. DICKINSON:  Yes.
21              THE COURT:  All right.
22              MS. DICKINSON:  If we could just make them come here
23   on those dates, everybody just comes to Virginia, that would
24   be great.
25              THE COURT:  They are set aside.  I don't see any
```

18

```
 1   reason why they can't be here on those dates.  Those dates
 2   have already been scheduled, correct?
 3              MS. DICKINSON:  Yes.
 4              THE COURT:  All right.
 5              MS. HUNTER:  Your Honor--
 6              THE COURT:  Yes.
 7              MS. DICKINSON:  Okay.  Thank you, Your Honor.
 8              MS. HUNTER:  Your Honor, we have no way to get the
 9   accountant here.  He's been served with a subpoena in Arizona,
10   and he doesn't work for any of us.
11              THE COURT:  Okay.  Well, the deal is this--
12              MS. HUNTER:  He refuses to come here.
13              THE COURT:  Okay.  It's up to plaintiffs' counsel,
14   if they want to take a video deposition of him, that's fine.
15   If they think that is not workable, if they think it's not
16   sufficient in their view, and in only their view, then I'll
17   allow them to insist on his deposition being here in Virginia.
18              So, the deal is, either he will comply with the way
19   they want to have the deposition conducted or he will not be
20   allowed to testify at trial.  There you have it.
21              MS. HUNTER:  That's okay with us.
22              THE COURT:  Court stands in recess.
23              MS. DICKINSON:  Thank you, Your Honor.
24              NOTE:  The hearing concluded at 10:19 a.m.
25         ---------------------------------------------------
```

1
2          C E R T I F I C A T E   of   T R A N S C R I P T I O N
3
4
5          I hereby certify that the foregoing is a true and
6  accurate transcript that was typed by me from the recording
7  provided by the court.  Any errors or omissions are due to the
8  inability of the undersigned to hear or understand said
9  recording.
10
11         Further, that I am neither counsel for, related to,
12 nor employed by any of the parties to the above-styled action,
13 and that I am not financially or otherwise interested in the
14 outcome of the above-styled action.
15
16
17
18
19
20                              /s/ Norman B. Linnell
21                              Norman B. Linnell
22                              Court Reporter - USDC/EDVA
23
24
25