**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| **INTERSECTIONS, INC., et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 1:09-CV597 (LMB/TCB) |
| ) | |
| **JOSEPH C. LOOMIS, et al.** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
DISCOVERY, FOR LIMITED RELIEF FROM THE OCTOBER 30, 2009 ORDER,
AND TO EXPAND THE DISCOVERY PERIOD FOR A LIMITED PURPOSE**

Defendants Joseph C. Loomis and Jenni M. Loomis (collectively, the "Defendants"), by and through counsel, respectfully submit this Memorandum in Support of their Motion to Compel Discovery, for Limited Relief from the Court's October 30, 2009 Order, and to Expand the Discovery Period for a Limited Purpose. There are three separate issues before the Court. First, Plaintiffs' document production contains numerous defects related to careless, improper, and overbroad use of redactions as well as unreadable and incomprehensible text. Second, Plaintiffs refuse to respond to Joseph Loomis's Third Set of Interrogatories and Requests for Production of Documents. Third, Plaintiffs refused to accommodate a deponent and allow him to participate via video conference from Arizona or, in the alternative, to allow him to come to Virginia on a mutually convenient, practicable, rescheduled date. Defendants respectfully request the Court to grant their Motion to Compel, for Limited Relief, and to Expand the Discovery Period to prevent the unfair and severe prejudice that would result without the Court's intervention.

**STATEMENT OF RELEVANT FACTS**

**Plaintiffs' Defective Document Production**

On or about November 17, 2009, Defendants hired an outside e-discovery specialist, Edward Valio ("Valio"), to create a Concordance database and upload Plaintiffs' document production. During the course of reviewing Plaintiffs' document production, Defendants discovered discrepancies between document image redactions and extracted text appearing in the database. Defendants notified Valio and asked if Valio could determine definitively if text was appearing in the database from redacted documents, and further if he could attribute specific discrepancies to specific Bates numbered TIFF documents. Defendants were concerned about Plaintiffs' discovery as a whole, and particularly that the problem could potentially extend to documents redacted on privilege grounds.

Defendants and Valio identified certain examples that caused concern regarding Plaintiffs' production near the outset of Valio's analysis. A privilege redaction was among the initial documents uncovered by Defendants. The document containing the privilege, however, could not have actually been privileged as it did not consist of communications between Plaintiffs and their counsel related to legal advice and counsel or assistance in a legal proceeding. Furthermore, during the brief initial review, Defendants had uncovered additional documents that revealed multiple and significant defects with Plaintiffs' document production. In addition to the obviously erroneous privilege claim, the production also appeared to contain: (1) at least one document that was carelessly stamped as "Redacted-NR" (NR meaning "not responsive") when it should have been stamped as privileged; (2) multiple documents that were redacted when they contained non-privileged, relevant, and responsive information; (3) multiple documents that appear to be relevant and responsive but non-viewable as these were actually properly redacted;

(4) entirely blank TIFF images; (5) multiple TIFF images containing garbled and unreadable text suggesting a bad image scan or corrupted data, etc.

On the afternoon of November 20, 2009, Valio confirmed that he could attribute the discrepancies to specific Bates numbers. He also confirmed that several documents redacted for privilege were among the discrepant production. Valio explained that the Plaintiffs' had failed to properly perform all the redactions in their document production. Although the TIFF images, themselves, clearly contained the redactions and had unreadable portions, the metadata from the Concordance record of the document included the redacted text for the documents. Given that a typical text search on Concordance scans the metadata from the Concordance record and not the document image itself, it was not generally possible to know whether the document was redacted unless the document image associated with the relevant Bates number was viewed.

Because there was a possibility that actually privileged documents were among those disclosed, in an abundance of caution, Defendants ceased its review of Plaintiffs' production. On November 20, 2009, immediately after the conference call with Valio during which he confirmed that several documents redacted for privilege were among the discrepant production, Defendants contacted Virginia State Bar Ethics Counsel to seek guidance and direction. Virginia Bar Ethics Counsel informed Defendants that it had acted prudently in ceasing its review and advised that Defendants should contact opposing counsel to inform them of the inadvertent disclosure. Defendants informed Plaintiffs of the potential inadvertent disclosures immediately after speaking with State Bar Ethics Counsel.

On the following Monday, November 23, 2009, Defendants and Plaintiffs had two separate oral conversations regarding the concerns with Plaintiffs' discovery production. In addition, ten separate e-mails were sent between counsels in an attempt to resolve the issue.

Over the next two days, Defendants and Plaintiffs had at least three additional oral conversations and exchanged approximately four additional e-mails in an attempt to resolve the issue. During these communications, Defendants continually expressed to Plaintiffs its multiple concerns regarding Plaintiffs' document production including the concern that relevant and responsive non-privileged documents were erroneously redacted. On several occasions, Defendants expressed the hampering effect the erroneous redactions, privilege claims, and defects had on their deposition and trial preparation. Unfortunately, and despite the frequent communications, a solution was not reached. A subsequent conversation occurred during the week of November 30 after Defendants sent specific examples to Plaintiffs as requested. Plaintiffs' only offered solution did not address Defendants' concerns but rather only their own. Plaintiffs have provided Defendants with a list of documents they claimed as privileged with instructions not to review those documents and also provided an "overlay" CD that redacted the metadata which contained the improperly redacted information. The Plaintiffs' solution, therefore, resolved only their own concerns that their redacted documents were viewable and did nothing to resolve Defendants' concern that the redactions were improper and overbroad.

**The Third Set of Discovery Requests**

Given the relative number of multitudinous defects uncovered in Plaintiffs' document production in such a brief time, Defendants became reasonably alarmed that such defects existed throughout the Plaintiffs' entire production. Consequently, on that same day, November 19, 2009, Defendants promptly propounded a Third Set of Interrogatories and Requests for Production of Documents seeking responsive information on how Plaintiffs identified and labeled privileged and confidential documents in their production.

Within this Third Set of Discovery Requests, Defendants also included a single interrogatory and request for production inquiring about an allegation counsel for Plaintiffs had brought to the attention of current counsel less than a week earlier regarding a claim of a fabricated e-mail. On November 13, 2009, just before expert reports were due, Plaintiffs informed Defendants that Plaintiffs had retained an expert witness to investigate whether Mr. Loomis had fabricated an e-mail which was sent on October 16, 2007. The same afternoon, Defendants received Plaintiffs' expert report. Plaintiffs had never before discussed this matter with Defendants.

In a letter to Defendants dated November 20, 2009, Plaintiffs acknowledged receipt of the Third Set of Discovery Requests and informed Defendants that they would not respond to the requests given that the discovery deadline is December 11, 2009 and the deadline for responding was beyond that date. The letter erroneously states that Plaintiffs sent it "VIA ELECTRONIC MAIL" when it was actually sent via traditional first class mail. It did not reach Defendants until four days after it was sent. For unexplained reasons, despite the fact that Plaintiffs reached their decision to not respond to Defendants' Third Set of Discovery Requests by November 20, 2009, at the very latest, Plaintiffs did not once inform Defendants either orally, telephonically, or via e-mail of their refusal to respond even though the Parties had daily, multiple, extended conversations between November 20 and November 24. In a final effort to resolve the issue concerning the Third Set of Discovery, Defendants e-mailed counsel for Plaintiffs exhorting her to reconsider her position and respond to the discovery requests.

**The November 30, 2009 Deposition**

5

On November 30, 2009, Christopher Loomis ("Christopher") was scheduled to give his deposition. It was initially scheduled to occur in Arizona, however, the October 30, 2009 Order entered by the Court required that all depositions scheduled to take place in Arizona would now occur on the scheduled day via video conference from Arizona or by personal appearance in Virginia, at the Plaintiffs' election. Plaintiffs elected to conduct Christopher's deposition in person in Virginia.

Plaintiffs were notified at least a week prior to November 30 that Christopher could not attend his November 30 deposition in Virginia. Christopher could not attend the deposition due to Thanksgiving holiday travel arrangements with his family. Plaintiffs were informed, however, that Christopher could be available on November 30 in Arizona for a video deposition or, in the alternative, could appear in Virginia on a rescheduled date. Without offering any explanation, Plaintiffs refused to allow either option and insisted on Christopher's presence in Virginia on November 30, 2009. Nonetheless, Christopher did, in fact, appear at the originally noticed location in Arizona on November 30, 2009.

## ARGUMENT

**I.      The Court Should Compel Plaintiffs To Immediately Provide Un-Redacted Versions Of Non-Privileged Documents And To Meaningfully Cooperate With Defendants To Confirm The Accuracy Of Plaintiffs' Privilege Claims.**

The clear and evidenced defects in the Plaintiffs' document production do not currently allow Defendants to utilize it in any meaningful way. There are a myriad of legitimate concerns arising out of Plaintiffs' procedures in identifying and labeling privileged, confidential, and non-responsive documents. The erroneously labeled documents, the failure to correctly redact some documents while over-redacting others, the improper and expansive use of the privilege claim,

6

and the blank or garbled documents suggest that the production was carelessly performed. The result, of course, is that the production is of limited use and value to Defendants.

Defendants' concern is not just the accidental viewing of legitimately privileged documents, but rather, being prevented from viewing non-privileged documents that are relevant and responsive but which have nevertheless been claimed as privileged, redacted, and withheld. The same concern holds true for those documents labeled "Redacted" or "Redacted-NR." During the brief early review of Plaintiffs' document production, Defendants discovered examples of each defect. During a more extended review limited to "Redacted-NR" and "Redacted" documents, Defendants' e-discovery specialist discovered scores of additional examples.

There is no legitimate reason why Plaintiffs' use of the "Redacted" and "Redacted-NR" label should be as expansive as it is. The July 22, 2009 Stipulated Protective Order is comprehensive – among other protections, it prohibits the public disclosure of "Confidential" stamped documents, limits the permissible use of such documents to the instant litigation, and also contains a clawback provision. To the extent that Plaintiffs desire additional protections, a second level, "Attorney's Eyes Only" level of confidentiality is readily agreeable. In short, Plaintiffs' refusal to meaningfully cooperate with Defendants on this issue is unreasonable as there are several effective mechanisms that are readily available and capable of affording Plaintiffs sufficient protection in lieu of their overuse of redactions.

Plaintiffs' overuse of the privilege claim is equally troubling. During the brief review when the inadvertent disclosure of the privilege-claimed documents was initially discovered, Defendants observed one document, claimed to be privileged, that was obviously not protected

by the privilege. Therefore, there is a very real likelihood that responsive and relevant documents are improperly being withheld from Defendants.

Here again, there is no reason why Plaintiffs refused to meaningfully cooperate with Defendants in resolving the situation. Plaintiffs stated that only 233 documents produced by Plaintiffs contain a privilege redaction or are part of a family of documents that contain such a redaction. Given the small number, a very easy and workable solution should be feasible. Defendants propose the use of a third party to evaluate the 233 documents for privilege. Plaintiffs, however, insisted that the issue was solved by Defendants temporarily avoiding the documents, based on a list provided by Plaintiffs, and then to incorporate an "overlay" CD that would mask any disclosed metadata. Although Plaintiffs' proposal is certainly a cure for their concern, it completely disregards the concerns of the Defendants.

With the discovery period coming to a rapid close and with only a few depositions left, it is imperative that Defendants are provided with a document production that is free from glaring defects and which does not unfairly and baselessly prohibit Defendants from viewing relevant and responsive documents. As such, Defendants respectfully request the Court to compel Plaintiffs to produce un-redacted, non-privileged documents immediately and require Plaintiffs to cooperate meaningfully with Defendants to resolve the issue concerning the 233 documents claimed to be privileged.

**II.     The Court Should Compel Plaintiffs To Immediately Respond To Defendants' Third Request For Interrogatories and Requests for Production of Documents.**

Defendants' Third Set of Discovery Requests are few in number and primarily seek information regarding two issues which stem solely from the Plaintiffs: (1) an e-mail Plaintiffs surprisingly alleged was fabricated, and (2) defects related to Plaintiffs' document production. These issues only arose on November 13, 2009 and November 19, 2009, respectively. Mr.

8

Loomis promptly propounded his third discovery requests on November 19, 2009. Plaintiffs refused to respond to Mr. Loomis's Third Set of Discovery stating that they were not timely served given that the deadline for responding would not come until after the December 11, 2009 discovery deadline. Mr. Loomis, however, did not know of these issues, and could not have known of these issues until after the time to timely propound discovery had passed.

Defendants were surprised in regards to Plaintiffs' use of an expert to support their allegation that Mr. Loomis had fabricated an October 16, 2007 e-mail. On November 13, 2009 Plaintiffs informed Defendants of their expert witness only shortly before sending Defendants their expert witness report on the matter. Given that the report was finalized on November 13, 2007, it is clear that Plaintiffs had considered this matter and decided to move forward with it, well earlier than November 13, 2009. Indeed, had Plaintiffs informed Defendants of their approach when they decided upon it, Defendants could probably have had sufficient time to propound discovery related to the matter. Instead, given the circumstances, it is reasonable to infer that Plaintiffs' notice to Defendants was purely a prejudicial and tactical decision timed and designed to prevent Defendants from having an opportunity to investigate the matter through discovery. Plaintiffs possess the server logs which should contain the records indicating that the e-mail was indeed sent and not fabricated as the Plaintiffs allege. Defendants have no way of gaining access to the logs except through discovery. The Court should, therefore, compel Plaintiffs to respond to Defendants' Third Set of Discovery Requests.

The Court should also compel Plaintiffs to answer Defendants' discovery related to Plaintiffs' defective document production. As previously stated, Defendants did not discover that the production contained systemic defects until November 19, 2009. Defendants promptly filed the Third Set of Discovery Requests the same day.

Defendants should not be penalized and prejudiced by Plaintiffs' last minute notice. The e-mail which Plaintiffs claim is fabricated is damaging to most of Plaintiffs' claims. Given the gravity and the magnitude of the e-mail, given the tactics employed by Plaintiffs, and given that Defendants are completely blameless for the defects in Plaintiffs' document production, the Court should grant Defendants' Motion and compel Plaintiffs to immediately respond to Defendants' Third Set of Interrogatories and Production of Documents.

### III. The Court Should Grant Defendants Limited Relief From The October 30, 2009 Order And Permit Christopher Loomis To Reschedule His Virginia Deposition.

Defendants' dutiful and diligent compliance with the provisions of the October 30, 2009 Order is incontestable. Indeed, Defendants are confident that even Plaintiffs would attest that Defendants have been exceedingly cooperative regarding the taking of depositions in Virginia and arranging and rearranging the travel itineraries and lodging of Plaintiffs' witnesses to accommodate for their comfort, convenience, and other obligations.

Defendants, however, are powerless to force Christopher to attend his deposition scheduled to take place in Virginia on November 30, 2009. As mentioned earlier, Plaintiffs were notified at least a week before November 30, 2009 that Christopher would be unable to attend his deposition due to Thanksgiving holiday travel plans with his family. Christopher, however, was able to participate on the scheduled date via video conference in Arizona. In fact, he actually did appear at the originally scheduled deposition date. Christopher was also amenable to giving his deposition in Virginia on any one of the dates that became available due to cancelled depositions – December 1 or 2, 2009 or on December 10, 2009.

When presented with these alternatives, Plaintiffs refused all of them and insisted that Christopher attend his deposition, as scheduled, in Virginia. Unfortunately, however, the travel logistics of the holiday make it impossible for Christopher to be in Virginia on November 30,

2009.  Defendants should not be penalized for something they cannot control.  Given that there are viable and mutually convenient and practicable alternatives which Christopher is amenable to, his deposition should be rescheduled.  Defendants, therefore, respectfully request the Court to grant limited relief to Defendants from any sanctions that may result under the October 30, 2009 Order for Christopher's failure to attend his November 30, 2009 deposition in Virginia.

**IV.    The Court Should Expand the Discovery Period for the Limited Purposes Contained in this Motion.**

Given that December 11, 2009 marks the end of the discovery period and given the discovery issues still outstanding, the Court should hold open the discovery period to allow resolution and receipt of the corrected document production, response to Defendants' Third Set of Discovery Requests, and to conduct Christopher Loomis's deposition, if still necessary, and to continue the depositions of Neal Dittersdorf, Madalyn Behneman, John Scanlon, and Michael Stanfield.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their Motion to Compel Discovery and for Limited Relief from the October 30, 2009 Order, and to award them attorney's fees and costs.

Dated This 4th Day of December, 2009.

                                                Respectfully Submitted,

                                                JOSEPH C. LOOMIS and JENNI M. LOOMIS
                                                By Counsel

                                                            /s/

                                Thomas M. Dunlap (VSB No. 44016)
                                Ellis Bennett (VSB No. 71685)
                                Phillip C. Chang (VSB No. 75741)
                                DUNLAP, GRUBB & WEAVER, PLLC
                                199 Liberty Street, SW
                                Leesburg, Virginia 20175
                                703-777-7319
                                703-777-3656 (fax)
                                tdunlap@dglegal.com
                                ebennett@dglegal.com
                                pchang@dglegal.com
                                *Counsel for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th Day of November, 2009, a true and correct copy of the foregoing Memorandum was filed and served using the Court's CM/ECF system, which will then send a notice of electronic filing (NEF) to the following counsel of record for the Plaintiffs:

> Tara Lee (VSB No. 71594)
> Ryan C. Berry (VSB No. 67956)
> DLA PIPER LLP (US)
> 1775 Wiehle Avenue, Ste. 400
> Reston, Virginia 20190
> Telephone:  703-773-4000
> Facsimile:  703-773-5000
> tara.lee@dlapiper.com
> ryan.berry@dlapiper.com
> *Counsel for Plaintiffs*

And I hereby certify that I will electronically mail the documents to the following non-filing users:

> David Clarke (admitted *pro hac vice)*
> Michelle J. Dickinson (admitted *pro hac vice)*
> Melissa R. Roth (admitted *pro hac vice)*
> DLA PIPER LLP (US)
> 6225 Smith Avenue
> Baltimore, Maryland 21209
> Telephone:  410-580-3000
> Facsimile:  410-580-3001
> david.clarke@dlapiper.com
> michelle.dickinson@dlapiper.com
> melissa.roth@dlapiper.com
> *Counsel for Plaintiffs*

> /s/
> Phillip C. Chang (VSB No. 75741)
> DUNLAP, GRUBB & WEAVER, PLLC
> 199 Liberty Street, SW
> Leesburg, Virginia 20175
> 703-777-7319
> 703-777-3656 (fax)
> pchang@dglegal.com
> *Counsel for the Defendants*