**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **INTERSECTIONS, INC., et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 1:09-CV597 (LMB/TCB)** |
| ) | |
| **JOSEPH C. LOOMIS, et al.** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**
**DISCOVERY, FOR LIMITED RELIEF FROM THE OCTOBER 30, 2009 ORDER, AND**
**TO EXTEND THE DISCOVERY PERIOD FOR A LIMITED PURPOSE**

Defendants Joseph C. Loomis and Jenni M. Loomis (collectively, the "Defendants") by

and through counsel, respectfully submits this Reply in Support of Their Motion to Compel, for

Limited Relief, and to Extend Discovery.

## ARGUMENT

**I.     Plaintiff's Pattern of Improperly Withholding and Redacting Documents Based on**
**Invalid Claims Warrants an Extension of the Discovery Deadline.**

Plaintiff's Opposition (Docket No. 76 at 8-10) mischaracterizes Defendant's objection to

Plaintiff's flawed privilege redactions.  Plaintiff acknowledges that many or possibly all of its

initial TIFF file redactions failed to effectively redact text from the underlying native format files

or their metadata.  (Id. at 9.)  When Defendants discovered that there may be a problem with

Plaintiff's redactions, they immediately notified Plaintiff and contacted the ethics hotline of the

Virginia State Bar.  However, in the context of discovering the defective redactions, Defendants

encountered the text of a small number of items that Plaintiff had redacted and designated as

privileged that simply do not satisfy the elements of the attorney-client privilege.  Based on their

review of these few documents, Defendants have reason to believe that numerous other

documents designated as privileged simply are not privileged. In addition, Defendants discovered numerous documents that appeared to be redacted. As such, the issue raised by Defendants is not about whether Plaintiff corrected the technical defect that allowed redacted materials to be viewed by Defendants; rather, the issue raised by Defendants concerns Plaintiff's general overuse of claims of privilege, Plaintiff's overbroad redactions, and Plaintiff's production of a privilege log that does not provide Defendants with sufficient information to evaluate Plaintiff's claims of privilege.

Plaintiff's privilege log contains 672 entries. (Ex. A). Only a small number of these entries were actually produced in redacted form; the majority of them have been completely withheld. Most of these non-produced items are described as an "email chain" which indicates that there are several documents lumped together. From the face of the privilege log, it appears that the mere fact that Plaintiff's in-house counsel Chris Cwalina was included or copied on a given e-mail chain renders that document Privileged in Plaintiff's opinion. Dozens of purportedly privileged documents all contain identical description, such as "Email chain prepared at the request of counsel concerning NEI investigation," which are so vague and conclusory, Defendants have no way to evaluate the legitimacy of Plaintiff's privilege claims.

Pursuant to Fed. R. Civ. P. 26(b)(5), a party objecting to production based on attorney-client privilege or the work product doctrine shall "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See United States v. KMPG, LLP*, 237 F. Supp. 2d 35, 38 (D.D.C. 2002) ("The essential function of a privilege log is to permit the opposing party, and ultimately the court, to evaluate a claim of privilege."). Under Rule 26(b)(5), the party asserting the privilege has the burden of

establishing that privilege exists, and "[m]ere conclusory or *ipse dixit* assertions of privilege are insufficient to satisfy this burden." *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 20 (W.D.N.Y. 1997) (citing *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961)).  In the context of e-mails with in-house corporate counsel, privilege only extends to the corporate "control group" or to communications with key employees that satisfy the *Upjohn* "subject matter test."  *See Upjohn Co. v. United States*, 449 U.S. 383 (1981).

In the instant case, Plaintiff has failed to meet its burden of proving that its redacted and withheld documents are privileged.  The privilege log is comprised of largely of conclusory and generalized claims of privilege.  Plaintiff's privilege log does not identify the relationship between the parties to the communication, the nature of the legal advice being sought, whether the communication was maintained as confidential, or how the parties to the communication fall within the corporate control group or satisfy the *Upjohn* subject matter test.

**II.    Because the Plaintiffs have Unreasonably Refused to Cooperate with Defendants Regarding Christopher Loomis's Deposition, the Court Should Grant Defendants Limited Relief from the October 30, 2009 Order.**

 Defendants' motion for limited relief from the October 30, 2009 Order is based upon the fact that Defendants have made every effort, in good faith, to cooperate with Plaintiff in resolving this issue and Plaintiff has unreasonably refused to reciprocate.  Instead, in an opportunistic bid to exclude Christopher's testimony at trial, Plaintiff, in bad faith, rejected all viable alternatives.

Due to previously scheduled Thanksgiving holiday travel plans, Christopher Loomis ("Christopher") was unable to attend his Monday, November 30, 2009 deposition which was relocated to Virginia from Arizona.  Plaintiffs were informed of this fact at least a week before the scheduled deposition date and Plaintiffs were presented with various alternatives which were

each practicable and convenient for Plaintiffs, the third party witness, and Defendants.  First, despite the fact that Christopher was unable to travel to Virginia in time to make the Monday deposition, he was capable of appearing at Plaintiff's Arizona office to participate via video conference.[1]  Second, due to various cancellations of other depositions, a number of dates had become available whereby Christopher could travel to Virginia for his deposition.  Two of the dates presented to Plaintiffs were December 1 and 2, the Tuesday and Wednesday immediately following the Monday on which Christopher's deposition was originally scheduled.  A third date presented to the Plaintiffs was December 10, 2009.

Without offering any reason, whatsoever, Plaintiff rejected all workable alternatives and insisted that Christopher be present on November 30, 2009 in Virginia.  Plaintiff offered no reason for its rejection then, and it offers no reason now.

It is clear, by their tactics, both here and in their two motions for sanctions, that Plaintiff is oppressively using the Court's October 30, 2009 Order to seek severe sanctions for minor, correctable, and non-prejudicial issues.  The Order was originally intended as a shield to protect Plaintiff from the unwarranted threats and harassment from Defendants' *former* counsel and to protect Plaintiff's legitimate discovery interests in the case.  (See Docket No. 47; Hr'g Tr. October 30, 2009).  The irony is that Plaintiff now uses that same Order to threaten and harass Defendants' *current* counsel with unwarranted motions for severe sanctions based on minor, quickly-correctable issues.  For example, Plaintiff's first motion for sanctions was based on approximately 60,000 missing TIFF images from Defendant's document production.  (Docket No. 51 at 3-4).  The Plaintiff failed to meet and confer with the Defendants regarding the issue. (Docket No. 62 at 4-6).  Had they done so, the parties would have quickly discovered that the

---

[1] In the event that there was a last minute change, Christopher did in fact appear at Plaintiff's Arizona office on Monday, November 30, 2009.

missing TIFF images resulted from a defective DVD and the problem would have been quickly resolved.[2]  By way of further example, Plaintiff's second motion for sanctions is based on 10,000 documents missing from Defendants' production.  (Docket No. 71 at 2).  Again, Plaintiff failed to meet and confer with Defendants.  (Docket No. 77 at 3-4).  Had they done so, and as discussed more fully in Defendants' opposition to Plaintiff's second motion for sanctions, they would have known that the 10,000 missing documents were nothing more than blank pages erroneously and automatically generated when two Excel spreadsheets were converted to TIFF images.  As is custom in these situations, these blank pages were removed from production as a courtesy to the Plaintiff.

The situation here, concerning Christopher's deposition, is no different.  Without providing any reason for refusing, Plaintiffs rejected every viable, workable alternative presented to them.  Each alternative provided Plaintiff with the opportunity to take Christopher's deposition without traveling to Arizona, which was one of the ultimate goals and purposes of the Order.  The Order does not give Plaintiff license to act unreasonably and choose severe sanctions over the prompt and non-prejudicial resolution of issues.  Therefore, because Plaintiff acted in bad faith in refusing to resolve the issue concerning Christopher's deposition, Defendants respectfully request the Court to grant its motion for limited relief from the October 30, 2009 Order.

## CONCLUSION

For the reasons stated above, Defendants respectfully request the Court to grant their Motion to Compel Discovery, Extend the Discovery Period, for Limited Relief from the October 30, 2009 Order, and to award them attorney's fees and costs associated with their Motion.

---

[2] The matter was, in fact, quickly resolved once Defendants gleaned sufficient information from the Plaintiff's memorandum in support of its first motion for sanctions.

Dated This 10th Day of December, 2009.

Respectfully Submitted,

JOSEPH C. LOOMIS and JENNI M. LOOMIS
By Counsel

_____/s/_____
Thomas M. Dunlap (VSB No. 44016)
Ellis Bennett (VSB No. 71685)
Phillip C. Chang (VSB No. 75741)
DUNLAP, GRUBB & WEAVER, PLLC
199 Liberty Street, SW
Leesburg, Virginia 20175
703-777-7319
703-777-3656 (fax)
tdunlap@dglegal.com
ebennett@dglegal.com
pchang@dglegal.com
*Counsel for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th Day of December, 2009, a true and correct copy of the

foregoing Reply was filed and served using the Court's CM/ECF system, which will then send a

notice of electronic filing (NEF) to the following counsel of record for the Plaintiffs:

> Tara Lee (VSB No. 71594)
> Ryan C. Berry (VSB No. 67956)
> DLA PIPER LLP (US)
> 1775 Wiehle Avenue, Ste. 400
> Reston, Virginia 20190
> Telephone:  703-773-4000
> Facsimile:  703-773-5000
> tara.lee@dlapiper.com
> ryan.berry@dlapiper.com
> *Counsel for Plaintiffs*

And I hereby certify that I will electronically mail the documents to the following non-

filing users:

> David Clarke (admitted *pro hac vice*)
> Michelle J. Dickinson (admitted *pro hac vice*)
> Melissa R. Roth (admitted *pro hac vice*)
> DLA PIPER LLP (US)
> 6225 Smith Avenue
> Baltimore, Maryland 21209
> Telephone:  410-580-3000
> Facsimile:  410-580-3001
> david.clarke@dlapiper.com
> michelle.dickinson@dlapiper.com
> melissa.roth@dlapiper.com
> *Counsel for Plaintiffs*

> _____/s/_____
> Phillip C. Chang (VSB No. 75741)
> DUNLAP, GRUBB & WEAVER, PLLC
> 199 Liberty Street, SW
> Leesburg, Virginia 20175
> 703-777-7319
> 703-777-3656 (fax)
> pchang@dglegal.com
> *Counsel for the Defendants*