**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| Intersections Inc. and Net Enforcers, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Joseph C. Loomis and Jenni M. Loomis, <br><br> Defendants. | Civil Action No. 1:09CV597 (LMB/TCB) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO TEMPORARILY STAY ACTION AS TO DEFENDANT JENNI M. LOOMIS**

Plaintiffs Intersections Inc. ("Intersections") and Net Enforcers, Inc. ("NEI", and together with Intersections, "Plaintiffs") hereby submit this Memorandum in support of their Motion to Temporarily Stay Action as to Defendant Jenni M. Loomis ("Jenni Loomis") for 90 days in light of this Court's stay of the case as to Co-Defendant Joseph C. Loomis ("Joe Loomis", and together with Jenni Loomis, "Defendants") as a result of his bankruptcy filing. Plaintiffs request that the Court temporarily stay this case and schedule a status conference for 90 days, by which time the parties and the Court will have a better understanding of the status of Joe Loomis' bankruptcy case. A stay is appropriate here in order to avoid an unnecessary waste of judicial resources and the resources of Plaintiffs. Jenni Loomis will suffer no harm from a short stay. Plaintiffs certify that they have conferred with counsel for Jenni Loomis in a good-faith effort to narrow the area of disagreement in accordance with Local Rule 7(E).

**I. FACTUAL BACKGROUND**

This case principally arises out of Joe Loomis' and Jenni Loomis' scheme to defraud Intersections out of millions of dollars in connection with Intersections' acquisition of NEI in

2007. Specifically, Joe Loomis and Jenni Loomis defrauded Intersections out of millions of dollars by making it appear as though Joe Loomis' company, NEI, was something other than it was. They did so, purposefully and collectively, by cooking the company's books and overcharging NEI's customers, both before Intersections acquired NEI and thereafter.

### A. The Acquisition

In January 2007, Joe Loomis, the president and one of the founders of NEI, hired an investment banker to secure venture capital funding or a buyer for NEI. Soon thereafter, Joe Loomis and Jenni Loomis, NEI's bookkeeper, began "cleaning up" NEI's books to make the company appear more profitable than it was. Defendants also began overbilling two of NEI's top customers in an effort to boost revenues to ensure a bigger payout.

Joe Loomis' investment banker contacted Intersections in March 2007 regarding acquiring NEI. Intersections and Joe Loomis then entered into discussions, and Intersections began conducting a due diligence review of NEI's business and financial condition. As part of the due diligence, Defendants prepared and provided Intersections with company financials and customer data, but concealed the fact that: (1) the financials had been cleaned up and were false, (2) four of the customers they identified as NEI's top 20 customers had cancelled their contracts, and (3) Defendants were intentionally and systematically overbilling the purported top two customers to make NEI appear more profitable.

Unaware of Defendants' fraud and deceit, Intersections entered into a Stock Purchase Agreement (the "SPA") with Joe Loomis and NEI on November 9, 2007. Joe Loomis represented and warranted that the financials he and his sister, Jenni Loomis, provided and upon which the purchase price was in large part based were complete and correct. Joe Loomis also represented that the report he and his sister provided Intersections, and which was attached to the

SPA as a schedule, accurately identified both NEI's top 20 customers as of the date the deal closed and the revenue generated by each between July 2006 and June 2007. Joe Loomis knew that these representations were material to Intersections and that they were false. In reliance on these representations, Intersections agreed to pay Joe Loomis $14 million in cash, $3.5 million in stock options, and up to $3.5 million in earnout payments. The deal closed on November 30, 2007 ("Closing"), and Intersections paid Joe Loomis $14 million in cash. As a result, Joe Loomis then paid Jenni Loomis a bonus.

      **B.**     **Discovery of Defendants' Fraud**

On November 30, 2007, NEI also entered into a three-year written Employment Agreement with Joe Loomis for him to be NEI's Chief Executive Officer and to continue to grow the company. NEI agreed to pay Joe Loomis an annual salary of $250,000. Joe Loomis agreed to "devote his entire working time to the business of the Corporation." Shortly thereafter, however, problems began to arise with Joe Loomis' employment. Joe Loomis admits that the arrangement was not working and that he quickly became bored with NEI and turned his attention to Loomis Enterprises, LLC ("LE"), a new business venture he had started with his and Jenni Loomis' half-brother, Christopher Loomis, just before Closing, without Intersections' knowledge. Joe Loomis continued to collect a sizeable paycheck from NEI, but unbeknownst to Plaintiffs, devoted increasingly more time to LE as its Chairman and CEO, and, by the summer of 2008, devoted almost no meaningful time to NEI. The business of NEI suffered and all parties began to recognize that the employment arrangement was not going to work.

Then an NEI employee came forward with complaints that Joe Loomis was requiring certain NEI employees and independent contractors to devote substantial amounts of their working time to LE and that he was abusive and threatening if they refused. NEI employees also

3

revealed that Joe Loomis had been operating and managing LE since Intersections acquired NEI, that he rarely came into NEI's office, and that he devoted only a few hours each week to NEI.

Based on the information provided by the employees, NEI suspended Joe Loomis with pay on October 20, 2008 pending a complete investigation of the employees' claims. By letter dated that same day, NEI advised Joe Loomis that it was suspending him for breaching his fiduciary duties to NEI and violating company policies. Within hours of his suspension, Joe Loomis began a systematic campaign to intentionally and willfully destroy material evidence in an effort to conceal the fraud and malfeasance he and his sister perpetrated on Plaintiffs. As a result of this conduct and based on Joe Loomis' breach of his fiduciary duties, NEI terminated Joe Loomis for cause by letter dated November 19, 2008. Jenni Loomis' employment had ended a few months earlier.

After terminating Joe Loomis from NEI, Plaintiffs broadened their investigation into analyzing NEI's financials. Plaintiffs learned that Defendants had conspired to and did misrepresent material information regarding NEI's business and financial condition to Intersections before the Closing to induce Intersections to pay more for NEI's stock than it was worth. Plaintiffs also learned that Defendants had overcharged NEI's top customers both before the acquisition, to increase the payout, and thereafter, to fund Joe Loomis' earnout.

### C. This Litigation

This litigation thus ensued. Plaintiffs filed suit against Joe Loomis and his sister, Jenni Loomis, on May 27, 2009. Plaintiffs asserted claims against Joe Loomis for securities fraud, breach of the SPA, fraud, tortious interference with business relationships and expectancies, breach of fiduciary duty, conversion, and civil conspiracy, and against Jenni Loomis for fraud

and civil conspiracy. Discovery has concluded and a two-week jury trial is scheduled to begin on March 1, 2010.

On January 26, 2010, however, Joe Loomis filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Arizona. That same day, he filed a notice of bankruptcy with this Court. The Court thus issued an Order staying this action as to Joe Loomis on January 27, 2010. The case against Jenni Loomis, however, still is pending.

## II. LEGAL ARGUMENT

This Court may issue a stay as an exercise of its general equitable powers. It is well recognized that a district court may, under its general equitable powers and in the efficient management of its docket, grant stays. *E.g., Williford v. Armstrong World Industries, Inc.,* 715 F.2d 124, 127 (4th Cir. 1983). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford,* 715 F.2d at 127. The court then "must weigh competing interests and maintain an even balance." *Williford,* 715 F.2d at 127 (quoting *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir. 1983)).

### A. A Temporary Stay of The Case Against Jenni Loomis Is Necessary to Preserve Judicial Resources and the Resources of Plaintiffs

Joe Loomis filed for Chapter 11 bankruptcy protection on January 26, 2010, just two weeks ago and less than five weeks before the trial in this case. As a result, this Court stayed the case as to Joe Loomis on January 27, 2010. At this early stage of the bankruptcy proceedings, the status of Plaintiffs' claims against Joe Loomis is uncertain. The meeting of creditors in the bankruptcy case is scheduled to be held on March 2, 2010. The deadline for Plaintiffs to object to the dischargeability of its claims is May 3, 2010. It is entirely possible that the Bankruptcy Court will dismiss Joe Loomis' case or otherwise cause the stay in this Court to be lifted as to

5

Plaintiffs' claims against Joe Loomis. In either scenario, Plaintiffs would be entitled to and would request that the Court schedule trial as to their claims against Joe Loomis as quickly as possible.

The trial in this case is scheduled to begin on March 1, 2010 and last for up to two weeks. As a result of Joe Loomis' eleventh-hour bankruptcy petition, the trial currently is scheduled only as to Plaintiffs' claims against Jenni Loomis. The claims asserted by Plaintiffs against Jenni Loomis, however, are so intertwined with the claims against Joe Loomis that separate trials against these Co-Defendants would require the same witnesses and much of the same documentary evidence. Thus, if this case is not stayed as to Jenni Loomis and the claims against Joe Loomis are returned to this Court, Plaintiffs would be required to try the same two-week jury trial against each Co-Defendant. Such duplication of efforts would constitute a needless waste of judicial resources and the resources of the Plaintiffs.

The posture of the bankruptcy proceeding and the status of Plaintiffs' claims against Joe Loomis will be much clearer in the next 90 days. Indeed, during that time, the claims against Joe Loomis in this Court may be resurrected and a new trial date established by this Court. If Joe Loomis' claims are not back before the Court within 90 days, the parties could appear for a status conference to determine the best course of action in light of the then-known circumstances in Joe Loomis' bankruptcy case.

### B.   A Temporary Stay Will Not Cause Jenni Loomis Harm

Plaintiffs have asserted claims for fraud and conspiracy against Jenni Loomis in connection with her fraudulent bookkeeping and billing practices associated with her brother's sale of NEI to Intersections and thereafter. Jenni Loomis has asserted no counterclaims or crossclaims in this case. She thus stands to *gain* little by going to trial in three weeks. Indeed, she stands to *lose* nothing by the case being stayed and trial being temporarily postponed by a

few short months – at which time she could face a multi-million dollar judgment. In the interest of cooperation, Plaintiffs requested that Jenni Loomis join in Plaintiffs' request for a temporary stay. Jenni Loomis, however, refused.

### C. The Balance of Circumstances Supports A Temporary Stay

A temporary stay is appropriate here to conserve judicial resources and the resources of Plaintiffs. It would be a waste of judicial resources for this Court to hold two trials – one against Jenni Loomis and one against Joe Loomis – within a matter of months of each other, given that the trials would be duplicative, in that they would focus upon the conspiratorial course of conduct undertaken by the Defendants, would involve testimony from most, if not all, of the same witnesses, and would involve the introduction of the same documentary evidence. As there is little or no potential harm to Jenni Loomis from a short stay of the action for 90 days, the balance of circumstances weighs heavily in favor of a temporary stay.

Dated: February 12, 2010   Respectfully submitted,

By: ___/s/_____
Ryan C. Berry (Virginia Bar No. 67956)
Tara Lee (Virginia Bar No. 71594)
Attorneys for Plaintiffs
DLA PIPER LLP (US)
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Telephone: 703.773.4000
Facsimile: 703.773.5000
Tara.Lee@dlapiper.com
Ryan.Berry@dlapiper.com

                David Clarke (admitted *pro hac vice*)
                Michelle J. Dickinson (admitted *pro hac vice*)
                Melissa R. Roth (admitted *pro hac vice*)
                DLA Piper LLP (US)
                6225 Smith Avenue
                Baltimore, Maryland 21209
                Telephone:  410.580.3000
                Facsimile:    410.580.3001
                David.Clarke@dlapiper.com
                Michelle.Dickinson@dlapiper.com
                Melissa.Roth@dlapiper.com

                *Attorneys for Plaintiffs*
                *Intersections Inc. and Net Enforcers, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of February, 2010, I caused the foregoing Memorandum in Support of Motion to Temporarily Stay Action as to Defendant Jenni M. Loomis to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Timothy J. McEvoy
>Cameron McEvoy, PLLC
>11325 Random Hills Road
>Suite 200
>Fairfax , VA 22030
>(703) 273-8898
>Email: tmcevoy@cameronmcevoy.com
>
>*Counsel for Defendant Joseph C. Loomis*
>
>Eugene W. Policastri
>Bromberg Rosenthal LLP
>401 N. Washington St., Suite 500
>Rockville, MD  20850
>(301) 251-6200
>Email:  ewpolicastri@brsglaw.com
>
>*Counsel for Defendant Jenni M. Loomis*

>>/s/
>>Ryan C. Berry (Virginia Bar No. 67956)
>>Attorney for Plaintiffs
>>DLA PIPER LLP (US)
>>1775 Wiehle Avenue, Suite 400
>>Reston, Virginia 20190-5159
>>Phone: (703) 773-4150
>>Facsimile: (703) 773-5000
>>tara.lee@dlapiper.com