```
                                                                    1
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                        Alexandria Division
```

------------------------------:
                              :
INTERSECTIONS INC, et al.,    :
          Plaintiffs,         :
                              :
 -vs-                         :    Case No. 1:09-cv-597
                              :
                              :
JOSEPH C. LOOMIS, et al.,     :
          Defendants.         :
                              :
------------------------------:

HEARING ON MOTIONS

December 4, 2009

Before:  Mag. Judge Theresa C. Buchanan

APPEARANCES:

Michelle J. Dickinson, Counsel for the Plaintiffs

Ellis Bennett, Counsel for the Defendants

2

1    NOTE: The case is called to be heard at 10:27 a.m.
2 as follows:
3    THE CLERK: Intersections Incorporated, et al.
4 versus Joseph C. Loomis, et al, case number 09-cv-527.
5    MS. DICKINSON: Good morning, Your Honor. Michelle
6 Dickinson for the plaintiffs.
7    THE COURT: Good morning.
8    MS. BENNETT: Good morning, Your Honor. Ellis
9 Bennett for the defendants.
10    THE COURT: All right. Well, in a change of events,
11 you have decided to represent this defendant and the other
12 counsel dropped out, huh?
13    MS. BENNETT: We are now lead counsel, Your Honor.
14    THE COURT: Okay. Well, that's pretty brave of you.
15    This comes on your motion for sanctions. I do have
16 a question though for you. When did you figure out that all
17 of these documents were missing from the production of-- I am
18 not talking about Mrs. Loomis, but Mr. Loomis' production and
19 the company's production.
20    When did you first figure out all these were
21 missing? Because I know that you had the discussion with him
22 I think on the 24th, and you filed your motion that day.
23    MS. DICKINSON: Right. Your Honor, we were going
24 through his documents and we determined, I think the day
25 before we had the talk with opposing counsel, that there were

```
 1   60,000 images missing.  You can review them without knowing
 2   that there are images missing.
 3              So, when we found that out, we approached opposing
 4   counsel.  But there wasn't much that could be done at that
 5   point.  60,000 is a lot of images to have to review.
 6              THE COURT:  So, they have now claimed that they
 7   produced these documents as of I think two days ago?
 8              MS. DICKINSON:  That's correct.
 9              THE COURT:  Have you had an opportunity to look at
10   them?
11              MS. DICKINSON:  We have had an opportunity to load
12   them, and we have had an opportunity to have our IT people
13   confirm that they are in there.  But we have been in
14   depositions for the past three solid weeks living out of a
15   suitcase down here.
16              THE COURT:  Do you think that there is anything that
17   you are missing at this point?
18              MS. DICKINSON:  Well, you mean with respect to Joe
19   Loomis, or with respect to Jenni Loomis?  Because we are
20   certainly--
21              THE COURT:  Both at this point.
22              MS. DICKINSON:  Yes, absolutely.
23              THE COURT:  Because she is, I understood that she
24   had produced her documents by this point as well.
25              MS. DICKINSON:  Right.  And actually maybe "missing"
```

1   is a mischaracterization on my part.  Jenni Loomis has
2   provided us with a .pst file of--  Let's see, I am sorry.
3   Over 19,000 pages of e-mails.  That is not a responsive
4   production.
5           THE COURT:  19,000 pages?
6           MS. DICKINSON:  19,000 pages of e-mails.  Your
7   Honor, I think what is important for the Court to understand
8   that has not come out in the papers is that both before the
9   order was issued by the Court and after, the defendant Joe
10  Loomis has taken a stance, I believe this is correct, and I
11  apologize if I am mischaracterizing anything, but my
12  understanding from counsel is that Mr. Loomis has taken the
13  stance that he is going to control electronic discovery in his
14  case.
15          And so, there is not review being--
16          THE COURT:  What do you mean by that?
17          MS. DICKINSON:  He has his own electronic discovery
18  vendor in Canada.
19          THE COURT:  Right.
20          MS. DICKINSON:  And he--
21          THE COURT:  That's not necessarily unusual.
22          MS. DICKINSON:  No, but he is the one who is
23  marshalling the evidence.  He is sending the documents to
24  them.  And the documents are not being reviewed by counsel.
25          So, it's almost like dealing with a pro se opponent

```
 1   on the e-discovery.
 2              So, Jenni Loomis provided her documents without
 3   opposing counsel having the opportunity, or is my
 4   understanding, to review them before they were produced to us.
 5   We have an entire .pst file.  We have looked at a small
 6   portion of those documents since we have gotten them, and they
 7   are not all responsive.  They are e-mails about her engagement
 8   rings--
 9              THE COURT:  You mean she just did a data dump?
10              MS. DICKINSON:  Yes, Your Honor, that's correct.
11              THE COURT:  Okay.
12              MS. DICKINSON:  And we are now a week from the end
13   of discovery.
14              THE COURT:  All right.  Anything else?
15              MS. DICKINSON:  I have lots of things, Your Honor,
16   but I think you probably don't need to hear from me at this
17   point.
18              THE COURT:  Okay.  Well, I may come back to you.
19   But let me--  I am sorry, go ahead.  Did you have something
20   else you wanted to say?
21              MS. DICKINSON:  Well, Your Honor, I believe that at
22   this point in this case the issue before the Court is
23   sanctions.  It's not--  There is no dispute as to whether
24   opposing, or whether, I am sorry, the defendants in the case
25   have violated the Court's order.
```

```
 1            THE COURT:  Well, as to Mr. Loomis' production, you,
 2   at this point you don't know whether you have everything or
 3   not, is that a fair statement?
 4            MS. DICKINSON:  I think, I think we probably do have
 5   everything.
 6            THE COURT:  Okay.
 7            MS. DICKINSON:  I mean, it is hard to know.  But I
 8   think that we have a complete production.  We just got the
 9   60,000 images to review in the last two days.
10            So, I--  Certainly they violated the order, but I
11   think that's not what you are looking for at this point.
12            THE COURT:  Well, maybe, maybe not.  Let me hear
13   from counsel for the defendants.
14            MS. DICKINSON:  Okay.  Thank you, Your Honor.
15            THE COURT:  What is going on here if you are not
16   seeing the production before you are turning it over to
17   counsel?
18            MS. BENNETT:  Your Honor, let me explain.  And I
19   don't think that's entirely an accurate description.  We
20   became involved in the case actively as, essentially, lead
21   counsel November 4.  And we have come into the case, I think
22   discovery ends next Friday.  So, it has been quite a tight
23   schedule for us.
24            However, Arizona counsel, I can't speak for how or
25   anything they did as far as review of the documents before we
```

1    became involved in the case.
2            THE COURT:  Well, I don't think--  If you became
3    involved November 2, that was after the last, that was around
4    the time of the last hearing, was it not?
5            MS. BENNETT:  November 4, Your Honor, which was
6    the--  October 30, Your Honor, was the last hearing and--
7            THE COURT:  Right, but we are not talking about what
8    was produced by an Arizona counsel.  We are talking about what
9    was produced by your client after you were lead counsel.
10           MS. BENNETT:  Well, actually, Your Honor, the
11   production at issue, the initial production was before we were
12   lead counsel.  Arizona counsel was still involved in the case
13   and handling the industry.
14           THE COURT:  I am talking about what you gave within
15   the ten days or so that I ordered that the documents be
16   produced.
17           MS. BENNETT:  Your Honor, Arizona counsel --
18           THE COURT:  I go back to the dates--
19           MS. BENNETT:  -- still was handling the document
20   production at that point.
21           THE COURT:  Okay. All right.  What about Mrs.
22   Loomis though, you were clearly involved at that point.
23           MS. BENNETT:  Your Honor, we were involved--  The
24   situation with that is Mrs. Loomis through Arizona counsel
25   produced a file, I believe on October 30.  Or November 6,

1  rather, I am sorry.  No, October 30, the same day of the
2  hearing, I believe.  And if I am inaccurate with that, I will
3  ask counsel to correct me.
4          On November 8 during the deposition of Jenni Loomis,
5  it came to our attention that the --
6          THE COURT:  The e-mails were missing.
7          MS. BENNETT:  -- e-mails were missing.  I don't
8  think Jenni Loomis realized it.  I don't think she knew how to
9  download the documents from her computer.
10         THE COURT:  Right.  And I understand it went back to
11 the expert.  The expert redid this and sent it out.  But they
12 didn't come through you?  You have never looked at it?
13         MS. BENNETT:  Your Honor, they came, it came in
14 after this motion had come to light.  And actually, we think
15 that--  We had conversations with Jenni Loomis, we think it is
16 responsive based on our conversations with her.
17         We did not have an opportunity to look at it given
18 the short time schedule, and counsel wanted it after having
19 filed this motion.  So, we produced it to them.
20         I mean, their discovery responses or requests are
21 quite broad, Your Honor.  Number 16, for instance, asks to the
22 extent not already covered above, all documents that support
23 any position you have taken or intend to take in this action.
24         I agree, if there are personal e-mails in there,
25 those would not be responsive.  However, given the short time

```
 1  frame--  Yeah, I mean, it was represented to us that it was
 2  all business-related e-mails.  She has a separate account,
 3  e-mail account for personal matters.  So, it was our
 4  understanding that it was responsive.  And counsel had filed
 5  this motion, and we produced it.
 6          Also, we brought up to counsel when they first
 7  raised the overly broad production issue that we could get a
 8  team of contract attorneys immediately.  We have our
 9  e-discovery vendor here with us today who could get those
10  attorneys and cull it for anything that counsel thought was
11  not responsive.  And we made that offer last Wednesday, the
12  day after the motion was filed.  And we haven't received a
13  response to that.
14          THE COURT:  Well, I don't know that that--  All
15  right.  Anything else?
16          MS. BENNETT:  I would just like to point out, Your
17  Honor, Jenni Loomis did not realize she had not produced the
18  documents.  She sent another disk and I think made the same
19  good faith mistake, again producing a file without the
20  e-mails.
21          And so, that was the cause for the delay.  She had,
22  finally the third time, and I think she--
23          THE COURT:  I guess also what I am trying to figure
24  out is why it took so long.  I mean, they notified you of that
25  lack of production, and that was on the 16th I believe it was,
```

```
 1  but you didn't even produce the documents until after the
 2  motion was filed.
 3              MS. BENNETT:  Your Honor, the dates, the date we
 4  were notified was November 8.  We received a disk from her on
 5  November 16.  And again, that was missing the e-mails.  And we
 6  received another disk two days later that actually included
 7  the e-mails.
 8              They had to be sent to the discovery vendor to be
 9  Bates stamped.  We got them back the same day they filed their
10  motion, and gave them to counsel at 8 o'clock the next
11  morning.  That was the timeline.
12              THE COURT:  Okay.  Thank you.
13              MS. BENNETT:  Thank you, Your Honor.
14              THE COURT:  Did you have anything else to add?
15              Did you have anything else to add?
16              MS. DICKINSON:  I am sorry, Your Honor.  Your Honor,
17  I have simply, I guess--  You know, we find ourselves in the
18  unenviable position of being in front of you this morning.  I
19  wish that things were going better.  But I would say that it
20  is refreshing to have this opposing counsel on the other side
21  of the table from us.  And I do think that they find
22  themselves in the unenviable position of representing a client
23  that is difficult to represent.
24              THE COURT:  Yes.  All right.
25              MS. DICKINSON:  That said, I have to protect my
```

1  client.
2           THE COURT: I understand.
3           MS. DICKINSON: And we are having a hard time
4  preparing for trial and getting exhibit lists ready for less
5  than two weeks from now. We haven't had these documents for
6  depositions. And I think that something should be done.
7           THE COURT: All right. Well, the problem I have got
8  here is that-- Let me back up a little bit and say that as
9  far as your opposition is concerned, it was received after 5,
10 which is definitively technically a violation, but I saw it
11 the next morning, you saw it the next morning in time to file
12 a reply. So, I've accepted your opposition and I looked at
13 it.
14          I don't believe that technically a meet and confer
15 was required because your clients' failure to produce the
16 documents was a violation of my order that I previously
17 entered compelling discovery.
18          If we were dealing with Arizona counsel here, quite
19 frankly, I don't think I would hesitate to impose sanctions.
20 But I think that you are trying to make your clients produce
21 what they have to produce.
22          I don't necessarily believe your clients' version of
23 these being inadvertent mistakes or that they didn't know what
24 was going on. But what I am faced with at this point is the
25 fact that plaintiffs' counsel has the documents.

```
 1              So, I think imposing the kind of sanctions that I
 2   might normally impose and that you are requesting I think at
 3   this point would not be appropriate.  But we are going to have
 4   to do some things to remedy the situation.
 5              Now, as to Mrs. Loomis' files, you are going to have
 6   to correct this data dump immediately.  And that means no
 7   later than Wednesday I want you to produce documents to the
 8   plaintiff that correspond to the requests that they have made.
 9   I want you to identify to them by Bate number, Bates numbers
10   which documents are responsive to which requests.
11              And I want your expert to go through them prior to
12   Wednesday and cull out everything that is not responsive.
13              I am going to assume that everything else from Mr.
14   Loomis is there.  Counsel thinks it is, and we are going to
15   assume it is at this point.  If it's not, then I am going to
16   impose sanctions, I am not going to fool around with this
17   anymore.
18              Now, I am also going to impose costs for this motion
19   because they shouldn't have had to go--  They, as you know,
20   had to file this motion, which they had to file no matter what
21   because of Mrs. Loomis' failure to produce, even if they had
22   Mr. Loomis' documents that were missing.
23              And I still have not gotten anything from you, I
24   think, about your costs and fees with regard to the last
25   motion and everything else that I listed there.
```

```
 1              MS. DICKINSON:  Yes, we did file that.
 2              THE COURT:  So, I mean, I know you are busy and if
 3  you want to get--
 4              MS. DICKINSON:  No, we did file that, Your Honor.
 5              THE COURT:  You did?  Okay, I haven't seen it.
 6              MS. DICKINSON:  We filed.  And they actually filed
 7  and opposition --
 8              THE COURT:  I didn't see that.  When did that come
 9  in?
10              MS. DICKINSON:  --saying that our fees are
11  outrageous and--
12              THE COURT:  When did that come in?  I didn't see
13  that.
14              MS. DICKINSON:  We filed it Tuesday before
15  Thanksgiving.
16              THE COURT:  Okay.  We will definitively pull that
17  out.
18              MALE VOICE:  I have the document here, Your Honor.
19              THE COURT:  No, that's all right, we will pull it
20  up.  I am sure it is there, we just missed it.  I am sorry.
21              MALE VOICE:  It is document 49.
22              MR. BENNETT:  It was the same day, the same day.
23              THE COURT:  Okay, I will take a look at that.  And
24  file costs and fees as to this.
25              MS. DICKINSON:  We did, Your Honor.  We filed the,
```

1   we filed a statement, that was our understanding of what you
2   wanted.  And then defendants filed a--
3           THE COURT:  Well, I haven't looked at that.
4           MS. DICKINSON:  Okay.
5           THE COURT:  I am talking about your costs and fees
6   with regard to this motion, file a statement as to that
7   because I am going to grant that as well.
8           Now, I am assuming though that you can get through
9   all of your documents by the discovery cutoff, is that
10  correct?
11          MS. DICKINSON:  You mean that we can, if they give
12  us the documents next Wednesday, that we can have--
13          THE COURT:  Yes, right, you will be ready for the
14  final pretrial, is that correct?
15          MS. DICKINSON:  I think we have no choice.  I will
16  tell you, Your Honor, if you are considering extending a
17  deadline, I don't want a deadline extended.  I would ask that
18  the Court not do that.  I would rather muddle through.
19          THE COURT:  Well, I think that--  I think it would
20  be problematic to extend it at this point.  I just wanted to
21  make sure that you would be able to get through all the
22  documents and get ready for the pretrial conference, that's
23  the only thing I was concerned with.
24          MS. DICKINSON:  We will make do.
25          THE COURT:  Okay.

1           MS. DICKINSON:  Thank you, Your Honor.
2           THE COURT:  All right.  So, anything else?
3           MS. BENNETT:  Your Honor, if I may add, and we have
4    been trying to work through the issues, there are some issues
5    with opposing counsel's document production as well in terms
6    of--
7           THE COURT:  Well, I am not going to hear that, I
8    don't have a motion in front of me.
9           MS. BENNETT:  I understand, Your Honor.  The only
10   point it goes to is the extension of the deadline.
11          THE COURT:  Well, I am not going to do that.
12          MS. BENNETT:  I understand, Your Honor.
13          THE COURT:  We are all dealing here today with your
14   clients' problem.  And if you had a problem with their
15   production, we need to have been dealing with that before.
16          MS. BENNETT:  I understand, Your Honor.
17          THE COURT:  So, I am not going to extend the
18   deadline at this point.
19          MALE VOICE:  Judge, this isn't about extending the
20   deadline or the discovery issues.  It's really about your last
21   order.  And we have read this and Michelle has read it, we are
22   just asking for an interpretation.
23          THE COURT:  Okay.
24          MALE VOICE:  It says at one point, you identified us
25   as local counsel and then--

```
 1              THE COURT:  Right.
 2              MALE VOICE:  And then you identified the Arizona
 3   counsel as counsel.
 4              THE COURT:  That's what I understood.
 5              MALE VOICE:  And then there is a section that says--
 6   Oh, I am sorry.
 7              There is a section that says, defendants and
 8   defendants' counsel shall not contact plaintiffs, plaintiffs'
 9   employees or plaintiffs' witnesses.
10              THE COURT:  Right.
11              MALE VOICE:  And it doesn't say defendants' local
12   counsel.  And you have called us, our or firm, previously
13   local counsel and referred to them--
14              THE COURT:  Right.
15              MALE VOICE:  So, our understanding was that we can
16   still write and communicate and, not, obviously, with their
17   clients, but we can communicate with their witnesses to the
18   extent that they are not solely their witnesses?
19              THE COURT:  Do you have a problem with that at this
20   point?  Assuming it is not it's his client who contacts them.
21              MS. DICKINSON:  This firm?
22              THE COURT:  Yes.
23              MS. DICKINSON:  I have no problem with it.
24              THE COURT:  Okay.
25              MALE VOICE:  We just wanted a clarification.  Thank
```

```
 1  you, Judge.
 2              THE COURT:  Okay.  All right, thank you.
 3              MS. DICKINSON:  Thank you, Your Honor.
 4              THE COURT:  Your client may not though.
 5              MALE VOICE:  We understand that, Your Honor.
 6              THE COURT:  Okay.  Thank you very much.
 7              MS. BENNETT:  Thank you, Your Honor.
 8              THE COURT:  I guess there is no possibility of
 9  settlement?
10              MS. DICKINSON:  We will give the company back if
11  they will give us our 14 million back.
12              MALE VOICE:  Judge, we would be interested in a
13  magistrate settlement conference.
14              THE COURT:  Well, what I would like is for you all
15  to discuss it first.  And if you think you can settle it, but
16  you just need some help getting there, I would be glad to
17  conduct one.  If your client is not interested, then there is
18  no point.
19              So--  But I would like you to discuss it first, see
20  if you can narrow it a little bit.  If you think it might help
21  things, I would be glad to do it.  Give me a call.
22              I am going to have a lot of trouble fitting it in
23  before Christmas, I am really booked.  But I may be able to
24  find a day.  But just let me know.
25              MALE VOICE:  I would just offer this.  I think it
```

18

1  would help our client personally to hear from a judge what
2  kind of burden he sits.  I think it would make a big
3  difference.
4          THE COURT:  I would be glad to do that, as long as
5  plaintiffs' counsel thinks that my time would be fruitful.
6          MS. DICKINSON:  Well, you know, Your Honor, I think
7  it would be fruitful if it would manage the defendants', not
8  counsel, but the defendant, the clients' expectations.
9          THE COURT:  Okay.
10         MALE VOICE:  We're not saying we can't talk to him,
11 Judge, but it sometimes helps.  And D.C. has mandatory, and we
12 do this all the time.  Really, I think it really helps.
13         THE COURT:  Okay.  Why don't you call my chambers
14 and we will see if we can work out a date.
15         MS. DICKINSON:  Okay, thank you.
16         THE COURT:  Did you want to do that before the
17 holidays or after?
18         MR. BENNETT:  Before would be great if we can manage
19 it, Your Honor.
20         THE COURT:  Well, call my secretary.  And I have got
21 maybe a couple of days here or there that I could do it.
22         MS. DICKINSON:  Okay.
23         THE COURT:  I just have to look because I will be
24 gone from the 25th through the 5th or 6th.
25         MS. DICKINSON:  Okay.

19

1     THE COURT: But maybe I can squeeze you in. Okay.
2     MS. DICKINSON: Thank you, Your Honor.
3     THE COURT: Okay.
4     MALE VOICE: Thank you, Your Honor.
5     MR. BENNETT: Thank you, Your Honor.
6     NOTE: The hearing concluded at 10:44 a.m.
7     ----------------------------------------------------

C E R T I F I C A T E   of   T R A N S C R I P T I O N

10    I hereby certify that the foregoing is a true and
11 accurate transcript that was typed by me from the recording
12 provided by the court. Any errors or omissions are due to the
13 inability of the undersigned to hear or understand said
14 recording.

16    Further, that I am neither counsel for, related to,
17 nor employed by any of the parties to the above-styled action,
18 and that I am not financially or otherwise interested in the
19 outcome of the above-styled action.

23              /s/ Norman B. Linnell
24              Norman B. Linnell
25              Court Reporter - USDC/EDVA