**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| Intersections Inc. and Net Enforcers, Inc., | |
| Plaintiffs, | |
| v. | Civil Action No.  1:09CV597 (LMB/TCB) |
| Joseph C. Loomis and Jenni M. Loomis, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO JOE LOOMIS' OBJECTIONS TO DISQUALIFICATION
OF EMIL W. HERICH AND KEATS MCFARLAND & WILSON LLP**

Plaintiffs Intersections Inc. ("Intersections") and Net Enforcers, Inc. ("NEI") (collectively, "Plaintiffs") respectfully submit this Response to Defendant Joseph C. Loomis' ("Joe Loomis") Objections to Magistrate Judge's Decision on Nondispositive Matter and Request for Reconsideration by District Court of Magistrate Judge's Ruling regarding the disqualification of Emil W. Herich and Keats McFarland & Wilson LLP (the "Objections").

## I.      INTRODUCTION

Keats McFarland & Wilson LLP ("Keats McFarland") represented NEI as outside legal counsel in October and November 2007 in conjunction with Intersections' acquisition of NEI (the "Acquisition"), providing legal services to NEI related to its cease and desist letter process which was being reconfigured.  After Closing, Keats McFarland and NEI entered into a business relationship related to the new letter process whereby NEI investigated IP infringement and populated cease and desist letters and Keats McFarland issued the letters and billed the customers instead of NEI.  During this time, Joe Loomis and Jenni Loomis (collectively, "Defendants") overcharged certain customers for letters that were never sent and double billed customers who were billed by Keats McFarland for the same services.  These actions form, in

part, the basis for Plaintiffs' fraud and conspiracy claims.  It thus is beyond reasonable dispute that the Virginia Rules of Professional Responsibility would prohibit Keats McFarland from representing Joe Loomis against NEI in this case.

Keats McFarland, however, now seeks to switch sides and represent Joe Loomis against NEI in this litigation despite the ethical conflict.  Indeed, Emil W. Herich entered his appearance in this case under the veil of the "Law Offices of Emil W. Herich," failing to disclose to the Court that he is Of Counsel to Keats McFarland.  Upon learning of the ethical conflict, Plaintiffs filed a Motion to Disqualify Emil W. Herich and Keats McFarland & Wilson LLP from representing Joe Loomis against NEI in this case (the "Disqualification Motion").

On September 3, 2010, after full briefing and a hearing, this Court entered an Order disqualifying Emil Herich and Keats McFarland from appearing as counsel on behalf of Joe Loomis in this case (the "Disqualification Order").  Joe Loomis now seeks a do-over in the form of Objections to the Disqualification Order and improperly asks the Court to consider new "evidence" in the form of two supplemental Declarations filed after the hearing.  Joe Loomis does not point to any clear error by the Court but instead contends that this Court should overrule Judge Buchanan simply because he disagrees with her ruling.  Specifically, Joe Loomis claims that this Court lacked jurisdiction to consider the Disqualification Motion in light of the bankruptcy stay; that Keats McFarland did not represent NEI as counsel in a substantially related matter; that the confidential business relationship between Keats McFarland and NEI does not support disqualification; that Defendants' identification of Larry McFarland, a principal partner at Keats McFarland, as a trial witness does not support disqualification; and that there is no risk that Keats McFarland will disclose confidential information to Joe Loomis because, contrary to the position of ignorance he has taken throughout this litigation, he now knows it all.

Joe Loomis made these very same arguments in his opposition brief and at the hearing. Joe Loomis' arguments and evidence, however, were flatly contradicted by the very documents he produced in discovery.  Indeed, Plaintiffs submitted to the Court emails authored by Joe Loomis and Larry McFarland in October 2007 confirming the attorney-client relationship between Keats McFarland and NEI and wherein Larry McFarland provided legal advice to NEI regarding the letter process.  Further, Joe Loomis submitted to the Court under seal the written agreement establishing the confidential business relationship between Keats McFarland and NEI regarding the new letter process, whereby Keats McFarland obtained additional confidential information from NEI.

Judge Buchanan found that the credible evidence established that Keats McFarland had an attorney-client relationship with NEI prior to Closing related to the Acquisition and the letter process and a business relationship after Closing related to the letter process; Keats McFarland obtained confidential information through its attorney-client and business relationships with NEI relevant to the issues in this case; and Defendants' identification of Larry McFarland as a trial witness further supports the conclusion that Keats McFarland possesses confidential information relevant to the underlying dispute.  Judge Buchanan's decision to disqualify Emil Herich and Keats McFarland was correct, and Joe Loomis' objections thus should be overruled.

## II.    FACTS

### A.    Keats McFarland's Legal Representation of NEI Before Closing

During the course of Intersections' due diligence regarding a potential acquisition of NEI's stock from Joe Loomis in 2007, Intersections became concerned that NEI may have been engaged in the unauthorized practice of law and/or in improper fee sharing arrangements with

outside counsel regarding the cease and desist letter process.[1]  *See* Exhibit 4 to Reply (October 12, 2007 email from Joe Loomis to Larry McFarland and Intersections, produced by Joe Loomis in discovery) and Exhibit 7 (continuation of October 12-13, 2007 email string between Joe Loomis, Larry McFarland and Intersections regarding "concerns that we have expressed regarding the potential unauthorized practice of law and/or potential fee sharing arrangements," produced by Joe Loomis in discovery).  Intersections thus requested that NEI retain legal counsel to advise it regarding reconfiguration of the letter process before Closing.  *Id.*

As the exhibits submitted in support of the Disqualification Motion establish, NEI hired Keats McFarland in October 2007 as outside legal counsel to provide legal services regarding the Acquisition and specifically related to the letter process.[2]  On October 12, 2007, Joe Loomis sent an email he titled "KMW Retained Counsel Confirmation & Letter Process" to Larry McFarland and Intersections confirming that Keats McFarland was outside legal counsel for NEI regarding the Acquisition and letter process:

> Larry,
>
> I have included John [Scanlon] and Neal [Dittersdorf] on this email to confirm a few things so we can proceed with next steps with the acquisition of Net Enforcers.
>
> 1. KMW is retained outside counsel for Net Enforcers.

---

1  Although Plaintiffs dispute many of the facts alleged in Joe Loomis' Objections, Plaintiffs address herein only those facts relevant to the disqualification issue and incorporate herein the complete recitation of facts in Plaintiffs' Response to Defendants' Objections to the Report and Recommendation regarding the enforceability of the settlement agreement.  Plaintiffs further incorporate herein by reference the Disqualification Motion, Reply to Joe Loomis' Opposition to the Disqualification Motion (the "Reply") and exhibits thereto.

2  NEI held out Keats McFarland as its legal counsel to the public throughout 2007.  See, e.g., Exhibit 1 to Reply at CK001321 (January 8, 2007 Powerpoint presentation to a potential acquirer of NEI produced in discovery by Cross Keys, Joe Loomis' investment broker, identifying KMW Law as counsel to NEI); Exhibit 2 to Reply at JL0186724 (August 3, 2007 Agenda for meeting with Intersections produced in discovery by Joe Loomis, identifying "KMW Law" as counsel to NEI); Exhibit 3 to Reply at JL0213008 (August 21, 2007 email from Joe Loomis to counsel for Major League Baseball Properties, Inc., identifying Keats McFarland as outside counsel to NEI and noting "I believe he [Larry McFarland] is your counsel as well (small world)."

*See* Exhibit 4 to Reply (produced by Joe Loomis in discovery).  Larry McFarland responded in an email to Joe Loomis and Intersections, "Joe, I agree with everything you just said."  *See id.*

Indeed, in that very same email, Joe Loomis sought and obtained legal advice from his outside legal counsel, Larry McFarland:

> KMW agrees that the attached C&D letter process is "ok" to proceed accordingly.  I want to clarify that if an infringer, recipient or ISP of a letter calls Net Enforcers seeking additional information or clarification on resolution, that it is, in your opinion, not the practice of law as long as the information or data provided is not legal advice or our clients legal position.

*See id.*  Larry McFarland's affirmative response quoted above applied to this inquiry as well. *See id.*

The next day, on October 12, 2007, Intersections' Chief Legal Officer, Neal Dittersdorf, advised Larry McFarland by email of his understanding that Keats McFarland would be representing NEI regarding the letter process and inquired about whether he should communicate with NEI through Keats McFarland going forward:

> I understand from Joe Loomis that you will be representing Network [sic] Enforcers, Inc. (NEI) in connection with the transformation of its current practices for cease and desist letters to new practices.  I am glad to hear that NEI will have solid legal counsel in this area.
>
> \*       \*       \*
>
> At a minimum, I do not know whether you consent to my having direct communications with NEI about this matter, or prefer me to communicate through you as NEI's legal counsel.

*See* Exhibit 7 to Reply (produced by Joe Loomis in discovery).

Larry McFarland forwarded the email to Joe Loomis the next day, who then confirmed Keats McFarland's representation of NEI in another email to Intersections:

> <u>I realize Neal's concern is that he is not allowed to give me legal advice and that is why Larry and his firm [sic] to be involved</u>….

> I mean, didn't Neal call me directly on my cell phone after our call on Thursday and ask me questions about the process, ask me to send him information but then later <u>emails my counsel</u> saying that "I continue to communicate with him"….

*See id.* (emphasis added).

Thereafter, on October 23, 2007, Intersections sought to re-confirm which of NEI's outside law firms was representing NEI with respect to the letter process.  Intersections inquired by email to NEI:

> I also wonder whether you could clarify which counsel represents NEI in connection with these issues.  Joe had earlier sent out an email stating that KMW has been retained as counsel in connection with those issues, but we also understand Neil Seidman is reviewing the proposal.

*See* Exhibit 5 to Reply (produced by Joe Loomis in discovery).  NEI's general counsel confirmed to Intersections in an email copied to Joe Loomis and Larry McFarland that "…KMW is representing NEI in connection with the issues stemming from the letters process."  *See id.*

Two days later, Intersections provided Joe Loomis and Keats McFarland with a Closing Checklist assigning the preparation of certain Disclosure Schedules related to the letter process to NEI, Joe Loomis and NEI's outside counsel, Keats McFarland.  *See* Exhibit 6 to Reply (produced by Joe Loomis in discovery).

At no time did Larry McFarland (or anyone from Keats McFarland) or Joe Loomis ever tell Intersections that Keats McFarland was not representing NEI.  Instead, Joe Loomis and Larry McFarland consistently represented just the opposite to Intersections.

### B.    Keats McFarland's Confidential Business Relationship With NEI After Closing

After Closing, Keats McFarland and NEI entered into a business relationship related to the new cease and desist letter process.[3]   The business relationship is governed by a written agreement that prohibits the parties from disclosing confidential information obtained during the course of the now-three year agreement to third parties, including Joe Loomis.   Joe Loomis submitted the written agreement to the Court under seal during the hearing.

As alleged in the Complaint, after Closing, Defendants continued to overcharge clients for cease and desist letters that were never sent and double billed clients who were billed by outside law firms, including Keats McFarland, for the same services.   It is beyond reasonable dispute that Keats McFarland obtained confidential information related to issues in dispute in this litigation through its business relationship with NEI.   Indeed, Defendants identified Larry McFarland as a trial witness in this litigation, presumably regarding the cease and desist letters. *See* Defendants' Amended Trial Witness List, filed January 13, 2010 (docket entry #96).

### C.    Emil Herich's Entry of Appearance

Emil Herich filed an Application to Qualify as a Foreign Attorney Under Local Civil Rule 83.1(D) and Local Criminal Rule 57.4 to represent Joe Loomis in the present action (the "Application") on August 6, 2010.   *See* Exhibit 1 to Disqualification Motion.   Emil Herich represented to the Court that he is an attorney with the "Law Offices of Emil W. Herich." Timothy McEvoy, Joe Loomis' fourth attorney in this case, vouched for Emil Herich's fitness to

---

3    On or about July 20, 2010, Keats McFarland sent a letter to NEI terminating its relationship with NEI as of November 8, 2010.  The relationship, however, is currently ongoing.

be admitted pro hac vice into this Court.  This Court approved Emil Herich's application the same day.[4]

Emil Herich failed to disclose in the Application, however, that he is Of Counsel to the law firm of Keats McFarland.  Keats McFarland's website (www.kmwlaw.com) identifies Emil Herich as Of Counsel to the law firm.  *See* Exhibit 2 to the Disqualification Motion. Furthermore, Emil Herich provided in the Application a Keats McFarland email address (eherich@kmwlaw.com) and office address (9720 Wilshire Boulevard, Beverly Hills, California 90212).  *See* Exhibits 1 and 2 to the Disqualification Motion.

### D.     Disqualification of Emil Herich and Keats McFarland

Plaintiffs moved to disqualify Emil Herich and Keats McFarland from representing Joe Loomis in this case on grounds that Keats McFarland has legal and ethical obligations not to use information relating to or gained in the course of its earlier legal representation of NEI to NEI's disadvantage and a contractual obligation not to disclose confidential information obtained through its business relationship with NEI to third parties, including Joe Loomis.  The ethical conflict is imputed to Emil Herich as Of Counsel to the law firm.  On September 3, 2010, after full briefing and a hearing, Judge Buchanan properly ordered that Emil Herich and Keats McFarland be disqualified.

A week after the Court issued its Order, Joe Loomis filed supplemental declarations that were not considered by the Court in ruling on the Disqualification Motion in support of a motion for reconsideration.   Joe Loomis improperly attempts to rely upon these after-the-fact supplemental declarations to make his case.

---

4   Joe Loomis did not serve a copy of the Application upon Plaintiffs prior to the Court entering its
     August 6, 2010 Order or at any time thereafter.

## III.    ARGUMENT

### A.    Standard of Review

It is settled that a motion to disqualify counsel is a nondispositive motion. *U.S. v Samuels*, 2008 WL 1835736, *1 (W.D. Va., April 23, 2008).  Under Federal Rule 72(a), the Court may modify or set aside a part of a nondispositive order only where that order is clearly erroneous or contrary to law:

> (a) Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.  The district judge in the case must consider timely objections and modify or set aside any part of the order that is <u>clearly erroneous or is contrary to law</u>.

Fed. Rule Civ. Proc. 72(a) (emphasis added).  The clearly erroneous standard requires that the reviewing court affirm a nondispositive order unless "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Unlike with dispositive motions, the Court's review of a ruling on a nondispositive motion is limited to the evidence presented to the Magistrate Judge, such that the Court may not consider additional evidence. *U.S v Samuels*, 2008 WL 1835736, *1 (W.D. Va., April 23, 2008) (quoting *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("district court is not permitted to receive further evidence" upon review of Order regarding nondispositive motion); *Virgin Enterprises Ltd v. Virgin Cuts, Inc.*, 149 F. Supp. 2d 220, 222-24 (E.D. Va. 2000) (Court only may consider additional evidence upon review of dispositive, not nondispositive, motions); *see also, Jesselson v. Outlet Assocs. of Williamsburg, Ltd.*, 784 F. Supp. 1223, 1228-29 (E.D. Va.

1991) (internal citations omitted) ("Review of a Magistrate's ruling before the District Court does not permit consideration of issues not raised before the Magistrate.").

Although disqualification of an attorney is a serious matter, a party's right to choose counsel "is 'secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar.'" *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 2928285 (E.D. Va. July 22, 2010) (quoting *Tessier v. Plastic Surgery Spec., Inc.*, 731 F. Supp. 724, 730 (E.D. Va. 1990)). "Our Court of Appeals has directed that ethical rules are not to be applied 'with hair-splitting nicety,' but, rather, 'with the view of preventing the appearance of impropriety, [the Court] is to resolve all doubts in favor of disqualification.'" *Id.* (quoting *Sanford v. Virginia*, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009) and *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977)).

"'[O]nce an attorney-client relationship had been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter;' the moving party does not have the evidentiary burden of showing actual disclosure of confidences." *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL at *3 (quoting *Tessier*, 731 F. Supp. at 730). The Court then is left with only "assessing the substantiality of the relationship between the present and the prior representation." *Id.* Disqualification may also be warranted, however, where confidential information is obtained by a law firm from a third party to whom the law firm has a duty of nondisclosure. *See* Virginia Rule of Professional Conduct 1.7.

### B.      The Court Has Jurisdiction to Decide the Disqualification Motion

Joe Loomis suggests that this Court lacks jurisdiction to decide the Disqualification Motion. Specifically, Joe Loomis argues that the automatic bankruptcy stay prevents this Court from ruling on any motion other than a motion to enforce the settlement agreement, and that Plaintiffs should have sought additional relief from the stay before moving this Court to

disqualify his new counsel or should have had the Bankruptcy Court decide the issue. This unduly restrictive view of what a non-bankruptcy court can do after a stay is lifted is baseless. The Bankruptcy Court lifted the automatic stay to enable this Court to determine whether the settlement agreement entered into by the parties was enforceable. It is axiomatic that in order to make such a determination, this Court must have authority to adjudicate all matters related to that issue. *See In re Nestorio*, 5 Fed. App'x 283, 285-6 (4th Cir. 2001) (holding that where relief from automatic stay granted in order "to determine the damages and complete the litigation," court's award of both compensatory and punitive damages was properly within the order as "the plain language of the consent order [to lift the stay] 'did not preclude the [magistrate judge] from considering ***all issues relevant*** to a determination of damages.'" ). Joe Loomis cites no caselaw suggesting that bankruptcy courts intend to unduly bind the hands of the courts they authorize to decide non-bankruptcy issues, such as the enforceability of a settlement agreement. Indeed, if correct, Joe Loomis would have had to seek approval of the Bankruptcy Court to file the motion to recuse Magistrate Judge Buchanan, which he did not. Accordingly, Judge Buchanan properly found that the Court had jurisdiction to decide the motion for disqualification.

## C.   The Court Properly Concluded That Keats McFarland's Prior Legal Representation of NEI Supported Disqualification In This Matter

Joe Loomis contends that Judge Buchanan improperly disqualified Emil Herich and Keats McFarland based on the law firm's prior legal representation of NEI in connection with the Acquisition. Joe Loomis contends that the undisputed evidence before the Court (Joe Loomis and Larry McFarland's original Declarations) was that Keats McFarland did not represent NEI with respect to the Acquisition. As for the emails confirming Keats McFarland's representation of NEI, Joe Loomis suggests that they pertained to a "potential future" attorney-

client relationship between NEI and Keats McFarland after Closing that simply never materialized.  This novel contention is belied by the evidence.

Joe Loomis and Larry McFarland's Declarations, prepared just weeks ago in opposition to the Disqualification Motion and three years after the fact, were controverted by multiple contemporaneous emails that they authored in 2007.  Indeed, both Joe Loomis and Larry McFarland confirmed the existence of the attorney-client relationship to Intersections in emails in October 2007.  Joe Loomis produced those emails from his files in discovery, and Emil Herich stated on the record at the hearing that he had no basis for doubting their authenticity.  The emails establish that during the course of its due diligence regarding NEI, Intersections became concerned that NEI may have been engaged in the unauthorized practice of law and/or improper fee sharing arrangements related to the cease and desist letter process.  Intersections thus requested that NEI retain outside legal counsel to advise NEI regarding the letter process.  NEI retained Keats McFarland and then confirmed the attorney-client relationship in emails to Intersections.  Larry McFarland also confirmed the attorney-client relationship in an email to Intersections and by his conduct in providing legal advice to NEI and undertaking responsibilities regarding the preparation of certain Schedules to the Stock Purchase Agreement ("SPA") related to the letter process.  The credible evidence before the Court was that Keats McFarland did represent NEI as outside legal counsel prior to Closing, specifically, with respect to the Acquisition and the letter process, which are at issue in this case.  The existence of an attorney-client relationship raises an irrebuttable presumption that Keats McFarland obtained confidential information from NEI regarding the issues in dispute in this case and thus requires disqualification.  Notwithstanding, it is beyond reasonable dispute that Keats McFarland obtained confidential information from NEI through that attorney-client relationship.

Joe Loomis contends, however, that the fact that NEI entered into a confidential business agreement with Keats McFarland after Closing suggests that Keats McFarland did not represent NEI as outside legal counsel before Closing. The two are unrelated. As Plaintiffs explained to the Court at the hearing, Keats McFarland and NEI were involved in two separate confidential relationships: an attorney-client relationship before Closing and a business relationship after Closing. The confidential business agreement establishes the existence of the undisputed business relationship after Closing, but does not negate the existence of a prior attorney-client relationship concerning the Acquisition and letter process.

Joe Loomis contends that the Court improperly considered documents presented by Plaintiffs because the documents constituted unauthenticated hearsay and the reply to which they were attached was filed late. This is incorrect. As explained above, there can be no reasonable dispute as to the authenticity of the documents, as all but one of the key documents attached as exhibits to Plaintiffs' timely filed Reply were produced by Joe Loomis in discovery. Emil Herich represented to the Court during the hearing that he had no basis upon which to challenge their authenticity. Further, the emails upon which the Court focused were written by Joe Loomis and Larry McFarland contemporaneously with the events in question. To the extent Joe Loomis complains that the emails were written by witnesses who were not subject to cross-examination, that argument falls flat, as the key emails were authored by Joe Loomis and Larry McFarland. If anyone was at a disadvantage, it was Plaintiffs, who could not cross-examine Joe Loomis or Larry McFarland regarding their emails or their Declarations. Further, as Judge Buchanan found at the hearing, Plaintiffs followed all rules regarding the timing of the filing of their Reply, and properly used the Reply to respond to the assertions made by Joe Loomis in his opposition

papers.[5]  As Joe Loomis indicated in his brief, the Court has discretion to consider papers filed after a deadline.  As Plaintiffs timely filed their Reply, the Court did not need to exercise such discretion.

Joe Loomis further contends that this Court should overrule Judge Buchanan based upon supplemental declarations he filed a week after the hearing.  As the disqualification of counsel is a non-dispositive motion, the Court must determine whether the disqualification was clearly erroneous or contrary to law based upon the evidence before Judge Buchanan at the time of the ruling.  The two supplemental declarations filed after the hearing thus are not properly part of the record to be reviewed by this Court.[6]

Joe Loomis further contends that Keats McFarland's prior representation of NEI could not form the basis for its disqualification because the only issue currently before the Court is the enforceability of the settlement agreement, which is not the same or substantially similar to the law firm's representation of NEI regarding the Acquisition and letter process.  The settlement agreement may be the only issue on the table at this stage, but the possibility remains that this case could be returned to the trial docket at some point such that Emil Herich and Keats McFarland would be counsel for Joe Loomis against their former client, NEI, regarding the very Acquisition and letter process upon which they advised NEI as counsel and obtained confidential

---

5   Plaintiffs filed the Disqualification Motion on August 20, 2010, and noticed a hearing for Friday, August 27, 2010.  Joe Loomis requested a continuance of the hearing to September 3, 2010, which the Court granted.  Joe Loomis, however, filed his opposition on August 25, 2010 anyway.  Joe Loomis claims, without citation to any Rule, that Plaintiffs' Reply was due within three days after his opposition.  There is no such Rule.  Ordinarily, any reply would be filed the day before the hearing. Plaintiffs' Reply thus was due on Thursday, September 2, 2010.  Plaintiffs timely filed their Reply on September 2, 2010 and served a copy by email on Emil Herich at 6:33 a.m. on the West Coast.  Even if Emil Herich was in transit from California when the papers were filed early that morning, he and/or his co-counsel Timothy McEvoy had ample time to vet the issues before the hearing the following day.

6   If this Court were inclined to consider evidence outside the record, however, Plaintiffs would request the opportunity to submit additional evidence as well.

information about through their subsequent business relationship.   That cannot be.   Judge Buchanan properly determined that the Court cannot take a wait and see approach and permit Keats McFarland to represent Joe Loomis and divulge confidential information *unless and until* the case returns to the trial docket.   What is to prevent Keats McFarland from disclosing confidential information to Joe Loomis prior to that date?  Such a position is untenable.

Finally, Joe Loomis brazenly argues that Plaintiffs' failure to produce more formal documentation evidencing an attorney-client relationship between NEI and Keats McFarland in 2007 suggests that no such relationship existed.   Joe Loomis conveniently neglects to mention that after he was suspended by NEI in 2008, he destroyed innumerable NEI files, which was the subject of the sanctions motion pending at the time of the settlement of this case.  He cannot now use his spoliation of evidence to penalize Plaintiffs for failing to produce further documentation. Indeed, Joe Loomis' own emails are sufficient to establish the existence of an attorney-client relationship.

Virginia Rule of Professional Conduct 1.9(a) prohibits a "lawyer who has formerly represented a client in a matter," from "thereafter represent[ing] another person in the same or a substantially related matter" when the present and former clients' "interests are materially adverse."  Rule 1.10 precludes any lawyer in a firm from representing a client when any other lawyer in that firm would be barred under Rule 1.9.  Larry McFarland could not represent Joe Loomis against its former client, NEI, without violating Rule 1.9, and Emil Herich as Of Counsel to Keats McFarland thus is barred as well.  Judge Buchanan properly found that, based upon the evidence before the Court, Keats McFarland represented NEI regarding the Acquisition and letter process and obtained confidential information such that disqualification was warranted.

**D.     The Court Properly Found that the Business Relationship Between Keats McFarland and NEI Supported Disqualification**

Joe Loomis contends that Judge Buchanan improperly relied upon Keats McFarland's confidential business relationship with NEI as grounds for disqualification.  Joe Loomis contends that neither Virginia Rule of Professional Responsibility 1.7 nor Rule 1.9 apply to business relationships.  This is incorrect.  Rule 1.7 addresses ethical conflicts prompted by former clients as well as third parties, such that a former business relationship could form the grounds for disqualification.  *See* Rule 1.7(a)(2) (". . . a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a former client or <u>a third person</u>…." (emphasis added)).

It is undisputed that Keats McFarland and NEI have been involved in a confidential business relationship since in or about November 2007 regarding the new letter process.  At the hearing, Keats McFarland submitted under seal a copy of the confidential business agreement entered into between Keats McFarland and NEI.  It is undisputed that the agreement contains a confidentiality provision which prohibits Keats McFarland from disclosing confidential information to third parties, including its current client, Joe Loomis.  In light of the allegations in the Complaint that Defendants overbilled and double billed customers for letters that were not sent or were billed by outside law firms, including Keats McFarland, it is beyond reasonable dispute that Keats McFarland possesses confidential information related to this case that it is contractually prohibited from disclosing to Joe Loomis.  Keats McFarland's representation of Joe Loomis in this matter thus would violate Rule 1.7.  Accordingly, the Court properly disqualified Keats McFarland on the basis of its confidential business relationship with NEI.

     **E.**     **The Court Properly Considered Defendants' Identification of Larry McFarland as a Trial Witness as Evidence Supporting Disqualification**

Joe Loomis contends that Judge Buchanan improperly found that Defendants' identification of Larry McFarland on their trial witness list supported the disqualification of Keats McFarland and Emil Herich. Specifically, Joe Loomis argues that Virginia Rule of Professional Conduct 3.7(c) permits one lawyer in a firm to represent a client in an adversarial proceeding where another lawyer in the firm likely will be called as a witness. This is true, but only where doing so would not violate Rules 1.7 or 1.9.

As explained above, Keats McFarland's representation of Joe Loomis against NEI in this case would violate Rule 1.7. Such a representation also would violate Rule 1.9 which prohibits Keats McFarland from using confidential information it obtained in the course of its legal representation of NEI to disadvantage NEI. *See* Rule 1.9 (a "lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to or gained in the course of the representation to the disadvantage of the former client . . . ; or (2) reveal information relating to the representation . . . .").

Joe Loomis contends, however, that it is unlikely that Larry McFarland would testify if this case were returned to the trial docket. Whether or not Larry McFarland would testify is beside the point. Larry McFarland's inclusion on the witness list is simply additional evidence that Keats McFarland possesses confidential information regarding this case. Joe Loomis' excuse *du jour* for identifying Larry McFarland only as a "character" witness notwithstanding, the evidence before the Court was that Larry McFarland and Keats McFarland possess confidential information related to the underlying disputes in this case. For example, Keats McFarland was responsible for preparing and reviewing certain Closing documents as Schedules to the SPA, the authenticity of which Joe Loomis now disputes in this litigation. Larry

McFarland and Keats McFarland provided legal advice to NEI with respect to the acquisition regarding NEI's development of a new cease and desist letter process – the very letter process by which Defendants defrauded Plaintiffs after Closing.  Further, Keats McFarland was the outside law firm that billed certain of NEI's top customers for letter services after Closing pursuant to a confidential business agreement with NEI and for which Defendants then double billed the customers, as alleged in the Complaint.   Keats McFarland thus possesses confidential information far beyond Joe Loomis' "character" as Joe Loomis now claims.  The Court thus properly considered Larry McFarland's inclusion on the witness list as evidence supporting disqualification.

### F. The Court Properly Found a Risk that Emil Herich or Keats McFarland Could Disclose Confidential Information to Joe Loomis

Joe Loomis contends that the Court improperly disqualified Emil Herich and Keats McFarland because there was no showing of any risk that confidential information could be disclosed to Joe Loomis.  Specifically, Joe Loomis claims that there is no risk of disclosure because he would know any confidential information the law firm obtained through its attorney-client relationship with NEI before Closing or its business relationship after Closing, since he *was* NEI and all communications with Keats McFarland were made through him.  This is absolutely contrary to Joe Loomis' position throughout this case - that he knows <u>nothing</u>.  Nothing about the overbillings or the double billings for letter services.  Nothing about the letter process.  Nothing about the Acquisition.  Certainly, nothing after Closing, as he quickly became bored and turned to running another company with his brother.  Indeed, he claims he cannot even authenticate the Employment Agreement and SPA because he never read them.  For Joe Loomis now to claim that he and NEI were one in the same such that he knows <u>everything</u> NEI could have disclosed to Keats McFarland would be surprising - if this were any other case.

Notwithstanding, Joe Loomis should be estopped from taking such a drastically contradictory position in this case at this juncture.

Further, Joe Loomis' reliance upon *Christensen v. United States District Court for Central Dist. Of California*, 844 F.2d 694 (9th Cir. 1988) and *Allegaert v. Perot*, 565 F.2d 246 (2d Cir. 1977), for the proposition that disqualification is not proper where no confidential information could have been disclosed because of the identity of the client is misplaced.  As Joe Loomis concedes in a footnote, the only courts that have analyzed this issue under Virginia law have rejected the so-called *Allegaert* rule espoused by those cases.  In *Sharp v. Sharp*, 2006 WL 3088067 (Va. Cir. Ct. Oct. 26, 2006), the Virginia Circuit Court, faced with a dispute between brothers, considered a motion to disqualify one brother's attorney because that attorney had once jointly represented the brothers in a real estate transaction.  *Id.* at *4.  Although the court denied the motion because the subjects of the two representations were not "materially adverse" to one another, *id.* at *24, the court explicitly rejected the argument, based on the *Allegaert* line of cases, that the attorney could not be disqualified because each brother "had no reason to believe that confidences of one party would be withheld from the other."  *Id.* at *25.  In distinguishing *Allegaert*, the court stated that Virginia Rule of Professional Conduct 1.9 was "much broader" than the rule applied in *Allegaert* (based on the ABA Model Rules), because the Virginia Rule "was designed not only to address the need to protect client confidences, but to establish broader standards of attorney loyalty."  *Id.* at *26.  Because the Virginia Rule defines the scope of its prohibition in terms of material adverse "interests" rather than "confidences and secrets," the court held that an attorney's "prior representation cannot amount to implied consent to the current representation," regardless of a party's reasonable expectation of whether or not confidential information will be shared.  *Id.*

In *Touchcom, Inc. v. Bereskin & Parr*, 299 Fed. App'x 953 (Fed. Cir. 2008), the Federal Circuit, applying Virginia law in a suit brought by Touchcom against its former employee, Samuel Frost, disqualified Touchcom's law firm because it had formerly represented Frost in a deposition related to an earlier Touchcom suit. *Id.* at 956. Touchcom, citing *Allegaert*, argued that "Frost had no expectation that any information he conveyed to Wildman Harrold would be withheld from Touchcom." *Id.* at 954. The court declined to follow the *Allegaert* rule holding that the Rule 1.9 "was designed not only to protect client confidences, but 'to establish broader standards of attorney loyalty.'" *Id.* at 955-56.

This Court properly found that, based upon the evidence, Emil Herich and Keats McFarland should be disqualified from representing Joe Loomis against NEI in this case.

## IV. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court overrule Joe Loomis' Objections and affirm the Order disqualifying Mr. Herich and Keats McFarland from appearing as counsel on behalf of Joe Loomis in this litigation.

Dated: October 22, 2010                    Respectfully submitted,

By: ___/s/_____
      Ryan C. Berry (Virginia Bar No. 67956)
      Tara Lee (Virginia Bar No. 71594)
      Attorneys for Plaintiffs
      DLA PIPER LLP (US)
      1775 Wiehle Avenue, Suite 400
      Reston, Virginia 20190
      Telephone:  703.773.4000
      Facsimile:  703.773.5000
      Ryan.Berry@dlapiper.com
      Tara.Lee@dlapiper.com

David Clarke (admitted *pro hac vice*)
Michelle J. Dickinson (admitted *pro hac vice*)
Melissa R. Roth (admitted *pro hac vice*)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone:  410.580.3000
Facsimile:    410.580.3001
David.Clarke@dlapiper.com
Michelle.Dickinson@dlapiper.com
Melissa.Roth@dlapiper.com

*Attorneys for Plaintiffs*
*Intersections Inc. and Net Enforcers, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of October, 2010, I will electronically file the foregoing Plaintiffs' Response to Defendant Joseph C. Loomis' ("Joe Loomis") Objections to Magistrate Judge's Decision on Nondispositive Matter and Request for Reconsideration by District Court of Magistrate Judge's Ruling with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Timothy J. McEvoy
Cameron McEvoy, PLLC
11325 Random Hills Road
Suite 200
Fairfax , VA 22030
Email: tmcevoy@cameronmcevoy.com

*Counsel for Defendant Joseph C. Loomis*

Eugene W. Policastri
Bromberg Rosenthal LLP
401 N. Washington St., Suite 500
Rockville, MD  20850
Email:  ewpolicastri@brsglaw.com

*Counsel for Defendant Jenni M. Loomis*

    /s/
Ryan C. Berry (Virginia Bar No. 67956)
Attorney for Plaintiffs
DLA PIPER LLP (US)
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190-5159
Phone:  703.773.4000
Facsimile: 703.773.5000

EAST\43606303.1