UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Intersections, Inc., et al.

             Plaintiffs,

      v.

Joseph C. Loomis, et al.,

             Defendants.

Case No. 1:09cv597 (LMB/TCB)

**REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT
JOSEPH C. LOOMIS' OBJECTIONS TO DISQUALIFICATION
OF EMIL W. HERICH AND KEATS McFARLAND & WILSON, LLP**

Comes now Defendant, Joseph C. Loomis ("Defendant"), and files this Reply to Plaintiffs' Response to his Objections to Disqualification of Emil W. Herich and Keats, McFarland & Wilson, LLP, stating as follows in support thereof:

## I. INTRODUCTION

By misdirection, sleight of hand and by simply asserting it is so, Plaintiffs argue in their Response to Joe Loomis' Objections to Disqualification of Emil W. Herich and Keats McFarland & Wilson LLP (the "Response") that: (1) Keats McFarland & Wilson, LLP ("KMW") "represented" Net Enforcers, Inc. ("NEI") in connection with the sale of NEI by Defendant Joseph Loomis to Intersections, Inc.; (2) KMW is "switching sides" to represent Defendant Joseph Loomis; and (3) absent disqualification there is a cognizable risk that KMW will reveal secrets learned during its post-closing business relationship with NEI to Defendant Joseph Loomis in violation of a contractual confidentiality provision. Plaintiffs also argue that Defendant's objections that the Magistrate Judge's disqualification order runs afoul of the bankruptcy stay and violates sound decisional authority should be given zero credence.

As a global matter, it is noteworthy that Plaintiffs' papers do not cite the key Virginia Rules of Professional Conduct (1.7 and 1.9) until page 15 of their brief. As the Court knows, the touchstone of the question presented is whether there were two successive, adverse representations "in the same or a substantially related matter." Defendant will demonstrate herein that there is no evidence that KMW ever represented NEI in a matter substantially related to this action. Defendant will also show that Plaintiffs' assertions to the contrary are based on a deliberate attempt to blur or smudge KMW's involvement with the cease and desist letter program into a representation of NEI in the sales transaction. Defendant will also demonstrate that KMW has never "switched sides." Indeed, all of KMW's pre-sale communications concerning the cease and desist letter program (which Plaintiffs falsely assert are implicated in this action) were with Defendant, not Intersections. Defendant will also demonstrate that the confidentiality provision set forth in the business agreement expressly excludes from its restrictions any information that the recipient is already privy to and, therefore, it has absolutely no proper bearing on the disqualification proceedings. Finally, Defendant will also address and rebut Plaintiffs' arguments that the ruling by the Magistrate Judge did not violate the stay of bankruptcy or the applicable case law.

Prior to turning to the merits, however, Defendant would like to briefly address an overused weapon in Plaintiffs' arsenal, *i.e.*, attempts to repeatedly vilify the opposition. To pave the way for their legal arguments, Plaintiffs have continually raised personal, *ad hominem* attacks against Defendant, his counsel of record or both. The current Response is no different. Plaintiffs have argued on two occasions that Attorney Herich failed to disclose his affiliation to KMW in his *pro hac* application, the insinuation being that he was wrongfully concealing his "of counsel" relationship from opposing counsel and/or this Court. Attorney Herich, a California attorney with an unblemished ethical record, "concealed" nothing. His affiliation with KMW is

a matter of public record, both on the KMW website and that of the California State Bar, and is available to anyone who owns a computer. He provided a "kmwlaw.com" web address on his *pro hac* application which is inconsistent with an attempt to "conceal" an affiliation. He indicated on that application that he is representing Defendant through the auspices of his personal law offices because that is exactly what he is doing. KMW is not sharing in any of the income earned on account of his representation of Defendant, except to the extent that Mr. Herich reimburses KMW for expenses such as office supplies, postage, copy charges, etc.[1]

## II. ARGUMENT

### A. There Remains No Evidence That KMW Represented NEI In A Matter Substantially Related To This Case

"So let it be written, so let it be so," is the motto and methodology of Plaintiffs' entire response to Defendant Loomis' objections. Plaintiffs start the Response with the bold assertion that "Keats, McFarland & Wilson LLP represented NEI as outside legal counsel in October and November 2007 in conjunction with Intersections' acquisition of NEI (the "Acquisition"), providing legal services to NEI related to its cease and desist letter process which was being reconfigured."[2] Pl. Response, p. 1.

Plaintiffs' employment of misdirection thus starts with their very first sentence where they attempt to blur the cease and desist letter program (which is <u>not</u> the subject of this litigation) into the *entire* acquisition by Intersections of NEI from Defendant Loomis (which is what this case <u>is</u> about). Plaintiffs presented some marginal unauthenticated evidence that KMW provided

---

[1] Mr. Herich has never previously been disqualified in any action. Moreover, it should be noted that Mr. Herich personally never had any dealings with either NEI or Defendant Loomis until well after this case was filed. He currently represents Mr. Loomis through The Law Offices of Emil Herich in the United States Bankruptcy Court for the District of Arizona. Plaintiffs' attempts to terminate the approval of his employment in several matters was denied by Order of the Honorable Randolph J. Haines on September 16, 2010.

[2] In fact, Neil Seidman represented Defendant in the Acquisition. Intersections was represented by Venable, LLP.

3

legal advice to Defendant at the time he was President, CEO and sole shareholder of NEI about the cease and desist letter program.[3] However, Plaintiffs presented <u>no</u> evidence that KMW actually performed any legal work related to the closing of the sale of NEI by Defendant to Intersections.

In this regard, as referenced on page 5 of Plaintiffs' response, on October 12, 2007, at 11:30, Defendant sent KMW's Larry McFarland an e-mail with several points referenced therein, including a question concerning the propriety of NEI employees providing certain types of information to recipients of cease and desist letters. Three minutes later, Mr. McFarland shot back an informal e-mail stating: "I agree with everything you just said." This is the extent of Plaintiffs' evidence that KMW actually provided any legal services to NEI. Plaintiffs never submitted any evidence (because there is no evidence) that KMW represented NEI in the course of Intersections' acquisition of that entity from Defendant. At best, the motion to disqualify should have been denied. At worst, there should have been an evidentiary hearing to determine what these shards of "evidence" really meant.

### 1. <u>KMW Never Represented NEI in the Acquisition of NEI By Intersections</u>

A cursory review of the complaint reveals that this case is about the alleged fraudulent misrepresentations by Defendants that allegedly induced Intersections to purchase NEI from Defendant Loomis. To support their disqualification motion, Plaintiffs assert that KMW

---

[3] In their response, on multiple occasions Plaintiffs state that the documents relied upon to support the disqualification were produced by Defendant in discovery and that Attorney Herich stated on the record that he had no basis for doubting their authenticity. These statements are apparently directed to the fact that Defendant objected to the Court's consideration of these materials. Plaintiffs' apparent contention is that Defendant's production of the documents in discovery and/or the fact that Attorney Herich stated a lack of basis for doubting their authenticity makes them admissible as evidence. The fact that a document is produced in discovery, however, certainly does not make it admissible over a proper hearsay objection. Moreover, it is basic evidence law that it is the burden of the proponent of evidence to establish its admissibility, it is not the burden of opposing counsel to show that the evidence is inadmissible. In this case, it was improper to run roughshod over the hearsay objections by Attorney Herich because the entire point of the hearsay rule is to have live witnesses so that neither the Court nor the parties are required to seek justice through unexplained, isolated secondhand comments that are not subject to cross-examination or redirect examination.

undertook responsibilities related to the acquisition of NEI, specifically the preparation of certain schedules to the Stock Purchase Agreement ("SPA"). *See* Pl. Response, pp. 6, 12, 17.

Defendant, however, submitted declarations from both Mr. McFarland and Mr. Loomis expressly stating that KMW did not represent NEI in its acquisition by Intersections. Mr. McFarland, a twenty-year lawyer with an unimpeached record for honesty, stated under oath without any contradiction by any declaration from Plaintiffs as follows:

> KMW is an intellectual property and litigation law firm. KMW does not represent clients in business sales transactions nor does it do corporate legal work. KMW did not represent NEI in any manner whatsoever in terms of the closing of the transaction whereby Mr. Loomis sold his interest in NEI to INTX.

*See* Declaration of Larry W. McFarland in Support of Motion for Reconsideration, filed with Defendant's Motion for Reconsideration of Order Disqualifying Emil W. Herich and Keats McFarland & Wilson, LLP from Appearing as Counsel of Record, Docket No. 190.[4]

Similarly, Mr. Loomis, then President, CEO and sole shareholder of NEI, stated:

> Exhibit 6 is an e-mail from John Scanlon to various persons and enclosing a draft "closing checklist" prepared by Plaintiff's outside Virginia law firm, Venable, LLP dated October 24, 2007. Once again, this was not a document I prepared nor did it go to the public. This document simply states as part of the closing process, KMW was being asked to provide a form of an engagement letter between KMW and KMW's clients and to prepare or approve a proposed service agreement to be entered into by and between KMW and NEI. KMW provided no legal work to NEI in terms of the closing of the sale of NEI to Intersections, Inc.

---

[4] Plaintiffs refer to the McFarland and Loomis declarations filed with Defendant's Motion for Reconsideration as late-filed and/or new evidence. Because the declarations were filed as part of a motion for reconsideration, they are properly before the Court. Indeed, Judge Buchanan' clerk contacted the undersigned and wanted to know if the motion for reconsideration should be heard or simply consolidated with the matters before Judge Brinkema. Not only was the motion for reconsideration thereby tacitly denied, but Defendant reasonably relied on the fact that the motion for reconsideration would be heard by Judge Brinkema (as directly evidenced by Judge Brinkema's scheduling order dated October 4, 2010 (Docket No. 203) that expressly acknowledges that the motion for reconsideration would be heard on October 29, 2010). Plaintiffs never once objected to this schedule. In any event, Defendant's Declarations certainly trump Plaintiffs' unauthenticated hearsay "evidence" filed the day before the hearing.

5

Declaration of Joseph C. Loomis in Support of Motion for Reconsideration filed with Defendant's Motion for Reconsideration, Docket No. 190.

Against this evidence, what did Plaintiffs present in terms of declarations? Nothing. Even though each and every one of the officers that Plaintiffs contend received representations from Mr. McFarland that KMW was representing NEI remain presently employed by Plaintiffs, including John Scanlon and Neal Dittersdorf, not one of them submitted a declaration stating that they understood that KMW was representing NEI in connection with the closing of its sale to Intersections. This is because each of them well knew that the Loomis/NEI lawyer handling the closing was Neil Seidman, not Larry McFarland. Mr. Seidman is a partner of Seidman, Prewitt, DiBello, P.A., and he is not part of KMW.

Moreover, if KMW did represent NEI in this $14,000,000-plus corporate acquisition, there would certainly be some evidence of that representation yet Plaintiffs have failed to produce any such evidence. Plaintiffs have produced no retainer letters, no cover letters transmitting schedules, no e-mails referencing schedules and no KMW work product whatsoever. Plaintiffs, who as a matter of law have a "high standard of proof to meet in order to prove that counsel should be disqualified"[5] do, however, have an explanation for their utter lack of evidence. They again resort to character vilification and allege that Defendant Loomis is an evidence destroyer and that in November 2007, "he destroyed innumerable NEI files." Pl. Response, p. 15. This is a pale and completely inadequate excuse for the failure to submit evidence from current Intersections employees Mr. Scanlon or Mr. Dittersdorf, among other possibilities. Plaintiffs also fail to mention that they produced an e-mail stating that no electronic documents were lost and that all of Defendant's and/or NEI's files were found to be intact.

---

[5] *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D.Va. 1990)

Moreover, if KMW did in fact represent NEI in the acquisition of that corporation by Intersections, then KMW's communications would have been to Intersections, not NEI. Plaintiffs have never yet had the audacity to claim that Defendant, who never worked for Intersections at all and had no access to its computers or files, somehow destroyed its documents. Plaintiffs' spoliation excuse is thus exposed as nothing but an attempt to disguise a total lack of evidence of a representation.

2. **KMW Did Not Represent NEI In The Letter Writing Service And Even If It Did, It Would Have Been Impossible for KMW To Obtain Any Confidential Information Relating To Billing Disputes Because KMW Did Not Start The Letter Service Until the Day Before the Sale and It Would Have No Knowledge of NEI'S Post-Sale Billing Practices**

In furtherance of their efforts to disqualify Attorney Herich, Plaintiffs allege that KMW "represented" NEI in connection with the cease and desist letter program. Plaintiffs are aware that Defendant presented as evidence a signed agreement[6] expressly describing the cease and desist letter program and also expressly stating that the relationship between KMW and NEI was an independent contractor relationship. Undaunted by this fact which disproves their entire theory that KMW represented NEI in connection with this service, Plaintiffs simply state that the very same service involved a legal representation before closing and a business relationship after closing. Pl. Response p. 3. Plaintiffs hope that by this misdirection, sleight of hand and/or simply strenuously insisting it is so, the Court will believe the illusion of a representation which in truth never actually existed.

Moreover, even if KMW did "represent" NEI in connection with the letter writing service, which is contrary to the sworn declarations of Mr. McFarland and Mr. Loomis, the only sworn declarations before the Court, it would still be impossible for KMW to obtain any confidential information concerning this lawsuit that would support disqualification. According

---

[6] Docket # 185. The Agreement was signed by KMW and NEI on or about November 8, 2007. It was signed on behalf of NEI by Defendant.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy PLLC

7

to the evidence before the Court, the cease and desist letter writing service provided by KMW to its clients commenced on November 8, 2007. Plaintiffs' purchase of NEI took place on November 9, 2007. There is no evidence before the Court that KMW commenced the letter writing service on November 8, 2009, and generated billings the very next day so that there could have been an immediate overbilling that, had it been known to Plaintiffs, would have caused them not to purchase NEI from Defendant.

Plaintiffs' letter writing service agreement for disqualification is flawed for other obvious reasons as well. Plaintiffs' argument is that, after closing, Defendants overbilled and doubled-billed customers for letters that were not sent or were billed by outside law firms. Pl. Response, p. 16. Ignoring the obvious question of how an event that occurred after the closing can have any relevance to Plaintiffs' fraudulent inducement action, there is another obvious problem with Plaintiffs' argument. Even Plaintiffs admit that after the closing of the sale, KMW's relationship with NEI was solely a business relationship - *i.e.*, an independent contractor relationship - not a legal representation. *See* Pl. Response, pp. 1-3 ("Keats McFarland had an attorney-client relationship with NEI prior to Closing related to the Acquisition and the letter process and a business relationship after Closing related to the letter process . . .") Plaintiffs fail to explain how KMW could have obtained any knowledge about Defendants' alleged post-closing overbilling from an attorney-client relationship when, at the time the alleged overbilling occurred, KMW was admittedly not representing NEI.

Moreover, Plaintiffs fail to explain how KMW could obtain any information about Defendants' alleged post-closing overcharging of customers at all since KMW would not be privy to the billing practices of its independent contractors. In this regard, and credibly, Mr. McFarland has stated in the declaration filed with Defendant's opposition to the motion to disqualify: ". . . I have no knowledge of any billing disputes between NEI and its clients." *See*

8

Declaration of Larry W. McFarland filed with Defendant's Memorandum in Opposition to Plaintiffs' Motion to Disqualify Emil W. Herich and Keats, McFarland & Wilson, LLP, Docket No. 178. Because (1) the uncontroverted evidence demonstrates that KMW did not represent NEI concerning the acquisition of that corporation, and (2) the alleged (but denied) billing disputes occurred after closing and at a time that even Plaintiffs concede there was no legal representation by KMW of NEI, KMW did not represent NEI in a substantially related matter, and disqualification is clearly improper.

**B.    KMW Did Not "Change Sides"**

Plaintiffs continue their attempt to magically create a conflict of interest out of whole cloth by asserting that "Keats McFarland . . . now seeks to switch sides and represent Joe Loomis against NEI in this litigation despite the ethical dilemma." Plaintiffs never explain how KMW is switching sides. As noted in the objections, all of the pre-closing communications which form the basis for Plaintiffs' assertion that KMW represented NEI were with or involved Defendant and occurred at a time that Defendant was the President, CEO and sole shareholder of NEI. Thus, even if the Court imputes KMW's prior relationship with NEI to Attorney Herich, it is difficult to see how Attorney Herich (who never represented NEI) or KMW is "switching sides." As noted above, Plaintiffs do not claim that KMW has represented NEI at any time after the closing when Intersections was the owner of that corporation. Because KMW's alleged legal representation of NEI occurred at a time when that corporation was wholly owned and operated by Defendant Loomis, the Court should reject Plaintiffs' "switching sides" argument as a basis for disqualification.

**C.    There Is Nothing In The Confidential Business Relationship Between KMW and NEI That Supports Disqualification**

Plaintiffs assert that the alleged confidential business relationship between KMW and NEI regarding the "new letter process" somehow precludes Attorney Herich's representation of

9

Defendant. Pl. Response, p. 3. Specifically, Plaintiffs contend that NEI's business relationship with KMW "is governed by a written agreement that prohibits the parties from disclosing confidential information obtained during the course of the now three-year agreement to third parties, including Joe Loomis." Pl. Response, p. 7. Plaintiffs contend that Attorney Herich's representation warrants disqualification under Virginia Rule of Professional Conduct, Rule 1.7(a)(2), because that rule precludes a lawyer from representing a client when such representation is limited by the lawyer's responsibilities to . . . a former client or third person . . ." Pl. Response, p. 16.

Plaintiffs' argument that the confidential business relationship between KMW and NEI precludes Mr. Herich's representation of Defendant Loomis is at least doubly flawed. It is flawed in the first place because it is based on the premise that Attorney Herich has a contractual obligation not to reveal confidential information based on the written agreement between NEI and KMW. That is not the case. Mr. Herich is "of counsel" to the firm KMW; he is not an owner, member or employee of that firm. He did not execute the Letter Support System Services Agreement nor is he a third party beneficiary to that contract. As such, he is not bound by the agreement and its restrictions therefore cannot properly form the basis to disqualify Mr. Herich.

Moreover, by its very terms the Letter Support System Services Agreement has no implication on the disqualification issue. Once again, this is a fraudulent inducement case. All of the alleged wrongdoings have to do with representations supposedly made by Defendant or acts supposedly committed by Defendant. While KMW could conceivably have information learned through the business relationship with NEI concerning events occurring after Defendant departed NEI, none of those events could have any relevance to the pending action which in its entirety involves acts allegedly committed by Defendant. Given this truism, the confidentiality provisions of the Letter Support System Services Agreement can have no implication because

10

the agreement specifically states "the foregoing [confidentiality] obligations shall not apply to the extent that any confidential information . . . (iii) was known to the receiving party at the time of disclosure by the disclosing party, (iv) was generated independently by the receiving party before disclosure by the disclosing party." The Letter Support System Services Agreement, thus, stands for an unremarkable provision that a party is not subject to suit for disclosing something learned from the receiving party. Thus, by the very terms of the Letter Support System Services Agreement, there is no restriction on KMW or Attorney Herich disclosing information to Defendant that he already knows and disqualification on the basis of that agreement is, therefore, improper.[7]

D. **Mr. McFarland's Inclusion on the Witness List By Defendant Has No Relevance to the Disqualification Issue**

Plaintiffs acknowledge that Mr. McFarland could testify as a trial witness and Mr. Herich could still properly represent Defendant provided that Mr. McFarland does not violate Rule 1.7 or 1.9. Pl. Response, p. 17. Defendant has demonstrated herein that KMW has no confidential information derived from its representation of NEI that would have any bearing on this case and therefore there is no risk of violation of Rule 1.7 or Rule 1.9.

To demonstrate the contrary, Plaintiffs reach back to the tried and true staple of personal attacks. Plaintiffs respond to Defendant's position that Mr. McFarland was placed on Defendant's witness list for character witness purposes by calling it "Joe Loomis' excuse du jour." Pl. Response, p. 17. Plaintiffs then argue that Keats McFarland was responsible for preparing and reviewing certain closing documents such as schedules to the SPA. Yet, Plaintiffs have not produced one iota of evidence to show that KMW prepared or reviewed any closing

---

[7] Defendant Loomis will ignore this but would love to have the opportunity to rebut Plaintiffs' false claims that he "knows nothing" about Plaintiffs' allegations of double billing or overbillings. In this regard, it is Plaintiffs that are attempting to prevent a trial on their issues by expending hundreds of thousands of dollars to enforce a purported settlement instead of trying these issues to a jury.

11

documents or even that Defendant is disputing the authenticity of the schedules. Certainly, Defendant has provided evidence in the form of the sworn declaration of Mr. McFarland that KMW prepared no closing documents. This Honorable Court should ask, once again, why Plaintiffs did not submit any declarations to the contrary.

Plaintiffs also state that Mr. McFarland has knowledge of NEI's new cease and desist letter process – "the very process by which Defendants defrauded Plaintiffs after closing" and Plaintiffs further state that KMW was the outside law firm that billed certain of NEI's top customers for letter services for which Defendants then double-billed the customers. Pl. Response, pp. 17-18. Plaintiffs never deposed Mr. McFarland nor was he included on their witness list. Obviously, if McFarland truly has knowledge of the letter process by which Defendants allegedly defrauded Plaintiffs and by which Defendants allegedly double-billed customers, it is extremely unlikely that he would be called as a witness to testify by Defendant. This very obvious point negates Plaintiffs' arguments that Mr. McFarland's inclusion on the witness list is a proper basis for disqualification. If more proof as to this issue were necessary, as noted above, Mr. McFarland himself has stated that he has no knowledge relevant to any issues in dispute in this case in general and as to billing disputes in particular. *See* Declaration of Larry W. McFarland, ¶ 4 attached to the Memorandum in Opposition to Plaintiffs' Motion to Disqualify Emil W. Herich and Keats McFarland & Wilson, LLP, Docket No. 178.

E. **The Magistrate's Order Was Beyond the Scope of Relief from Stay Sought By Plaintiffs and Granted By the Bankruptcy Court**

Plaintiffs assert that Defendant suggests in his objections that this Court "lacks jurisdiction to decide the Disqualification Motion." Pl. Response, p. 10. This is a straw man argument because Defendant never said any such thing. What Defendant stated (at pp. 10-11 of the Objections) was that there was an automatic stay of any litigation against the Debtor. Defendant further stated that Plaintiffs went to the bankruptcy court and sought a very specific

12

and limited relief – "a relief for the limited purpose of seeking a declaration as to the issue of whether there was a settlement that is enforceable against the Debtor." *Id.* at 8. Plaintiffs violated the stay (and the Magistrate erroneously ignored the violation) by seeking to disqualify Attorney Herich *for any and all purposes*. The only issue before the Court was whether there was an enforceable settlement reached in chambers on January 14, 2010, a matter that could have no "substantial relationship" to anything discussed in Plaintiffs' memorandum in support of disqualification.

Plaintiffs recognize this gigantic flaw and attempt to argue that *prospective* disqualification was necessary to adjudicate because "the case could be returned to the trial docket at some point such that Emil Herich and Keats McFarland would be counsel for Joe Loomis against the former client, NEI, regarding the very Acquisition and letter process upon which they advised NEI as counsel . . . ." Pl. Response, pp. 14-15. Disqualification on the basis of unripe hypotheticals is improper.

Plaintiffs' other asserted basis for avoiding the stay is even more transparently wrong. Plaintiffs contend that if Defendant were correct concerning the stay's preclusive effect on Plaintiffs' motion, "Joe Loomis would have had to seek approval of the Bankruptcy Court to file the motion to recuse Magistrate Judge Buchanan," which he did not. Pl. Response, p. 11. Because Plaintiffs have competent bankruptcy counsel, Defendant could accuse Plaintiffs of deliberately trying to mislead the Court were Plaintiffs' argument not so obviously wrong. It is well known that Section 362 places a stay on the actions **against** a debtor and **against** a debtor's bankruptcy estate. Nothing in the express language of Section 362 or any of the multitudes of cases interpreting it suggest that the Debtor is precluded from pursuing litigation or that the Debtor must seek relief from stay to pursue litigation. Plaintiffs' obvious misconstruction of the

13

law further demonstrates the clear error in their argument and in the Magistrate's adoption of their position.

F. **The Applicable Authorities Demonstrate That Disqualification Is Improper**

As discussed in Defendants' objections, although not addressed by the Fourth Circuit, the two Circuits considering the matter have each concluded that disqualification of counsel is improper where the prior relationship involved an entity of which the present client was involved as a management or control person. *Allegaert v. Perot,* 565 F.2d 246 (2d Cir. 1977); *Christensen v. United States District Court for the Central District of California,* 844 F.2d 694 (9th Cir. 1988).

Plaintiffs argue to the contrary, citing two unpublished decisions, *Sharp v. Sharp,* 2006 W.L. 3088067 (Va Cir. Ct. Oct. 26, 2006) and *Touchcom, Inc. v. Bereskin & Parr,* 299 Fed. Appx. 953 (Fed. Cir. 2008). Plaintiffs also argue that the failure to follow the *Allegaert* line of cases is correct because "Virginia Rule of Professional Conduct 1.9 was much broader than the rule applied in Allegaert." Pl. Response, p. 19.

Defendant submits that this Court should follow the decisions (including Circuit Court of Appeals decisions) over the unpublished cases cited by Plaintiffs. In this regard, subsequent district court decisions have noted that courts have followed the *Allegaert* rule of refusing to disqualify counsel based on confidential information already known by the present client notwithstanding the breadth of the ethical cannon under consideration. *See, e.g., Pacheco Ross Architects, P.C. v. Mitchell Assoc.,* 2009 Lexis 45924 at *10 ("However, many other courts have applied the *Allegaert* rule notwithstanding its Canon 4 foundation").

In this regard, this Court should also follow the judicial weight of the authorities which have declined to find disqualification appropriate under these facts. *See Andrion v. Pryor,* 537 F.Supp 890, 895 (W.D. Mo. 1982); *Neiman v. Local 144, Hotel Hosp., Nursing Home & Allied*

14

*Health Servs Union*, 512 F.Supp. 187, 190 (E.D.N.Y. 1981); *Williamsburg Wax Museum v. Historic Figures, Inc.*, 501 F.Supp. 326, 330 (D.D.C. 1980), *aff'd sub. nom. National Souvenir Center, Inc. v. Historic Figures, Inc.*, 728 F.2d 503 (D.C. Cir. 1984), *cert. denied sub. nom. C.M. Uberman Enters., Inc. v. Historic Figures, Inc.*, 469 U.S. 825 (1984); *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 479 F. Supp. 465, 468-69 (E.D. La. 1979); *Moritz v. Medical Protective Co.*, 428 F.Supp. 865, 874-875 (W.D. Wis. 1977).

### III. CONCLUSION

Disqualification of counsel is a very serious matter. The representation of a client by counsel of his choice is fundamental to our established system of justice. Disqualification of counsel, therefore, must be based on more than argumentative personal attacks, hearsay and heavily-shaded shaded "facts." Despite the accusations against Defendant, it is ironic that it is he who is pushing to have his case tried on the merits. There was simply no competent evidence presented to the Magistrate Judge that would warrant attorney disqualification under the law and the facts as fairly construed. In sum, the Magistrate Judge's ruling was clearly erroneous and it should be set aside.

Dated: October 27, 2010.

Respectfully submitted,

/s/
Timothy J. McEvoy, VSB No. 33277
CAMERON MCEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 460-9341
(703) 273-8898
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
*Counsel for Defendant, Joseph C. Loomis*

15

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 27th day of October, 2010, I have filed a true and correct copy of the foregoing with the Clerk of Court via the CM/ECF efiling system which will send notification of this filing to the following counsel of record:

Tara Lee, Esquire
Ryan C. Berry, Esquire
DLA Piper LLP
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Counsel for Plaintiffs

David Clarke, Esquire
Michelle J. Dickinson, Esquire
Melissa R. Roth, Esquire
DLA Piper LLP
6225 Smith Avenue
Baltimore, Maryland 21209
Counsel for Plaintiffs

Eugene Walter Policastri, Esquire
Bromberg Rosenthal LLP
401 North Washington Street, Suite 500
Rockville, Maryland 20850
Counsel for Defendant Jenni Loomis

    /s/_____
Timothy J. McEvoy, VSB No. 33277
CAMERON MCEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 460-9341
(703) 273-8898
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
*Counsel for Defendant, Joseph C. Loomis*

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron McEvoy PLLC