NOV - 3 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

INTERSECTIONS, INC. et al.        )
                                  )
        Plaintiffs,               )
                                  )
v.                                )    1:09cv597(LMB/TCB)
                                  )
JOSEPH C. LOOMIS, JENNI M. LOOMIS,)
                                  )
        Defendants.               )

## MEMORANDUM OPINION

Before the Court are plaintiffs' Motion to Enforce Settlement Agreement [Dkt. No. 131], defendant Joseph C. Loomis's Motion for Reconsideration re: Magistrate Judge Buchanan's Report and Recommendation recommending enforcement of the settlement agreement [Dkt. No. 201], and defendant Jenni M. Loomis's Objection to Magistrate Judge's Report and Recommendation [Dkt. No. 202]. For the reasons stated in this Memorandum Opinion, the Court finds that no enforceable settlement agreement was reached by the parties, and therefore plaintiffs' Motion to Enforce the Settlement Agreement will be denied.[1]

---

[1] Defendant Joseph C. Loomis ("Loomis") has also filed motions and objections relating to various tangential matters, including Objections to Magistrate Judge's Order on Motion for Recusal [Dkt. No. 206] and a Motion for Reconsideration of Magistrate Judge's Decision on Disqualification of Counsel Emil W. Herich and Keats McFarland & Wilson LLP [Dkt. No. 195]. All of these motions are rendered moot by the decision concerning the settlement agreement. Moreover, Loomis's Objection to Magistrate Judge's Order on Motion for Recusal was not timely filed. Accordingly, those motions and objections will be denied.

## I. Background

This case arises out of a variety of fraud and conspiracy allegations made by Intersections, Inc. ("Intersections") and Net Enforcers, Inc. ("NEI") against both Joseph C. Loomis ("Loomis") and his sister, Jenni M. Loomis. The allegations center on the November 2007 sale by Loomis of all of the stock in NEI, a company he had created, to plaintiff Intersections. Intersections paid a purchase price for the NEI stock of $14,000,000.00, memorialized in a Stock Purchase Agreement. As part of the purchase, the parties also entered into an Employment Agreement, dated November 19, 2007, in which Loomis remained the CEO of NEI, which agreed to pay him an annual salary of $250,000.00 and also granted him certain stock options. In the Employment Agreement, Loomis also agreed to various non-compete and other restrictive provisions, including an agreement not to use or share certain intellectual property belonging to NEI.

On or about October 20, 2008, plaintiffs suspended Loomis from his position as CEO of NEI, and subsequently terminated his employment. Plaintiffs then filed their Complaint on May 27, 2009, alleging that Loomis and his sister, co-defendant Jenni Loomis, conspired to provide Intersections with inaccurate and fraudulent information regarding NEI's business and financial condition before Intersections acquired NEI, in an effort to induce Intersections to pay more for NEI's stock than it was worth. Plaintiffs also allege that Loomis diverted assets and

resources that properly belonged to NEI to his own personal gain and to his company, Loomis Enterprises, thereby committing the tort of conversion and breaching his fiduciary duties to NEI.

On January 14, 2010, the parties met with Magistrate Judge Buchanan in a lengthy settlement conference. The parties agree that by the conclusion of the settlement conference, they had reached a tentative agreement, at least in principle, as to how the case would be resolved. In particular, the parties had agreed that defendants would pay $7,000,000.00 to settle the case, and that the settlement amount was to be partially funded with a $2,000,000.00 wire transaction the following week from an account owned or controlled by Loomis. Those funds were to be held in escrow pending execution of the written agreement. Furthermore, real estate owned or controlled by Loomis was identified as potential collateral for the remaining portion of the payment, and both defendants were to sign a confessed judgment or promissory note as part of the agreement. Finally, the parties agreed that the Employment Agreement containing the non-compete restrictions would be void. All of the agreed-upon terms were reflected in an unsigned, handwritten "Term Sheet" prepared by the magistrate judge during the settlement conference.

However, no written settlement agreement was ever signed at the January 14, 2010 mediation. Rather, the parties contemplated that a final written settlement agreement would be prepared and signed by January 22, 2010. In the week following the conference,

plaintiffs prepared several draft settlement agreements, which reflected the primary terms agreed to at the mediation but also added several new and different terms. Loomis refused to agree to those terms, and plaintiffs refused to withdraw them. Additionally, on or about January 19, 2010, defendant Jenni Loomis indicated her refusal to sign a promissory note, as was required by the settlement. Accordingly, no final written agreement was ever reached or signed between the parties. Loomis then filed for Chapter 11 bankruptcy protection on January 26, 2010.[2]

On June 30, 2010, plaintiffs filed a Motion to Enforce the Settlement Agreement. On August 6, 2010, a hearing was held on that motion before Magistrate Judge Buchanan, who, on September 17, 2010, issued a Report and Recommendation recommending enforcement of the settlement agreement. On October 1, 2010, defendants timely filed their substantive objections to the Report and Recommendation and requested reconsideration of the matter by the Court. Defendants argue that there was no meeting of the minds on all material terms of the settlement, and that the tentative agreement reached on January 14, 2010 is therefore not legally enforceable.

## II. Standard of Review

---

[2] An automatic Order of Stay was entered on January 26, 2010. However, on May 5, 2010, the bankruptcy court issued an order granting limited relief from that stay to allow plaintiffs to proceed on their Motion to Enforce Settlement Agreement.

Fed. R. Civ. P. 72(b)(3) provides for <u>de novo</u> review by a district court of a magistrate judge's report and recommendation on a dispositive motion:

> The district judge must determine <u>de novo</u> any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

A motion to enforce a settlement agreement is a motion that would, if granted, fully resolve the action, and it is thus considered a dispositive motion. Accordingly, the Court will review the enforceability of the settlement agreement <u>de novo</u>.

### III. Discussion

A valid settlement must be the product of a mutual agreement between the parties. To find a settlement agreement enforceable, a court must determine that there are sufficient facts to resolve any disputes over material terms, and must find that all material agreed-upon terms are sufficiently definite to enable the court to give them an exact meaning. <u>Hensley v. Alcon Labs., Inc.</u>, 277 F.3d 535 (4th Cir. 2002); <u>Silicon Image Inc. v. Genesis Microchip, Inc.</u>, 271 F. Supp. 2d 840 (E.D. Va. 2003); <u>Mayer Smith v. Farrell</u>, 199 Va. 121 (1957). A settlement agreement is a matter of contract, and without a meeting of the minds as to all material terms, there can be no enforceable settlement agreement as a matter of contract law. See <u>Grubb & Ellis Co. v. Potomac Medical Building LLC</u>, 2009 U.S. Dist. LEXIS 93471 (E.D. Va. 2009).

Accordingly, if any material portions of the proposed settlement terms were not resolved by the parties, there is no enforceable agreement. Id. Moreover, under Virginia law, a settlement that includes a term requiring that it be reduced to a signed writing is not enforceable unless and until that contingency is fulfilled. See Golding v. Floyd, 261 Va. 190 (2001) (holding that a handwritten "Settlement Agreement Memorandum" agreed to at a mediation was not a binding settlement agreement where all parties understood that a formal settlement agreement had to be drafted and signed); see also Atl. Realty Co. V. Robertson's Ex'r, 135 Va. 247, 253-54 (1923) (finding that where the parties contemplate signing a written agreement later, there is a presumption that "no contract has been entered into, which requires strong evidence to overcome.").

In this case, the evidence demonstrates that there is no binding, legally enforceable settlement agreement between the parties. Although the parties reached a tentative agreement during the settlement conference on January 14, 2010, they explicitly contemplated that they would ultimately be bound only by a written, signed, fully integrated settlement agreement. That is why the Term Sheet states that a written settlement agreement was to be signed on or before January 22, 2010, and that all of the material events related to the settlement (such as the release of the monetary deposit and the signed confessed judgment note, the time in which plaintiffs could accept the designated real

6

properties listed on the Term Sheet, and the dismissal of the instant litigation as settled) were expressly tied to the execution of a written agreement. See Def. Joseph Loomis's Objections to Report and Recommendation at Ex. C (containing the Term Sheet); see also Report and Recommendation re: Mot. to Enforce Settlement Agreement at 4 (finding that the execution of a signed, written settlement agreement by January 22, 2010 was a requirement of the proposed deal and was to be a "trigger" for many important events).

The complexity of the issues involved and the amount of money at stake in this case only buttress the conclusion that the parties anticipated resolving the matter by means of a signed agreement setting forth all relevant details. Additionally, at the evidentiary hearing, Loomis testified that while he agreed to certain terms during the mediation, he did not understand the handwritten Term Sheet to be a final, binding settlement. Rather, he only intended to be bound by a formal, signed agreement:

> As a businessman, I have done multimillion dollar deals in the past, I would always sign - I would never consider an agreement or any kind of settlement, promissory note, et cetera, nothing until I actually had the opportunity to see it in a written form with all four corners, et cetera.

Tr. of Hr'g on Motions (Aug. 6, 2010) at 161:3-10; see also id. at 103:19-25 (testimony of defendant's former counsel, Ellis Bennett, agreeing that "everyone understood that . . . the final settlement would be in writing.").

However, no such integrated agreement was ever signed. Moreover, the required condition that the defendants sign a confessed judgment note was likewise never fulfilled. Rather, the parties reached an impasse, and the settlement "blew up" before the parties could ever arrive at a final, signed agreement. Tr. of Hr'g on Motions (Aug. 6, 2010) at 212:10-18 (statement by Magistrate Judge Buchanan). The failure of those contingencies means that the settlement agreement itself failed as a matter of contract law. See Golding, 261 Va. at 194 ("The execution of a formal agreement, therefore, was a condition precedent to the existence of a binding contract. A formal contract was never executed; as a result, no contract exists.").

Additionally, the plaintiffs' inclusion in their proposed written settlement agreements of terms not found in the two-page handwritten Term Sheet further demonstrates that the tentative settlement reached at the January 14, 2010 mediation was incomplete and that there was no legally enforceable "meeting of the minds" between the parties. Under Virginia law, where there is no meeting of the minds, there can be no enforceable contract. For example, in Montagna v. Holiday Inns, Inc., 221 Va. 336 (1980), the Virginia Supreme Court held that there was no enforceable settlement where, after a tentative agreement had been reached, one of the parties attempted to insert additional terms, thereby prompting the other party to renounce the settlement.

In this case, as in Montagna, plaintiffs attempted to include

additional terms in their draft settlements agreements, which they deemed "necessary" to the final agreement, but which were not actually included in the original Term Sheet. See Tr. of Hr'g on Motions (Aug. 6, 2010) at 84-85:23-8; see also id. at 125-127:15-12. The new terms included provisions concerning continuation of certain aspects of the non-compete restrictions in the Employment Agreement (which the Term Sheet described as void),[3] a property certification document demanded by plaintiffs as part of the settlement, the applicable interest rate, the scope of the "mutual release," and other relevant provisions in the promissory note. Id.

Those terms were significant and material to the deal, and as the magistrate judge properly found, "[i]t is undisputed that the proposed documents contained additional terms that were not agreed to by the parties at the settlement conference, as well as some errors." Report and Recommendation re: Mot. to Enforce Settlement Agreement at 20; see also Tr. of Hr'g on Motions at 182:10-13 ("I think we can suffice it to say that there were provisions in both drafts [of plaintiffs' proposed settlement agreements] that the

---

[3] The Term Sheet merely states "empl. K void," and the parties have not been able to agree as to what that term meant. Loomis asserts that his understanding was that *all* restrictive covenants in his Employment Agreement with NEI would be terminated. See Tr. of Hr'g on Motions (Aug. 6, 2010) at 114. However, in their draft settlement agreements, plaintiffs proposed additional terms relating to an intellectual property restrictive covenant in the Employment Agreement, which plaintiffs wished to keep in effect. Defendants never agreed to that additional proposed term.

defendant didn't agree to [and] that were not in the settlement terms."). Moreover, in a contemporaneous e-mail, plaintiffs' counsel stated that the additional terms were "necessary" to effectuate the agreement between the parties. See Def. Joseph Loomis's Objections to Report and Recommendation at Ex. H (containing the string of e-mails admitted as Exhibit 9 at the hearing before Magistrate Judge Buchanan).

As the Virginia Supreme Court has held in Valjar, Inc. v. Maritime Terminals, Inc., 220 Va. 1015, 1018-19 (1980), a "contract cannot exist if the parties never mutually assented to terms proposed by either as essential to an accord." For that reason, one party's proposal of additional terms to a written agreement precludes a finding of a valid contract where the other party never agreed to those terms and where "[t]he differences were never resolved to the mutual satisfaction of the parties." Id. Applying those well-established legal principles to the facts of this case reveals that the additional terms proposed by plaintiffs, which plaintiffs deemed essential to the deal but which defendants flatly rejected, rendered any previous inchoate agreement unenforceable as a matter of law.

Under the circumstances, therefore, there was no valid settlement agreement between the parties which this Court is legally empowered to enforce. A trial court has no authority to make or salvage a deal that the parties themselves did not reach. As the Fourth Circuit has conclusively held:

> [I]t is clear that the district court only retains the power to enforce *complete* settlement agreements; it does not have the power to impose, in the role of a final arbiter, a settlement agreement where there was never a meeting of the parties' minds. . . . Where there has been no meeting of the minds sufficient to form a complete settlement agreement, any partial performance of the settlement agreement must be rescinded and the case restored to the docket for trial.

Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983); see also Wood v. Va. Hauling Co., 528 F.2d 423, 426 (4th Cir. 1975) (holding that "blue penciling" of contracts is not permitted under Virginia law, that "there is no such thing as [a] 95 percent settlement," and that a trial court's task is therefore simply to discern whether there was a complete deal that it may enforce).

Because the parties in this case did not reach a complete and enforceable settlement agreement, plaintiffs' Motion to Enforce Settlement Agreement [Dkt. No. 131] will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 3rd day of November, 2010.

Alexandria, VA

/s/ _____
Leonie M. Brinkema
United States District Judge