UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Intersections, Inc., et al. | |
| Plaintiff, | |
| v. | Case No. 1:09cv597 (LMB/TCB) |
| Joseph C. Loomis, et al., | |
| Defendant. | |

**DEFENDANT JOSEPH C. LOOMIS'
MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS (DE 233)**

Timothy J. McEvoy, VSB No. 33277
CAMERON MCEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 460-9341 (Direct)
(703) 273-8898 (Main)
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com

Counsel for Defendant
Joseph C. Loomis

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

CAMERON / McEVOY
PLLC

Plaintiffs once again seek to short-circuit the trial process by alleging that Mr. Loomis has forfeited his right to his day in court. They ask the Court to relieve them of their burden of proof and to simply enter a $14,000,000 default judgment against Mr. Loomis that would violate basic rules of due process. They also seek the dismissal of Mr. Loomis' counterclaims. The Fourth Circuit and the United States Supreme Court have cautioned against the use of the Court's inherent powers to terminate claims or litigation and, for the reasons set forth herein, this is not a case where the harsh sanctions sought by Plaintiffs are warranted. Indeed, once the Court examines the facts, it will be clear that Plaintiffs are not entitled to a directed verdict or any other sanctions.

The Plaintiffs have also unfairly maligned Mr. Herich and Mr. LaVelle, two attorneys with unblemished records of professional responsibility in their home states who were merely attempting to do their jobs within the bounds of the law and the orders of this Court and (in the case of Mr. Herich) the United States Bankruptcy Court for the District of Arizona. These attempts should be looked at not as legitimate claims of wrongdoing, but merely of Plaintiffs' continual attempt to impugn Mr. Loomis and his counsel and to draw the focus away from the merits of this case. At the end of the day, there can be no question that the law favors a trial on the merits, and that should be allowed to occur here. The Court's attention is, therefore, very respectfully drawn to the matters that follow.

## A. PRELIMINARY STATEMENT

The present motion for sanctions seeks a default judgment on the grounds that (a) Mr. Loomis violated a no contact order dated October 30, 2009 (the "No Contact Order") by having contact with Sheilah Snyder and Matthew Leberer; (b) that Matthew LaVelle, Esq. drafted an indemnification agreement which Plaintiffs falsely allege "provides that Loomis will indemnify

1

Mr. Leberer if Plaintiffs sue him for breaching the Termination Agreement by not testifying for NEI at trial"; (c) that Mr. Herich used the Indemnification Agreement and the subpoena process to coerce Mr. Leberer to provide a declaration and/or try to get Mr. Leberer to "disappear" as a witness in this case; and (d) that Mr. Herich has been representing Loomis in violation of this Court's Order of September 3, 2010 striking his appearance in this case (the "Appearance Order").

Before getting into the critical, actual details, it bears pointing out that Plaintiffs do not contend that either Ms. Snyder or Mr. Leberer (the two "witnesses" in question) have actually refused to come to trial. Indeed, in Plaintiffs' counsel's declaration filed with Plaintiffs' Motion for Sanctions, Ms. Roth states that she is advised that Ms. Snyder is "planning on testifying on behalf of Joe Loomis at trial in this case." *See* Exh. A, Declaration of Melissa R. Roth, ¶2 (also attached to Plaintiffs' brief). Plaintiffs do not have a right to any particular version of testimony, only the truth. Similarly, the assertion that Mr. Leberer will not testify is rebutted by the fact that Mr. Leberer has provided multiple declaration for Plaintiffs, the most recent one having been obtained on February 16, 2011, months after the alleged wrongdoing that forms the basis for Plaintiffs' motion. *See* Exh. B, Declaration of Matthew Leberer dated February 16, 2011 ("3d Leberer Dec.") (also attached to Plaintiffs' brief).

The Court also needs to understand that Mr. Loomis has listed both Mr. Leberer and Ms. Snyder on his witness list; that he wishes to have both of these witnesses at trial; and that he will stipulate to entry of an order permitting either or both of them to be deposed and for such depositions to be used at trial if they indicate that they will not appear. Accordingly, the claim that Mr. Loomis has been involved in a plan to suppress testimony is a completely meritless allegation that is exposed as such by the affirmative commitment to assist in any way possible to

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898    FAX 703.273.8897

Cameron / McEvoy PLLC

preserve and present their testimony. Plaintiffs also imply that somehow Ms. Snyder and Mr. Leberer have lost their independence. There is utterly no support for that claim. Certainly, this is apparent in terms of Mr. Leberer as he continues to cooperate with Plaintiffs as demonstrated by his most recent declaration. In short, there is absolutely no prejudice that has been demonstrated.

As for Mr. LaVelle, the Court will learn that he is one of two partners in an AV-rated law firm in Phoenix, Arizona, that his involvement in this matter is very limited and that he operated in good faith at all times. Indeed, the only reason he had any contact with Ms. Snyder and Mr. Leberer *was precisely because Mr. Loomis was trying to stay out of harm's way with respect to any claim that he was in violation of any orders.*

As for Mr. Herich, the Court will learn (if it does not already know) that Plaintiffs attempted to disqualify him from the substantially related federal bankruptcy case in Arizona. That effort was ***denied***, and thus Mr. Herich has every right to do work for Mr. Loomis in those related matters. Indeed, this has been confirmed by none other than Geoffrey Hazard, one of the leading experts on legal ethics in the United States and the author of one of the leading ethics textbooks used in American law schools over the past several decades. Exh. H, three letter opinions and CV from Geoffrey Hazard. Plaintiffs cited Professor Hazard in their brief to disqualify Mr. Herich, a ruling with which Professor Hazard (and the bankruptcy court) disagreed. *Id.*

In short, there are two contrary rulings on Mr. Herich's ability to practice with respect to Mr. Loomis. Yet, out of an abundance of caution and because the undersigned has no desire to test the limits of what is permissible in this relatively novel situation, the undersigned insisted, following the order striking Mr. Herich's appearance, that he would not allow himself to be a

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
PLLC

conduit or virtual representative for Mr. Herich.  Mr. Herich readily agreed to this arrangement. The undersigned is very comfortable that Mr. Herich has not been allowed to "practice through" Virginia counsel.

In short, the present motion considerably overreaches both in terms of its allegations and in terms of its proposed remedy.  The motion should be denied.

## B. FACTS

On October 23, 2009, Plaintiffs filed a motion for sanctions that alleged, through proffers by counsel, that Mr. Loomis had harassed Plaintiffs' counsel Ms. Dickinson (who was threatened with arrest by Mr. Loomis' then-counsel, Hunter, Humphries & Yavitz, PLC ("HH&Y")) and Intersections' CEO Michael Stanfield.  The proffer alleged that several of Plaintiffs' employees were afraid of Mr. Loomis and that a security company had been hired to provide protection at depositions and otherwise.  No evidence other than the uncorroborated assertions of Plaintiffs' counsel was provided in support of Plaintiffs' motion.

On October 30, 2009, this Court heard oral argument on the motion, and the argument focused relatively exclusively on the threat to have Ms. Dickinson arrested by HH&Y.  *See* Exh. C, Transcript of October 30, 2009 Hearing (also attached to Plaintiffs' brief).  There was no evidence taken at the hearing other than to the extent Ms. Dickinson's proffer related to herself. Defendant Loomis was not provided with the opportunity to confront any of the alleged individuals that he had allegedly intimidated.  At the conclusion of the hearing the Court granted the motion for protective order, entering what was undeniably a restraining order that is governed by Fed. R. Civ. Pr. 65 and Fourth Circuit authorities interpreting these provisions.

As is relevant here, part of the October 30, 2009 Order restrained Mr. Loomis and his then-current out-of-town counsel, HH&Y, from contacting "Plaintiffs, Plaintiffs' employees and

Cameron/McEvoy PLLC

4

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898    FAX 703.273.8897

Cameron / McEvoy
ᴘʟʟᴄ

Plaintiffs' witnesses." Exh. D, October 30, 2009 Order (also attached to Plaintiffs' brief).

Although neither side had submitted a witness list at the time the order was entered, Plaintiffs

subsequently filed a list that included members of the immediate family of Mr. Loomis as well as

his broker and close personal friends. As to this part of the order (the "No Contact Order"), the

Court made no findings of fact, made no conclusions of law and did not address how it might

"narrowly tailor" relief to balance Mr. Loomis' First Amendment right to associate with his

family, friends and others with the need to ensure that the judicial process could proceed free of

undue influences. As for the potentially dozens of unnamed persons who could have been

encompassed by the No Contact Order, including Ms. Snyder and Mr. Leberer, there was

*absolutely no showing, ever, made that they desired or needed a "no contact" order.* There was

not a single individualized submission, and such tailoring was a critical prerequisite to any relief.

Indeed, a no contact order that does not consider individual-specific evidence not only infringes

on Mr. Loomis' rights, but it also infringes on the First Amendment rights of association of the

persons who are "protected." Here, in particular, both Ms. Snyder and Mr. Leberer have

indicated in sworn declarations filed herewith that they are not now, and never were, afraid of

Mr. Loomis or in need of a protective order as of October 30, 2009. *See* Exh. E, Declaration of

Sheilah Snyder ("Snyder Dec."), ¶5; Exh. F., Declaration of Matthew Leberer dated November

12, 2010 ("2d Leberer Dec."). Indeed, the three of them had known one another for years and

had enjoyed warm relationships throughout that time.[1]

     As noted, the No Contact Order was very broadly worded. It was to apply to "Plaintiffs,

Plaintiffs' employees and Plaintiffs' witnesses." It also failed to differentiate between: (a)

---

[1] It is true that on account of pressures placed on their relationship by the termination of their mutual
employments at Net Enforcers, Inc., Mr. Loomis and Ms. Snyder had a fight and they sought and
obtained mutual restraining orders against each other. With time, the rift healed and after Ms. Snyder
reached out to Mr. Loomis, the two have reestablished their prior existing close personal friendship.

contact concerning, for example, the return of personal property or contact occurring at family gatherings (Plaintiffs' argument necessarily implies that Mr. Loomis could not contact his own brother or sister, both of whom appear on Plaintiffs' witness list, in any way even at Christmas) versus (b) "no contact" meaning only no discussions about this case.  Even if there were persons for whom a blanket "no contact" order had been appropriate, there was no such showing and no specific findings.  Ms. Snyder and Mr. Leberer were simply swept up in the No Contact Order without their consent, or even knowledge, of such order.

Furthermore, at the time the Court issued the No Contact Order on October 30, 2009, neither Ms. Snyder nor Mr. Leberer was Plaintiffs or Plaintiffs' "employees."  Thus, even assuming specific findings, they could only be potentially covered by the No Contact Order as "Plaintiffs' witnesses."  However, as of October 30, 2009 there was no Plaintiffs' "witness list" or other document in existence naming specific individuals who should not be contacted.  The No Contact Order, therefore, referred to an empty set when it referred to "Plaintiff's witnesses."

Making matters even more confusing, when witness lists were ultimately filed by the Parties in December 2009, Ms. Snyder and Mr. Leberer were identified as witnesses for *both* sides; thus begging the question of whether Mr. Loomis was barred from talking to his own witnesses or just from persons who were listed exclusively by Plaintiffs.

Before proceeding further with the discussion that has led to this brief, the Court should be made aware of the identities of the persons who are involved other than Mr. Loomis.

1. *Sheilah Snyder*

Ms. Snyder is approximately 23 years old and has known Mr. Loomis for 7 years.  Upon information and belief, she formerly dated Mr. Leberer, who is roughly her contemporary in terms of age.  Notwithstanding a major argument that occurred between Ms. Snyder and Mr.

Loomis in or about January 2009, and which led to mutual protective orders being granted in a matter that is totally unrelated to this case, the two of them were previously and are now close friends. Snyder Dec., ¶3; Exh. G, Declaration of Joseph Loomis, ¶3 ("Loomis Dec."). At some point in January 2010, Ms. Snyder reached out to Mr. Loomis about personal matters having nothing whatsoever to do with the case. Snyder Dec., ¶5; Loomis Dec., ¶4. As a consequence of his continued loyal and long-term friendship, Mr. Loomis entertained the contact and continued it. *See* Loomis Dec., ¶4 & 8. At some point, Ms. Snyder asked Mr. Loomis how the case was going. Mr. Loomis stated that the Plaintiffs had filed a spoliation motion that falsely accused him of destroying evidence. Mr. Loomis told her that the Spoliation Motion was premised upon a misleading declaration that had been provided to Plaintiffs by Mr. Leberer. Snyder Dec., ¶5; Loomis Dec., ¶5. Ms. Snyder, who was close to both Mr. Loomis and Mr. Leberer, essentially offered to see if she could get Mr. Leberer to meet with counsel for Mr. Loomis. *See* Snyder Dec., ¶5-6; Loomis Dec., ¶6-7. Ms. Snyder subsequently reported that Mr. Leberer would be willing to do so and Matthew Lavelle, a lawyer residing in Phoenix, Arizona, got in touch with Mr. Matthew Leberer. *See* Snyder Dec., ¶5-6; Loomis Dec., ¶7.

Ms. Snyder signed a severance agreement with Plaintiffs that paid her approximately $6,735.20. However, a *quid quo pro* was that she had to agree to "cooperate fully and reasonably with the Company in connection with any future or current pending matter, proceeding, litigation or threatened litigation with respect to which the Employee was involved or has personal knowledge." If she did not "cooperate," she agreed that she could be sued for damages. Snyder Dec., ¶4 & attached agreement.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

CAMERON / McEVOY
PLLC

2. *Mr. Leberer*

Mr. Leberer is approximately 24 years old and is currently applying to medical school. He worked for NEI under Mr. Loomis as an Information Technology specialist. *See generally,* Mr. Loomis' Opposition to Motion for Sanctions filed February 25, 2011 (Docket No. 248). Mr. Leberer's original declaration in this case provided most of the basis for Plaintiffs' claim that Mr. Loomis had spoliated all of the information on certain computers and hard drives within his custody or control at the time he was suspended from NEI. *Id.* More specifically, Mr. Leberer submitted a Declaration, drafted by Plaintiffs or their counsel, which made a number of misleading allegations. *Id.*

Mr. Leberer has stated in a sworn declaration that, contrary to his original Declaration provided to the Court by Plaintiffs, he has no concern about Mr. Loomis contacting him, and there is no reason whatsoever to believe that he is willing to jeopardize his future medical career by lying for him. *See* 2d Leberer Dec., ¶4. Mr. Leberer should have never been part of the No Contact Order, and the fact that he received a text message and a voicemail from Mr. Loomis related solely to the return of a ski helmet and some goggles after he had made inquiry about them is no ground for sanctions.

3. *Matthew K. LaVelle, Esq.*

Mr. Matthew K. LaVelle is one of two partners (along with his father) in a Martindale-Hubbell AV-rated law firm in the Phoenix, Arizona vicinity. Exh. I, Declaration of Matthew K. LaVelle, ¶1 ("LaVelle Dec."). He has nothing to do with HH&Y. LaVelle Dec., ¶1.

Mr. LaVelle's involvement in this case arose from the prospect that it was going to be tried in bankruptcy court in Arizona. LaVelle Dec., ¶2. Mr. LaVelle also currently represents Loomis Enterprises in a matter pending against a former NEI employee in the Arizona Superior

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
PLLC

Court. Mr. Leberer and Ms. Snyder are potential witnesses in that case. LaVelle Dec., ¶3.

Indeed, the undersigned had reason to believe that Mr. Loomis also wanted Mr. LaVelle to enter

an appearance in the bankruptcy court with or without the undersigned if the bankruptcy court

did not lift the stay to return this case back to Virginia. *See* LaVelle Dec., ¶2. Accordingly, the

undersigned called Mr. LaVelle sometime in Spring or Summer 2010 to make an introduction

and to get a sense of whether Mr. LaVelle appeared to be a responsible, reputable attorney. Mr.

LaVelle gave a strong impression of both competence and integrity, and the undersigned also

obtained a favorable recommendation about Mr. LaVelle and his father from Mr. Gerald Smith

of Lewis & Roca (who Ms. Dickinson's partner called a "dean of the bankruptcy bar"). The

undersigned felt that such due diligence was critical to the undersigned's willingness to be

involved in the case in Arizona. It was also critical to the undersigned to know that whoever

might do work for Mr. Loomis would not repeat the type of gaffes committed by HH&Y.

 Mr. Loomis wanted Mr. Lavelle to talk to Mr. Leberer because he knew that the

allegations in the Spoliation Motion were unfounded and also because the current complaint

where Loomis Enterprises is the plaintiff was coming to a head and evidence needed to be

collected for possible depositions. *See* LaVelle Dec., ¶5; Loomis Dec., ¶7. However, because

Mr. Loomis wished to avoid any opportunity for Plaintiffs to make allegations of misconduct, he

asked Mr. LaVelle to see if Mr. Leberer would be willing to talk to him about his Spoliation

Declaration. Loomis Dec., ¶7; *see* LaVelle Dec., ¶5. At first, Mr. Leberer expressed to Mr.

LaVelle that he was reluctant to talk because he was under the impression that his severance

agreement forbade him from communicating with anyone other than Plaintiffs about the case.

LaVelle Dec., ¶6. Being cautious about the situation, Mr. LaVelle told Mr. Leberer that if he

wanted his own counsel before talking, he could have it. LaVelle Dec., ¶7. Mr. Leberer did not

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030 TEL 703.273.8898 FAX 703.273.8897

Cameron / McEvoy

want to be involved in this litigation generally, but he was interested in having his prior testimony be fairly understood. Thus, he ultimately agreed to go over the declaration he gave Plaintiffs that they used for purposes of supporting the spoliation motion. Among other things, Mr. Leberer specifically refuted a statement in his declaration that he was intimidated by Mr. Loomis. LaVelle Dec., ¶7-8.

Mr. Leberer was nervous about getting sued by Mr. Loomis if he tried to correct his prior declaration. LaVelle Dec., ¶8; Snyder Dec., ¶6. Solely in an effort to put Mr. Leberer at ease, Mr. LaVelle drafted a Release and Indemnification Agreement to give Mr. Leberer the comfort that he could tell the truth without concern of adverse action by Plaintiffs or Mr. Loomis. There was no other purpose for it. LaVelle Dec., ¶8; *see* Snyder Dec., ¶6. At no time did Mr. LaVelle ever suggest that Mr. Leberer did, or did not, have to come to court. LaVelle Dec., ¶9. Indeed, Mr. LaVelle specifically included the following language in it:

> **This Release and Indemnity Agreement is provided so that Mr. Leberer may provide complete, truthful, and accurate testimony in connection with existing or future litigation in which Mr. Loomis is or may become involved. Nothing in this agreement shall be construed in anyway to prevent Mr. Leberer from providing truthful information, to any person, at his discretion.** [*See* LaVelle Dec., ¶9 & Exh. A.]

The Indemnification Agreement also provides that Mr. Loomis will pay any damages or costs if Plaintiffs sue Mr. Leberer on the basis of any alleged breach of the severance agreement. *Id.* In no way whatsoever was Mr. LaVelle intending to influence testimony or encourage anyone not to show up for Court. The only reason for the indemnification agreement was to allow Mr. Leberer to speak without fear. LaVelle Dec., ¶10; *see* Snyder Dec., ¶6. When he did so, Plaintiffs' Spoliation Motion was exposed as being based on a misleading foundation. It is ironic, indeed, that uncovering the truth about a critical matter is now said to be a violation of an order designed to protect the trial process.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy

4. *Emil W. Herich, Esq.*

Mr. Herich is admitted to practice law in all of the United States District Courts in

California and before the Ninth Circuit Court of Appeal.  Exh. J, Declaration of Emil W. Herich,

¶1 ("Herich Dec.").  With the exception of the proceedings before this Court, he has never been

accused, much less been found to have committed, any ethical violation in his 27 years of

practicing law.  Herich Dec., ¶1.

Mr. Herich got involved in Mr. Loomis' bankruptcy case on or about August 3, 2010,

when he filed an *ex parte* application for employment in the matter entitled *In re Joseph C.*

*Loomis*, Debtor, Case No. 2:10-bk-01855 (D. Ariz. Bankr.).  The *ex parte* application sought his

employment with respect to the following matters:

> (a) A lawsuit filed by Intersections, Inc. and Net Enforcers, Inc. ("the Virginia action");
>
> (b) a potential arbitration proceeding against Debtor's former counsel in this case, Hunter, Humphrey & Yavitz, PLC, for legal malpractice;
>
> (c) potential avoidance/preference litigation against Debtor's former counsel in this case, Dunlap, Grubb & Weaver, PLLC; and
>
> (d) litigation to determine the enforceability/dischargeability of certain contractual noncompetition provisions and covenants not to compete.  [Herich Dec., ¶2 & Exh. A]

The first matter listed above *is literally this case*.  This is because it was unknown

whether, as of August 3, 2010, this case would be deemed settled, litigated to judgment in

Virginia or litigated to judgment in Arizona.  The other matters all involved this case as well and

in particular the matter against HH&Y.  A leading feature to the claim against HH&Y is the

conduct and advice given to Mr. Loomis in connection with the threat by HH&Y to have counsel

arrested if they did not return Mr. Loomis' computer, a matter that continues to plague Mr.

Loomis' credibility.   Herich Dec., ¶3.

11

In short, all of the assignments for which Mr. Herich's employment was approved substantially overlap with matters related to this action. On or about August 10, 2010, Mr. Herich's *ex parte* application to be employed was approved by the bankruptcy court. Herich Dec., ¶4 & Exh. B. On or about August 6, 2010, Mr. Herich submitted an Application in this Court to Qualify As A Foreign Attorney Under Local Civil Rule 83.1(D) and Local Criminal Rule 57.4. Mr. Herich submitted this application because it was related to his employment for Mr. Loomis in the bankruptcy court. *See* Herich Dec., ¶5 & Exh. C. Specifically, Plaintiffs had previously obtained relief from the stay of bankruptcy to attempt to enforce a settlement of the Virginia action, and the motion to enforce the settlement clearly had implications with respect to the bankruptcy action in which he was and is currently employed as counsel for Mr. Loomis, including the fact that Plaintiffs had filed a proof of claim based on the settlement in the bankruptcy case. Herich Dec., ¶5.

On or about August 20, 2010, Plaintiffs made a motion to disqualify Mr. Herich as counsel for Mr. Loomis in this action. Specifically, the notice of motion sought entry of an order "disqualifying Emil W. Herich and Keats McFarland & Wilson, LLP ("KMW") from appearing as counsel on behalf of Defendant Joseph C. Loomis." Herich Dec., ¶6 & Exh. E. The ground for the motion was that the firm that Mr. Herich is "of counsel" to had allegedly previously represented Plaintiff Net Enforcers, Inc. ("NEI") in a matter "substantially similar" to the matter before this Court. No contention was ever made that Mr. Herich had ever personally represented Plaintiff NEI and, in fact, he has never represented that entity. Herich Dec., ¶6.

Mr. Loomis submitted an opposition to the motion to disqualify complete with declarations attesting to the fact that neither KMW nor Mr. Herich had ever represented Plaintiff NEI on any matter in any way related to the action before this Court. Nevertheless, Judge

12

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
PLLC

Buchanan heard the motion and on September 3, 2010 issued an order (the "Herich Order")

stating:

> For reasons stated from the bench, it is hereby ORDERED that plaintiff's Motion to Disqualify Emil W. Herich and Keats McFarland & Wilson, LLP from Appearing as Counsel on behalf of defendant Joseph C. Loomis is GRANTED.
>
> The Clerk shall strike Mr. Herich and Keats McFarland & Wilson as counsel of record.[2]
>
> [Herich Dec., ¶7, Exh. F]

Mr. Herich's understanding of the Herich Order at the time it was issued was, and still is,

that he was barred "from appearing as Counsel on behalf of Joseph C. Loomis" in this Court to

the same extent as he would have been barred had he never submitted a *pro hac vice* application.

Herich Dec., ¶8. Mr. Herich did not understand then, nor does he understand now, that the order

prevented him from providing any legal services to Mr. Loomis relevant to the issues in the

bankruptcy court, particularly insofar as those issues overlap with those present in this case. The

disqualification order also did not purport to bar him from appearing in the bankruptcy court, or

from providing legal services to Mr. Loomis to the extent those services were related to his

employment in the bankruptcy case. Herich Dec., ¶8.

Mr. Herich's views were also influenced by proceedings in the bankruptcy court itself.

On or about August 17, 2010, Plaintiffs herein moved the bankruptcy court to reconsider its

order authorizing his employment on the same grounds urged before this Court when they sought

Mr. Herich's disqualification. Mr. Herich filed an opposition on the same grounds as those

which were filed on his behalf in this Court. On September 3, 2010, Plaintiffs filed supplemental

papers advising the bankruptcy court of the disqualification order issued by this Court. Herich

---

[2] Although the order purports to strike KMW's appearance, KMW had never been counsel of record for Defendant Joseph C. Loomis in this case. Herich Dec., ¶7 n.1.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy

Dec., ¶9. On September 16, 2010, after a full-blown evidentiary hearing, the bankruptcy court

denied Plaintiffs' motion to reconsider the August 10, 2010 order authorizing Mr. Herich's

employment as counsel for Mr. Loomis in the aforesaid matters. *See* Herich Dec., ¶9 & Exh. G.

On or about September 21, 2010, Joseph C. Loomis filed his Defendant's Objections to

Magistrate Judge's Decision on Nondispositive Matter and Request for Reconsideration By

District Court of Magistrate Judge's Ruling [FRCP 72a] with this Court. *See* Docket No. 195.

On or about October 1, 2010, Mr. Loomis caused a motion for reconsideration of Judge

Buchanan's disqualification order to be filed with this Court, and it was referred to Judge

Brinkema as well. *See* Docket No. 201. On or about October 29, 2010, the Objections to Judge

Buchanan's disqualification order came before Judge Brinkema. After denying Plaintiffs'

motion to enforce the purported settlement, the Court determined that the other two pending

proceedings, including the objections to the disqualification order, were "moot" because the stay

of bankruptcy still applied to the case. Herich Dec., ¶10 & Exh. H (November 3, 2010 Order).

At that point, there were two rulings related to Mr. Herich's work for Mr. Loomis. In

Virginia, Judge Buchanan had ordered that he could not "appear" in this action, and Judge

Brinkema found that this ruling was "moot" for as long as the stay was in place. In Arizona,

meanwhile, the bankrtupcy court refused to rescind Mr. Herich's employment even though it

knew about his disqualification in this Court and even though the subject matter of the cases was

substantially similar. The bankruptcy court took a different view of the issues related to imputed

conflicts. Herich Dec., ¶11.

Mr. Herich felt that he was entirely within his rights, and within the spirit of the two

disparate rulings, to work for Mr. Loomis on matters related to the subject matter of the

bankruptcy cases (and potential cases) for which his employment had been approved, challenged

and reapproved.  Herich Dec., ¶12.  This understanding, and therefore the good faith basis for it,

has been confirmed by one of the leading legal ethics experts in America, Geoffrey Hazard.  *See*

Exh. H, letter opinions and CV of Geoffrey Hazard.  However, as noted, the undersigned took

the position that he would not serve as a conduit or mere local counsel notwithstanding the

conflicting rulings.

On or about November 8, 2010, Plaintiffs filed an amended proof of claim for

$14,000,000 in the Arizona bankruptcy case based on the exact same allegations made in this

case.  Herich Dec., ¶12 & Exh. I.  Mr. Herich caused an adversary proceeding to be commenced

in the bankruptcy action seeking to disallow Plaintiffs' claim against Mr. Loomis, and he also

filed a counterclaim seeking to have their claim against Mr. Loomis equitably subordinated to

those of other creditors on account of their bad faith tactics in this action including those related

to the declaration they obtained from Mr. Leberer.  Mr. Herich also prepared a motion for

summary judgment that will be heard on March 22, 2010 on the ground that the Amended Proof

of Claim was not timely filed.  Herich Dec., ¶12.  Mr. Loomis has also contemplated, and intends

to commence, an action in the bankruptcy court against Mr. Loomis' former counsel, HH&Y, for

legal malpractice.  Herich Dec., ¶12.

Mr. Herich also caused a separate adversary proceeding to be commenced against

Plaintiffs in the bankruptcy court that sought a declaratory judgment that Mr. Loomis was not

bound by certain covenants not to compete contained in the agreements that form the basis for

the action in this Court (the "Restrictive Covenant Case").  Herich Dec., ¶13.  A motion for

summary judgment in the Restrictive Covenant Case was heard by the bankruptcy court and

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898    FAX 703.273.8897

Cameron / McEvoy
PLLC

granted on January 18, 2011 over Plaintiffs' objections that Mr. Herich had been disqualified in the Virginia action. Herich Decl., ¶13 & Exhs. J-K.[3]

   As part of Mr. Herich's work on the above-referenced matters, he has felt duty-bound to investigate the potential claims of Mr. Loomis prior to filing them in the bankruptcy court and to assist Mr. Loomis to mitigate any damages that he can reasonably avoid. Herich Dec., ¶14. At the time of the conduct complained of herein, there was substantial reason to believe that this litigation would remain in Arizona and be litigated there, including but not limited to the Spoliation Motion. Herich Dec., ¶14. In this regard, Plaintiffs herein had filed a motion for relief from stay; Mr. Loomis had opposed the motion; and the matter had not been ruled upon by the bankruptcy court. Accordingly, Mr. Herich felt that it was necessary and appropriate for him to interview and communicate with certain witnesses in this case, such as Ms. Snyder and Mr. Leberer, and he has always done so in what he believes is an appropriate, professional and nonthreatening manner. Herich Dec., ¶14.

   In this regard, Plaintiffs' counsel contends that Mr. Herich has engaged in "misconduct" by "representing" Mr. Loomis in the Virginia case as a result of the fact that he met with Mr. Leberer on November 12, 2010 (after Plaintiffs had filed a $14,000,000 proof of claim in the bankruptcy case based on the exact same claims that form the basis of this action). Herich Dec., ¶15. Based on what he understood from Mr. LaVelle, Mr. Herich anticipated that he would be able to shed light on what he believed had been a misleading declaration given by Mr. Leberer in connection with the original Spoliation Motion. He also believed that Mr. Leberer could be a

---

[3] During the course of the Restrictive Covenant Case, Plaintiffs insisted that the Stock Purchase Agreement, which is at the core of their case for rescission, was fully valid and that Mr. Loomis was still bound by its terms. The bankruptcy court found that the agreements were valid, but held that the restrictive covenants were no longer valid as a result of changed circumstances. Thus, Plaintiffs have clearly elected, in a United States federal court, to affirm the Stock Purchase Agreement. *See* Docket No. 248, Mr. Loomis' Opposition to Motion for Sanctions, pp. 26-27.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
PLLC

witness in several of the pending or contemplated proceedings that Mr. Herich was handling for

Mr. Loomis in Arizona.  Herich Dec., ¶15.

Mr. Herich met Mr. Leberer first at a restaurant in Phoenix, Arizona.  Herich Dec., ¶16;

Snyder Dec., ¶7.  Contrary to Plaintiffs' allegations, Mr. Herich was not trying to "ambush" Mr.

Leberer.  He was simply in town in connection with the bankruptcy case and took the

opportunity to interview Ms. Snyder, who told Mr. Herich that if he dropped by the restaurant

she would introduce him to Mr. Leberer.  Mr. Herich chatted with Ms. Snyder and Mr. Leberer

for approximately five minutes.  Mr Herich asked Mr. Leberer if he could contact him again to

discuss potentially obtaining declarations from him.  Mr. Leberer said that he was agreeable to

Mr. Herich contacting him.   Herich Dec., ¶16; Snyder Dec., ¶¶7-9.

Mr. Leberer later agreed to meet Mr. Herich at Ms. Snyder's Phoenix, Arizona residence.

Prior to the meeting, Mr. Herich sent Mr. Leberer an email attaching a proposed declaration

stating "I have modified the protective order [declaration] to take out the language you were

uncomfortable with and it is attached".  Mr. Herich also told Mr. Leberer that he would bring a

draft declaration concerning his prior declaration and that he would make any changes to the

draft that Mr. Leberer wished to be made.  Herich Decl. ¶17.

Mr. Herich did in fact meet with Mr. Leberer in Phoenix, Arizona on November 12,

2010.  Herich Dec., ¶18.  Ms. Snyder was also present for the entire meeting.  Herich Dec., ¶18;

*see also* Snyder Dec., ¶9.  After discussing the matter with him, Mr. Leberer voluntarily agreed

to provide Mr. Herich with a declaration that Mr. Leberer spent hours reviewing and revising

which refuted the ambiguous declaration that Plaintiffs' counsel had obtained from him for the

purpose of supporting their Spoliation Motion.  Herich Dec., ¶18; Snyder Dec., ¶9.  During the

meeting, Mr. Leberer asked what would happen if he did not provide a declaration.  Mr. Herich

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030

TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
PLLC

truthfully told him that he would attempt to subpoena him for a deposition. Later, after the declaration had been signed, Mr. Leberer offered to drive Mr. Herich to the airport so that he could return to his home in Los Angeles. Mr. Leberer expressed concern that Plaintiffs' counsel, Michelle Dickenson, would be upset once she learned of the declaration. Mr. Leberer also expressed concern about speaking to her and asked Mr. Herich if he was required to speak to her on the phone. Herich Dec., ¶18; Snyder Dec., ¶¶9-10. Mr. Herich said that Mr. Leberer did not have to talk to anyone if he chose not to do so. Mr. Leberer then asked what would happen if he got sued by Plaintiffs on account of his agreeing to provide a declaration and Mr. Herich pointed out that Mr. Loomis had promised to indemnify him. Herich Dec., ¶18; Snyder Dec., ¶10.

As noted above, at the time that Mr. Herich met with Mr. Leberer, relief from stay had not been granted by the Arizona bankruptcy court and Mr. Herich had a good faith reason to believe that he would be involved in the defense of that claim in Arizona. His interview of Mr. Leberer was also relevant to his investigation of the potential malpractice claims and equitable subordination claims which involve issues connected with the Spoliation Motion that Plaintiffs filed against Mr. Loomis in this case. Mr. Herich also believes that this work was relevant to Mr. Loomis' duty to reduce or mitigate damages by preventing a Spoliation Motion from being granted against him. Herich Dec., ¶19. Mr. Herich at no time attempted coerce Mr. Leberer and Mr. Leberer does not ever state that he was coerced or that Mr. Herich discouraged him from testifying. Herich Dec., ¶19. The evidence is that Mr. Leberer asked Mr. Herich questions and Mr. Herich attempted to answer them in honest and forthright manner. *See* Herich Dec., ¶19.

## C. ARGUMENT

1. *Standard of Review.*

Plaintiffs seek the "ultimate sanction," *i.e.,* a directed verdict and "the full amount of damages sought by Plaintiffs." Pl. Mem. at p. 1. Presumably this means the $14,000,000 that Plaintiffs seek in their count for rescission.

The United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have both cautioned that trial courts should only exercise their inherent powers with the greatest caution, particularly where a court has been asked to remove a case from the adversarial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("inherent powers must be exercised with restraint and discretion"); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (cautioning that lesser sanctions must be considered to redress any violations).

2. *The No Contact Order Cannot Be The Predicate For Sanctions Because It Is Not Enforceable Generally; Nor Is It Enforceable With Respect To Ms. Snyder Or Mr. Leberer.*

No sanctions can be awarded on the basis of the No Contact Order unless it is enforceable. In this regard, there can be no question that the No Contact Order is a restraining order because it expressly seeks to restrain Mr. Loomis' ability to associate with three categories of persons and entities. As such, it must comply with the strictures of Fed. R. Civ. Pr. 65(d). Under Fed. R. Civ. Pr. 65(d), and to be enforceable, the restraining order had to:

(A)    state the reasons why it was issued;

(B)    state its terms specifically; and

(C)    describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.

19

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898    FAX 703.273.8897

Cameron / McEvoy
PLLC

Fed. R. Civ. Pr. 65(d).

The Fourth Circuit mandates strict compliance with these provisions when a court attempts to fashion a restraining order, such as the one in this case, and has interpreted Rule 65(d) to require a court to set forth its findings of fact and conclusions of law. *See Alberti v. Cruise*, 383 F.2d 268, 271-72 (4th Cir. 1967) (holding that the Rule's "terms are mandatory and must be observed in every instance"); *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 460-61 (4th Cir. 2000) (discussing the lack of findings of fact and conclusions of law in a district court's order). Most importantly, the Fourth Circuit has also affirmed that: "[l]oose injunctive orders are neither easily obeyed nor strictly enforceable, and are apt to be oppressive." *Alberti*, 383 F.2d at 271 (quoting 7 Moore's Federal Practice, ¶ 65.11, p.1666). A restraining order must therefore "be narrowly tailored and should prohibit only unlawful conduct, " *CPC Int'l, Inc.*, 214 F.3d at 460-61, "'to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of contempt citation on a decree too vague to be understood,'" *id.* at 459 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

In this case, there were allegations of witness harassment by Plaintiffs' counsel, and the event which pushed matters over the brink was the threat by HH&Y to have Ms. Dickinson arrested if she went to Arizona for depositions, an incident to this day Mr. Loomis plans to rectify in the Arizona bankruptcy court with an adversary complaint for malpractice. This is clear from the motion for protective order and the accompanying memorandum filed October 23, 2009, and from the hearing transcript on that motion dated October 30, 2009. Plaintiffs never tendered a list of persons who contended that they needed protection, and did not tender any particularized facts that would support a court in enjoining Mr. Loomis from associating or contacting anyone who counsel proffered, on a category by category basis, to be in fear. The problem with the non-particularized approach to the restraining order was that it not only

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy PLLC

20

infringed on Mr. Loomis' First Amendment rights to association, but also upon the rights of association possessed by Ms. Snyder and Mr. Leberer.

In short, there were no findings of fact, no conclusions of law, no balancing tests and no narrow tailoring of relief.  Even if there had been, there was no "Plaintiffs' witness list" even in existence as of October 30, 2009, and Plaintiffs could have, but did not, list persons who were the intended class of persons subject to the No Contact Order.  When the Parties later did list witnesses, many of the persons listed were witnesses for Plaintiffs and Mr. Loomis.

As a result, the "No Contact" order was clearly unenforceable because it was wholly non-compliant with Fed. R. Civ. Pr. 65 and the cases related thereto.  The No Contact Order, for example, swept up some of Mr. Loomis' immediate family members, his co-defendant sister, his CPA, his brother and partner of Loomis Enterprises, Chris Loomis, his former girlfriend and current close friend Ms. Snyder and his friend Mr. Leberer.  It also did not limit itself to communication about this case, but as to all matters generally (including core First Amendment speech like political speech, discussions about holidays, birthdays and the like).  This is clearly an unenforceable order as a matter of law.

Because the No Contact Order is not enforceable, it cannot serve as the basis for sanctions in this case.

3. *A Valid Protective Order Could Not Have Issued For Ms. Snyder Or Mr. Leberer.*

Plaintiffs did not, on October 23, 2009 or any time thereafter (including now), submit any evidence to support a restraint on Mr. Loomis' right to contact Ms. Snyder or Mr. Leberer. While Mr. Leberer's October 29, 2009 Declaration states that Mr. Loomis is "physically and emotionally threatening," Mr. LaVelle says that Mr. Leberer specifically refuted that when they met, and Mr. Leberer has specifically rejected any notion that he has ever feared Mr. Loomis in a

sworn declaration on file with this Court. *See* LeVelle Dec., ¶8. Similarly, while Mr. Loomis

and Ms. Snyder obtained protective orders against one another in or about January 2009, that

predated the litigation and the motion for protective order by almost a year. Ms. Snyder

obviously does not presently fear Mr. Loomis and there was no evidence she did on October 30,

2009. *See* Snyder Dec., ¶5.

### 4. *No Attorneys Other Than HH&Y Were Subject To the No Contact Order*

While the No Contact Order enjoins Mr. Loomis and his "counsel," the motion seeking

the protective order was directed solely at Mr. Loomis and HH&Y. Plaintiffs have

acknowledged as much. *See* Motion for Sanctions, Docket No. 235, p. 3 n.1. Thus, the only

issues as to counsel relate to the Indemnification Agreement.

### 5. *The Indemnification Agreement Was Not Improper*

Plaintiffs' actual claims involving counsel appear to revolve around the concept that Mr.

Herich somehow used the Indemnification Agreement to attempt to cause Ms. Snyder and Mr.

Leberer to not come to trial. There is no evidence to support this, and the "tampering"

allegations are both defamatory as to Mr. Herich and not true. In this regard, Plaintiffs' own

declarations fully acknowledge that Ms. Snyder fully intends to come to Virginia and testify at

the trial of this case. *See* Roth Dec., ¶2. Mr. Leberer's continued cooperation with Plaintiffs is

also evident as demonstrated by the February 16, 2011, declaration he provided to Plaintiffs.

Mr. LaVelle has explained that the Indemnification Agreement was drafted to provide

Ms. Snyder and Mr. Leberer with comfort that they could testify without fear of retribution by

either Mr. Loomis or Plaintiffs. *See* LaVelle Dec., ¶10. On the one hand, both Ms. Snyder and

Mr. Leberer had severance agreements that bound them to "cooperate" in litigation involving

Plaintiffs, and which held open the possibility of a lawsuit to recover the severance payments if

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
PLLC

they did not "cooperate." Mr. Leberer, at least, was concerned that he could not correct what he admitted were ambiguities in his prior Declaration used to support Plaintiffs' spoliation based on his severance agreement. LaVelle Dec., ¶8; *see* Leberer Dec., ¶3. The concept of the Indemnification Agreement was simply to level the playing field. There is no evidence that Mr. LaVelle did anything that any counsel in his position would not have done; indeed, he even told Mr. Leberer he did not have to speak with him and offered him the chance to get his own attorney. Mr. LaVelle says that he had no intention to influence testimony, and that he included the bold-faced language in the Indemnification Agreement cited above to make this clear. *See* LaVelle Dec., ¶9.

There is, therefore, nothing inherently wrong with the Indemnification Agreements. Indeed, Professor Hazard has reviewed the situation and has opined that there is nothing inherently problematic about the use of an indemnification agreement in these circumstances. *See* Exh. H, three letter opinions and CV of Geoffrey Hazard.

Plaintiffs recognize this, but suggest that Mr. Herich "attempted to use the Indemnity Agreements to convince Mr. Leberer to disappear from this case and not testify on behalf of Plaintiffs." Pl. Mem. at p. 6. This is simply not true, nor is the attempt to paint Mr. Herich as someone who was using sharp practices to cajole Mr. Leberer into doing something he did not want to do. Each argument made by Plaintiffs (and "argument" is all it is, because it is not fact) may be refuted as follows:

*Allegation: That Mr. Herich attempted to get Mr. Leberer to "disappear" from the case.* As discussed in the Introductory Statement, Mr. Loomis hopes that Plaintiffs will ask Mr. Leberer to appear for trial and that he will agree to do so. If Plaintiffs cannot secure his presence in Virginia voluntarily, Mr. Loomis hereby consents to an order permitting the parties to notice

his deposition in Arizona at a mutually convenient time for use as evidence in this case. In short, there is <u>no way that Mr. Leberer's testimony will not be obtained one way or another.</u>

Furthermore, the Court should take a step back from the allegations and consider this: <u>when Mr. Herich met with Ms. Snyder and Mr. Leberer, there was just as much reason to believe that this case would stay in Arizona as there was reason to believe it would come back to Virginia. If the former, Ms. Snyder and Mr. Leberer would have been subject to the subpoena power of the bankruptcy court. It is completely disingenuous to argue that, under these circumstances, Mr. Herich really believed that he could cause these witnesses to "disappear." Moreover still, as noted above Plaintiffs acknowledge that Ms. Snyder has stated that she intends to testify at trial. As to Mr. Leberer, he nowhere in his declaration states that Mr. Herich tried to induce him to "disappear" and not testify at trial. He only states that Mr. Herich told him he did not have to speak to Plaintiffs' counsel. Mr. Herich has explained that this statement is even more defensible because it was made only in response to Mr. Leberer's prior statement that he did not want to do so.</u>

*Allegation: That Mr. Herich participated in an "ambush" of Mr. Leberer.* Mr. Herich had spoken with Ms. Snyder as part of his investigation into the facts and circumstances of this case in connection with his actual and reasonably foreseeable work in the bankruptcy court. In the course of talking to Ms. Snyder, she indicated that she would arrange a meeting with Mr. Leberer so that Mr. Herich could introduce himself. Accordingly, Mr. Herich met Ms. Snyder and Mr. Leberer at a restaurant on an occasion when Mr. Herich was in Phoenix, Arizona. Mr. Herich did not understand the meeting to have been an "ambush." Their interaction lasted approximately five minutes. *See* Herich Dec., ¶16. During the course of that interaction, Mr. Leberer categorically denied being intimidated by Mr. Loomis and agreed that Mr. Herich could

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy

24

contact him to discuss providing a declaration that would clarify certain statements made in his October 29, 2009 declaration submitted in support of the Plaintiffs' motion for sanctions.  When Mr. Herich did contact him, Mr. Leberer did in fact agree to meet and expressed no objections whatsoever to being contacted.  Herich Dec., ¶16.

    *Allegation:  That Mr. Herich Told Mr. Leberer He Did Not Need To Talk To Plaintiffs' Counsel Because He Had Signed The Indemnity Agreement.*  Mr. Leberer <u>voluntarily</u> agreed to meet with Mr. Herich to go over the contents of his October 29, 2009 declaration.  Again, it needs to be remembered that at the time of their meeting (November 5, 2010), the case was pending in the Arizona court, not this Court, and there was reason to believe it would stay there.  Accordingly, both Ms. Snyder and Mr. Leberer would be subject to the subpoena power of the Arizona Court.  Therefore, these witnesses would never "disappear."  Furthermore, Mr. Herich simply told Mr. Leberer the truth that any attorney would have to say if asked about whether an independent party "has" to talk to any lawyer: it is up to the witness.  Similarly, when Mr. Leberer expressed concern about being sued for providing a declaration to Defendant's counsel, Mr. Herich truthfully pointed out that Mr. Loomis had agreed to indemnify him.  *See* Herich Dec., ¶18.  Truthfully answering a question is not grounds for allegations of misconduct.

    *Allegation:  That Mr. Leberer spent five or six hours working on clarifications of his October 29, 2009 declaration.*  This is true, but it is a testament to two facts.  First, Mr. Leberer would undoubtedly say that he is trying his best to make sure he is no longer misquoted or misconstrued.  Second, the allegation that Mr. Herich told him he would have to clarify his declaration to avoid being accused of lying if he did testify shows that Mr. Herich believed and hoped he would testify.  The fact that Mr. Herich said that he might "have to testify" is additional

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898    FAX 703.273.8897

Cameron / McEvoy

proof that Mr. Herich did not seek to discourage testimony, and the fact that Mr. Leberer took this seriously shows that he understands he might have to testify.

Beyond the fact that Mr. Loomis has never sought to have Mr. Leberer not appear for trial, the idea that Mr. Herich would tamper with a neutral if not potentially hostile witness, thereby putting his 27-year unblemished reputation on the line, is not credible.  Mr. Herich denies any untoward conduct categorically.  Herich Dec., ¶19.  In sum, Mr. Herich's interviews of Ms. Snyder and Mr. Leberer were well within the scope of his counsel duties in the bankruptcy court.  He acted as counsel, and his intercession between Mr. Loomis and these witnesses is proof that Mr. Loomis is not running wild vis-à-vis the merits of this case as Plaintiffs would have the Court believe.

> 6. *Assuming The Validity Of The No Contact Order, Mr. Loomis Did Not Have Widespread Contact With Potential Witnesses*

The allegations related to Mr. Loomis and his conduct with respect to the No Contact Order boil down to his admitted contacts with Sheilah Snyder, a close friend (indeed, former girlfriend).  She contacted him; he continued the contact.  Yet Mr. Loomis did not run around contacting persons related to this case indiscriminately.  Indeed, the very fact he had Mr. Lavelle contact Mr. Leberer is proof of this.  Mr. Loomis should not be punished given the nature of his prior relationship with Ms. Snyder, his clear efforts to otherwise avoid controversy and the issues with the No Contact Order itself.

## D. SUMMARY

1. *"No Contact" and Mr. Leberer.*  The interesting subplot to Mr. Leberer is the fact that attorneys (LaVelle and Herich) were the ones who dealt with him.  Indeed, even though the No Contact Order is not enforceable, the mere fact that Mr. Loomis elected to have lawyers meet with Mr. Leberer is proof that he was not looking for trouble or running amok.  That Plaintiffs

are seriously arguing that a text message and a voicemail about *ski clothes* merits a default

judgment is unbelievable.  The bottom line is that Mr. Loomis' attorneys had a right to contact

Mr. Leberer, and there were no contacts between Mr. Loomis and Mr. Leberer that merit

sanctions.

    Moreover, Plaintiffs have not shown <u>any</u> prejudice.  Mr. Leberer's careful attempts to

clarify his declaration show that he cares about being accurate, and there is no reason to believe

that he will not either come to trial or otherwise sit for a trial deposition.  Similarly, his continued

cooperation evidenced by his February 16, 2011, declaration further demonstrates a lack of

prejudice and/or any validity of Plaintiffs' assertions.

    2. *Ms. Snyder.*  Mr. Loomis and Ms. Snyder had some contact as a result of their

personal history.  However, sanctions cannot be issued on the basis of the contact because the No

Contact Order is not enforceable.  Even if the No Contact Order had been supported by a then-

existing need to include Ms. Snyder within its scope, it was not narrowly tailored to provide that

Mr. Loomis could have contact with her but not discuss the case.

    In any event, there is no evidence that could possibly lead this Court to find that Ms.

Snyder is willing to suddenly lie for Mr. Loomis as a result of the contact, or that she will not

agree to come to Virginia or to sit for a trial deposition.  In fact, Plaintiffs acknowledge that she

is going to testify at trial.  Thus, there is no prejudice.  <u>The fact that Plaintiffs now think Ms.

Snyder is not prepared to support their meritless allegations is hardly grounds for sanctions

against Mr. Loomis.</u>

    While the undersigned wishes that Mr. Loomis had not contacted Ms. Snyder precisely

because of the present situation, she is the singular example of any alleged contacts by Mr.

27

Loomis other than the "ski clothes" text message and voicemail. Mr. Loomis and Ms. Snyder

are close friends, and they have a First Amendment right to associate.

3. *The Indemnification Agreement.* Plaintiffs have termination agreements with Ms.

Snyder and Mr. Leberer that require these two individuals to repay their severance if they do not

"cooperate" with Plaintiffs. As a consequence of the severance agreement, Mr. Leberer was

intimated to even talk to an attorney like Mr. LaVelle who, it is clear, has had almost nothing to

do with this case. The Indemnification Agreements merely sought to level the playing field by

allowing Ms. Snyder and Mr. Leberer to speak fully and freely. The fact that Mr. Leberer took

5-6 hours to carefully clarify his Declaration is proof positive that the Indemnification

Agreement had a salutary effect. In a vacuum, there appears to be little wrong with that.

However, this is not a vacuum and Plaintiffs' have argued that somehow the Indemnification

Agreements were calculated to make Ms. Snyder and Mr. Leberer "disappear" as witnesses.

This is meritless once the Court recognizes that the case could have easily stayed in Arizona

where either Ms. Snyder or Mr. Leberer could have been subpoenaed. They may still come to

Virginia, or they can be deposed for a trial deposition. All of these remained possibilities at all

times. Plaintiffs are merely seeking to short-circuit the trial process.

4. *Mr. Herich.* Mr. Herich has been much maligned in this matter. However, two points

can be made up front. First, Mr. Herich is approved counsel in what amounts to a mirror image

case in Arizona and a number of related satellite actions. Plaintiffs do not like that, but they lost

their disqualification motion in Arizona because the Court reached a different result. Professor

Hazard agrees that nothing precluded Mr. Herich from acting as counsel in the bankruptcy case

and thus any duties that an attorney would normally perform for his client in such a case were

appropriate. However, because the undersigned values his reputation in this Court with a

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030

TEL 703.273.8898    FAX 703.273.8897

Cameron/McEvoy
PLLC

passion, he chose a conservative course and told Mr. Herich that had no interest in being a

conduit or virtual attorney.  Mr. Herich has respected that decision and the undersigned believes

him to be someone who has, repeatedly, expressed concern for doing what is proper and right.

Not one time has Mr. Herich caused the undersigned to believe that he is other than an attorney

who cares deeply about our profession and about the ethical practice of law.

Mr. Herich's zeal in obtaining Declarations that could have been used in Arizona or

Virginia was not part of a pattern of "practice" in this case.  Mr. Herich otherwise denies all of

the allegations of sharp practices for the reasons set forth above.

5. *The Presence Of Trial Judge Leonie M. Brinkema Renders Claims Of Prejudice*
   *Particularly Moot.*

This case is going to be tried by Judge Leonie M. Brinkema, one of the most fair-minded

and saavy judges known to the undersigned.  She has been widely praised around the United

States for her deft handling of difficult cases.  The undersigned has confidence that Judge

Brinkema will deliver such justice as the actual facts of the underlying case require.  The trial

process should not be short-circuited.

6. *No Default Judgment Should Be Entered, But Particularly Not One for Rescission*

Plaintiffs have asked for a directed verdict but have not particularized which count(s)

should be subject to the order.  While such a default judgment would be totally inappropriate, it

is also the case that Plaintiffs' have waived their right for rescission under the Stock Purchase

Agreement by electing, through their conduct in and out of court, to affirm the underlying

contract.  Furthermore, they cannot restore NEI to Mr. Loomis in the condition it was in before

the sale.  Thus, this Court cannot award or consider rescission and $14,000,000 in damages.  Mr.

Loomis further adopts his arguments set forth in pages 26-27 his Opposition to Motion for

Sanctions filed February 25, 2011.

29

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

WHEREFORE, the foregoing premises considered, Defendant Joseph C. Loomis moves this Honorable Court for an Order denying the Motion for Sanctions filed herein, and for such other and further relief as justice may require.

Respectfully submitted,

/s/
Timothy J. McEvoy, VSB No. 33277
CAMERON McEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
Counsel for Defendant, Joseph C. Loomis

30

### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2011, I have filed a true and correct copy of the foregoing with the Clerk of Court via the CM/ECF efiling system which will send notification of this filing to the following counsel of record:

Tara Lee, Esquire
Ryan C. Berry, Esquire
DLA Piper LLP
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Counsel for Plaintiffs

David Clarke, Esquire
Michelle J. Dickinson, Esquire
Melissa R. Roth, Esquire
DLA Piper LLP
6225 Smith Avenue
Baltimore, Maryland 21209
Counsel for Plaintiffs

Eugene Walter Policastri, Esquire
Bromberg Rosenthal LLP
401 North Washington Street, Suite 500
Rockville, Maryland 20850
Counsel for Defendant Jenni Loomis

/s/
_____
Timothy J. McEvoy, VSB No. 33277
CAMERON McEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
Counsel for Defendant, Joseph C. Loomis

31