IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

Intersections Inc. and Net Enforcers, Inc.,

    Plaintiffs,

    v.                                    Civil Action No. 1:09CV597 (LMB/TCB)

Joseph C. Loomis and Jenni M. Loomis,

    Defendants.

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF
OBJECTIONS TO THE ORDER STRIKING EMIL W. HERICH
AS COUNSEL FOR DEFENDANT JOSEPH C. LOOMIS
AND RESPONDING TO THE COURT'S REQUEST FOR MORE INFORMATION**

Comes now Joseph C. Loomis, by counsel, and submits this Supplemental Memorandum

In Support Of His Objections To The Order Striking Emil W. Herich As Counsel For Mr.

Loomis And Responding To The Court's Request For More Information, stating as follows:

## I. INTRODUCTION

This supplemental brief addresses the issues pertaining to the order entered on September

3, 2010 by Judge Buchanan disqualifying Attorney Emil W. Herich from appearing on behalf of

Defendant Joseph C. Loomis in this matter, as well as additional allegations of wrongdoing on

the part of Mr. Herich recently heaped on him by Plaintiffs.

As an initial matter, the undersigned has concerns that this Court heard allegations in

open court from Plaintiffs' counsel that contained none of the critical background that is

necessary to appreciate the questions presented, and which caused this Honorable Court to

request supplemental briefing in the first place. Accordingly, this paper will attempt to

summarize several points at the outset to provide necessary context.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy PLLC

*First,* while unrelated to the question of Mr. Herich's disqualification, the Court expressed the view in open court that perhaps the FBI should be contacted if, in fact, the money Mr. Loomis had received from Plaintiffs has disappeared. The undersigned trusts that the Court has not formed a pre-conceived view of this case, and the reality is that Mr. Loomis is represented in Arizona by Mr. Herich and Gerald K. Smith of Lewis & Roca, LLP, an extremely reputable attorney that Mr. Kevin Kobbe, Ms. Dickinson's partner, has called a "dean of the bankruptcy bar." The Court surely understands that none of the attorneys in this case – Mr. Herich, Mr. Smith or the undersigned – would remain involved in a matter if they believed that they were aiding and abetting illegal conduct. In that regard, all of the money involved has been accounted for; Mr. Loomis has been deposed twice concerning it, and appropriate forms and schedules have been filed in the bankruptcy court. As far as the undersigned is aware, the money exists in known locations; it is just outside the bankruptcy estate (for example, as investments in closely-held entities).

*Second,* the initial disqualification order was improperly entered for reasons previously stated in the appeal of that order to this Honorable Court. Moreover, the undersigned (through bankruptcy counsel Mr. Smith) engaged Professor Geoffrey Hazard to review the briefs and submissions related to this issue. Professor Hazard has opined that the disqualification order was improvidently entered. Additionally, the federal bankruptcy court in Phoenix, Arizona similarly rejected Plaintiffs' claims that Mr. Herich should be disqualified from representing Mr. Loomis in what are essentially mirror image claims in that forum.

*Third,* Mr. Herich's activities have been in furtherance of his approved work as counsel for Mr. Loomis in what amounts to a mirror image case in the bankruptcy court. Plaintiffs attempted to disqualify him in Arizona and failed. Thus, the Court cannot rule in this matter without knowing more about Mr. Herich and his role in the two connected cases.

Mr. Herich is admitted to practice law in all of the United States District Courts in California and before the Ninth Circuit Court of Appeal. Exh. A, Declaration of Emil W. Herich, ¶1 ("Herich Dec."). With the exception of the proceedings before this Court, he has never been accused, much less been found to have committed, any ethical violation in his 27 years of practicing law. Herich Dec., ¶1.

Mr. Herich became involved in Mr. Loomis' bankruptcy case on or about August 3, 2010, when he filed an *ex parte* application for employment in the matter entitled *In re Joseph C. Loomis*, Debtor, Case No. 2:10-bk-01855 (D. Ariz. Bankr.). The *ex parte* application sought his employment with respect to the following matters:

> (a) A lawsuit filed by Intersections, Inc. and Net Enforcers, Inc. ("the Virginia action");
>
> (b) a potential arbitration proceeding against Debtor's former counsel in this case, Hunter, Humphrey & Yavitz, PLC ["HH&Y"], for legal malpractice;
>
> (c) potential avoidance/preference litigation against Debtor's former counsel in this case, Dunlap, Grubb & Weaver, PLLC; and
>
> (d) litigation to determine the enforceability/dischargeability of certain contractual noncompetition provisions and covenants not to compete contained in the contracts that form the basis for this case. [Herich Dec., ¶2 & Exh. A]

The first matter listed above *is literally this case* (collectively, all of these matters shall be referred to as the "Bankruptcy Cases"). This is because it was unknown whether, as of August 3, 2010, this case would be deemed settled, litigated to judgment in Virginia or litigated to judgment in Arizona. The other matters all involved this case as well and in particular the matter against HH&Y. A leading feature to the claim against HH&Y is the conduct and advice given to Mr. Loomis in connection with the threat by HH&Y to have counsel arrested if they did not return Mr. Loomis' computer, a matter that continues to plague Mr. Loomis' credibility with Judge Buchanan and the Court. Herich Dec., ¶3.

3

In short, all of the assignments for which Mr. Herich's employment was approved substantially overlap with matters related to this action or, in fact, *are this matter*. On or about August 10, 2010, Mr. Herich's *ex parte* application to be employed was approved by the bankruptcy court. Herich Dec., ¶4 & Exh. B. On or about August 6, 2010, Mr. Herich submitted an Application in this Court to Qualify As A Foreign Attorney Under Local Civil Rule 83.1(D) and Local Criminal Rule 57.4. Mr. Herich submitted this application because it was related to his employment for Mr. Loomis in the bankruptcy court. *See* Herich Dec., ¶5 & Exh. C. Specifically, Plaintiffs had previously obtained relief from the stay of bankruptcy to attempt to enforce a settlement of the Virginia action, and the motion to enforce the settlement clearly had implications with respect to the bankruptcy action in which he was and is currently employed as counsel for Mr. Loomis, including the fact that Plaintiffs had filed a proof of claim based on the settlement in the bankruptcy case. Herich Dec., ¶5. Other issues flow from this situation, such as a duty in the malpractice case against HH&Y to mitigate any damages that may be awarded in this matter should the Court find against Mr. Loomis.

On or about August 20, 2010, Plaintiffs made a motion to disqualify Mr. Herich as counsel for Mr. Loomis in this action. Specifically, the notice of motion sought entry of an order "disqualifying Emil W. Herich and Keats McFarland & Wilson, LLP ("KMW") from appearing as counsel on behalf of Defendant Joseph C. Loomis." Herich Dec., ¶6 & Exh. E. The ground for the motion was that the firm that Mr. Herich is "of counsel" to had allegedly previously represented Plaintiff Net Enforcers, Inc. ("NEI") in a matter "substantially similar" to the matter before this Court. No contention was ever made that Mr. Herich had ever personally represented Plaintiff NEI and, in fact, he has never represented that entity. Herich Dec., ¶6.

Mr. Loomis submitted an opposition to the motion to disqualify complete with declarations attesting to the fact that neither KMW nor Mr. Herich had ever represented Plaintiff

NEI on any matter in any way related to the action before this Court. Nevertheless, Judge

Buchanan heard the motion and on September 3, 2010, issued an order stating:

> For reasons stated from the bench, it is hereby ORDERED that plaintiff's Motion to Disqualify Emil W. Herich and Keats McFarland & Wilson, LLP from Appearing as Counsel on behalf of defendant Joseph C. Loomis is GRANTED.
>
> The Clerk shall strike Mr. Herich and Keats McFarland & Wilson as counsel of record.[1]   [Herich Dec., ¶7, Exh. F]

Mr. Herich's understanding of the disqualification order at the time it was issued was,

and still is, that he was barred "from appearing as Counsel on behalf of Joseph C. Loomis" in

this Court to the same extent as he would have been barred had he never submitted a *pro hac*

*vice* application. Herich Dec., ¶8. Mr. Herich did not understand then, nor does he understand

now, that the order prevented him from providing any legal services to Mr. Loomis relevant to

the issues in the bankruptcy court, particularly insofar as those issues overlap with those present

in this case. The disqualification order also did not purport to bar him from appearing in the

bankruptcy court, or from providing legal services to Mr. Loomis to the extent those services

were related to his employment in the bankruptcy case. Herich Dec., ¶8. It is also obvious that

the disqualification order did not prevent Mr. Herich from defending himself against allegations

that he was in violation of that order.

Mr. Herich's views were also influenced by proceedings in the bankruptcy court itself.

On or about August 17, 2010, Plaintiffs herein moved the bankruptcy court to reconsider its

order authorizing his employment on the same grounds urged before this Court when they sought

Mr. Herich's disqualification. Mr. Herich filed an opposition on the same grounds as those

which were filed on his behalf in this Court. On September 3, 2010, Plaintiffs filed supplemental

papers advising the bankruptcy court of the disqualification order issued by this Court. Herich

---

[1] Although the order purports to strike KMW's appearance, KMW had never been counsel of record for Defendant Joseph C. Loomis in this case. Herich Dec., ¶7 n.1.

Dec., ¶9.  On September 16, 2010, after a full-blown evidentiary hearing, the bankruptcy court

denied Plaintiffs' motion to reconsider the August 10, 2010 order authorizing Mr. Herich's

employment as counsel for Mr. Loomis in the aforesaid matters.  *See* Herich Dec., ¶9 & Exh. G.

On or about September 21, 2010, Joseph C. Loomis filed his Defendant's Objections to

Magistrate Judge's Decision on Nondispositive Matter and Request for Reconsideration By

District Court of Magistrate Judge's Ruling [FRCP 72a] with this Court.  *See* Docket No. 195.

On or about October 1, 2010, Mr. Loomis caused a motion for reconsideration of Judge

Buchanan's disqualification order to be filed with this Court, which was also referred to this

Court.  *See* Docket No. 201.  On or about October 29, 2010, the Objections to Judge Buchanan's

disqualification order came before this Court.  After denying Plaintiffs' motion to enforce the

purported settlement, the Court determined that the other two pending proceedings, including the

objections to the disqualification order, were "moot" because the stay of bankruptcy still applied

to the case.  Herich Dec., ¶10 & Exh. H (November 3, 2010 Order).

At that point, there were two rulings related to Mr. Herich's work for Mr. Loomis.  In

Virginia, Judge Buchanan had ordered that he could not "appear" in this action, and this Court

found that this ruling was "moot" for as long as the stay was in place.  In Arizona, meanwhile,

the bankruptcy court refused to rescind Mr. Herich's employment even though it knew about his

disqualification in this Court and even though the subject matter of the cases was substantially

similar.  The bankruptcy court took a different view of the issues related to imputed conflicts.

Herich Dec., ¶11.

Mr. Herich felt that he was entirely within his rights, and within the spirit of the two

disparate rulings, to work for Mr. Loomis on matters related to the subject matter of the

bankruptcy cases (and potential cases) for which his employment had been approved, challenged

and reapproved.  Herich Dec., ¶12.  As noted, this understanding, and therefore the good faith

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030

TEL 703.273.8898   FAX 703.273.8897

CAMERON / McEVOY
PLLC

basis for it, has been confirmed by one of the leading legal ethics experts in America, Geoffrey Hazard. *See* Exh. B, letter opinions and CV of Geoffrey Hazard.

On or about November 8, 2010, Plaintiffs filed an amended proof of claim for $14,000,000 in the Arizona bankruptcy case based on the exact same allegations made in this case. Herich Dec., ¶12 & Exh. I. Mr. Herich caused an adversary proceeding to be commenced in the bankruptcy action seeking to disallow Plaintiffs' claim against Mr. Loomis, and he also filed a counterclaim seeking to have their claim against Mr. Loomis equitably subordinated to those of other creditors on account of their bad faith tactics in this action including those related to the declaration they obtained from Mr. Leberer. Both Ms. Snyder and Mr. Leberer have direct personal knowledge of these matters. Mr. Herich also prepared a motion for summary judgment that will be heard on March 22, 2010, on the ground that the Amended Proof of Claim was not timely filed. Herich Dec., ¶12. As noted, Mr. Loomis has also contemplated, and intends to commence, an action in the bankruptcy court against his former counsel, HH&Y, for legal malpractice. Herich Dec., ¶12.

Mr. Herich also caused a separate adversary proceeding to be commenced against Plaintiffs in the bankruptcy court that sought a declaratory judgment that Mr. Loomis was not bound by certain covenants not to compete contained in the agreements that form the basis for the action in this Court (the "Restrictive Covenant Case"). Herich Dec., ¶13. A motion for summary judgment in the Restrictive Covenant Case was heard by the bankruptcy court and granted on January 18, 2011, over Plaintiffs' objections that Mr. Herich had been disqualified in the Virginia action. Herich Dec., ¶13 & Exhs. J-K.

As part of Mr. Herich's work on the above-referenced matters, he has felt duty-bound to investigate the potential claims of Mr. Loomis prior to filing them in the bankruptcy court and to assist Mr. Loomis to mitigate any damages that he can reasonably avoid. Herich Dec., ¶14. At

7

the time of the conduct complained of herein, there was substantial reason to believe that this

litigation would remain in Arizona and be litigated there, including but not limited to the matters

related to a motion for sanctions on the grounds of alleged spoliation. Herich Dec., ¶14. In this

regard, Plaintiffs herein had filed a motion for relief from stay; Mr. Loomis had opposed the

motion; and the matter had not been ruled upon by the bankruptcy court at the time of the

allegations now leveled against Mr. Herich (with the exception of the phone call set forth in

footnote 2). Accordingly, Mr. Herich felt that it was necessary and appropriate for him to

interview and communicate with certain witnesses in this case, such as Ms. Snyder and Mr.

Leberer, and he has always done so in what he believes is an appropriate, professional and

nonthreatening manner. Herich Dec., ¶14. Even now, moreover, Mr. Herich's approved work

necessarily requires him to in touch with many of the witnesses listed for the parties in this case.

*Fourth,* there is another practical reality to this situation. The present circumstances

present unique and novel facts. While the undersigned disagrees with the disqualification order,

the undersigned insisted that the work on the "Virginia case" and the work product submitted to

this Court would have to, at all times, reflect his independent judgment and independent efforts.

The undersigned made it clear that he would not participate in the case if there were any effort

undertaken that could result in him fairly being seen as a conduit for work performed by Mr.

Herich. Mr. Herich agreed to these terms, and the undersigned and his staff can attest to long

and sometimes grueling hours spent working on this matter.[2]

---

[2] Plaintiffs' attempts to castigate Mr. Herich, and now apparently the undersigned, appear to have no regulator. They have filed a "Second Supplemental Response to Joseph Loomis' Objections to Disqualification of Emil Herich and KWM" in which a witness (Mr. Leberer) indicates that Mr. Herich called him on February 25, 2011, and left a voicemail asking for a declaration from Sheilah Snyder that was needed for "Tim." The background of this episode is that the undersigned was putting together the Opposition to a Motion for Sanctions due the same day. He and his staff had spent considerable time talking with Sheilah Snyder and Mr. Herich about their respective declarations that needed to be filed with the Opposition. Ms. Snyder was not answering her phone, it was getting late, and during the course of talking to Mr. Herich about his declaration the undersigned mentioned that he had not received Ms.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
P.L.L.C.

The undersigned has substantial reason to believe that this course of action was more conservative than it needed to be. However, as this Court observed at the last hearing of this matter, the Court has never known the undersigned to "even come close to crossing the line" in some 20 years of practice. Indeed, and as an indirect measure of the way the undersigned's mode of operation is perceived by the legal community at large, the undersigned has previously been selected to represent the Arlington County Bar Association and was recently selected by the Board of Directors of the Fairfax County Bar Association to represent it in a hotly contested case. There is no doubt in the undersigned's mind that he has comported himself appropriately.

## II. THE DISQUALIFICATION ORDER WAS IMPROPER AND DEFENDANT'S OBJECTIONS THERETO SHOULD BE SUSTAINED.

As to the disqualification order, Defendant's objections should be sustained. Mr. Herich never previously represented Plaintiff Net Enforcers, Inc. ("NEI") and even Plaintiffs do not contend otherwise. Mr. Herich is "of counsel" to the firm Keats, McFarland & Wilson, LLP ("KMW"), which Plaintiffs have contended did previously represent NEI. However, KMW's named partner, Larry McFarland, a lawyer with 24 years of experience and an unblemished record of professional discipline, has previously provided a sworn declaration stating that KMW never represented NEI in connection with the stock sale transaction or any other matter at issue in this case. *See* Exh. C., Declaration of Larry McFarland, ¶5 ("McFarland Dec."). Plaintiffs have not provided one single declaration; they have not provided one single legal bill; and they have not provided one single iota of work product substantiating their allegation that KMW previously represented NEI on a matter substantially similar to the issues in dispute here.

---

Snyder's declaration. In an effort to aid his client, Mr. Loomis, Mr. Herich tried to call her to let her know that the undersigned needed her to get back to the undersigned or his staff, but he mistakenly dialed the number for Mr. Leberer. This is not misconduct.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Moreover, at the time of the underlying events related to the disqualification order, Mr. Loomis was the President, Chief Executive Officer and sole shareholder of NEI. Mr. Loomis has previously cited the Court to circuit court authority holding that, where the "new" client is a member of the management team of the "prior" client, disqualification is improper. *Christiansen v. United States District Court for Central Dist. Of California*, 844 F.2d 694, 698 (9th Cir. 1988). Plaintiffs have cited no published countervailing authority. Moreover, to the undersigned's knowledge, no controlling Virginia legal authority exists.

No lesser an authority than Professor Hazard, the leading scholar and author of numerous publications on legal ethics, has opined that there was no conflict of interest that warranted disqualification.[3] Specifically, Professor Hazard has opined:

> I have examined the relationship between the Keats firm and NEI. In essence, NEI conducts ongoing reviews to ascertain whether relevant intellectual property rights of third parties are being infringed. When NEI ascertains that such is the case, it advises the Keats firm and the firm sends out a communication to the suspected infringer on behalf of the third party, not on behalf of NEI. This arrangement does not result in NEI becoming a client of the Keats firm, but rather from time to time such a third party may become a client of the firm. The relationship between the Keats firm and NEI is that of two service-providers working together for the benefit of a third party, similar to that where a law firm and an accounting firm work together for a third party client.
>
> [*See* Exh. B, opinion letters of Professor Geoffrey C. Hazard, Jr. (and *curriculum vitae* attached thereto)].

The objections to the disqualification order should therefore be sustained.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy PLLC

---

[3] Professor Hazard was cited by Plaintiffs in their motion to disqualify Mr. Herich.

## III.   THE RECENT ALLEGATIONS OF WRONGDOING ON THE PART OF DEFENDANT AND HIS ATTORNEY ARE CONTRIVED AND DO NOT FORM A BASIS FOR DISQUALIFICATION OF COUNSEL OR ADVERSE ACTION.

### A.   Mr. Loomis' Purported Witness Tampering And Alleged Violation of The Protective Order Is A Red Herring Designed To Add Appeal To Meritless Arguments.

Although not in any way relevant to the issue of whether the objections to the disqualification of Mr. Herich should be sustained, Plaintiffs have used their Supplemental Response as an opportunity to further disparage Defendant Loomis.  This unfair attempt to malign him and Mr. Herich is unfortunate and improper.

On or about October 30, 2010, Judge Buchanan, without holding an evidentiary hearing on the matter or otherwise taking evidence, entered a protective order purporting to prohibit Mr. Loomis and his then-Arizona counsel from contacting "Plaintiff, Plaintiffs' employees, and Plaintiffs' witnesses."  At the time the order was entered, there was no witness list on file, no specific findings were made as to any one of the hundreds of persons who could possibly be within the scope of the order, and there was no attempt whatsoever to "narrowly tailor" the order so that the First Amendment rights of association of Mr. Loomis *and* the persons subject to "protection" would not be infringed.  *See* Docket Nos. 236 and 248 (Motion To Vacate Protective Order and Opposition to Motion for Sanctions, respectively).  (The Court's attention is respectfully directed to these two filings by Mr. Loomis for a full discussion of why the Protective Order cannot possibly withstand scrutiny under controlling law).

Plaintiffs' current allegations of wrongdoing on the part of Mr. Loomis involve his responding to a contact from Ms. Sheilah Snyder, a longtime personal friend that, at the time of the contact, was neither a "plaintiff" nor a "plaintiff's employee," albeit she was listed on *both* Plaintiffs' and Defendant's witness lists *several weeks after the fact.*  Plaintiff also contends that

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

11

Mr. Loomis contacted Mr. Leberer (also not a "plaintiff" or a "plaintiff's employee" though he is an individual who appears on both Plaintiffs' and Defendant's witness lists). This contact consisted of a single text message and a single voicemail about returning some ski equipment to him (a helmet and gloves). Mr. Leberer, also a former close personal friend of Mr. Loomis, left the ski equipment at Mr. Loomis' home when he last stayed there (before the events in question). This is the entirety of Defendant Loomis' "witness tampering" and "violations of court orders."

In fact, Mr. Herich's contacts with these individuals stemmed from a desire to steer clear of further trouble between Mr. Loomis and this Court by keeping Mr. Loomis out of the equation while Mr. Herich prepared to handle the Bankruptcy Cases. The contacts by Mr. Herich were clearly related to the Bankruptcy Cases and to the real possibility that this case could have been tried in Arizona. Mr. Herich's gathering of the declarations in question was not requested in advance by the undersigned, and Mr. Herich simply believed that he was discharging his duties as bankruptcy counsel to Mr. Loomis by gathering them for potential use at a future date.

### B. The Use Of An Indemnity Agreement Drafted Before Mr. Herich Was Ever Admitted In This Case Does Not Involve Wrongdoing And Was, In Fact, Designed To Allow Witnesses To Speak Honestly And Freely.

Plaintiffs assert as primary grounds for the continued disqualification of Mr. Herich the fact that Mr. Loomis, through an attorney, Mr. Matthew LaVelle, Esq. provided a release and indemnity agreement to Mr. Leberer and Ms. Snyder. Plaintiffs falsely contend the indemnity agreement was provided "to indemnify Mr. Leberer if he did not testify for NEI at trial." Plaintiffs also contend that somehow Mr. Herich attempted to use the indemnity agreement to cause Mr. Leberer to "disappear" and not testify at trial.

First, Mr. Herich did not prepare or obtain the execution of the release and indemnity agreement. It was prepared by Mr. LaVelle before Mr. Herich even entered an appearance in

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy PLLC

case.[4] While Mr. Loomis did sign the agreement, he had no direct contact with Mr. Leberer concerning the agreement or its execution. *See* Exh. D, Declaration of Matthew LaVelle, ¶10 ("LaVelle Dec."). Second, the sole reason that the indemnity agreement was necessary was that Plaintiffs had obtained a severance agreement from Mr. Leberer and Ms. Snyder *that required them to "cooperate" with Plaintiffs in this litigation or face a lawsuit for breach of contract.* Plaintiffs have used this severance agreement to pressure Mr. Leberer to sign declarations written by Plaintiffs' counsel. As Mr. Leberer said in a subsequent signed declaration:

> In or about October 29, 2009, I gave a declaration in this case. My declaration was prepared by counsel for Intersections, Inc. and Net Enforcers, Inc. (Plaintiffs). At the time I signed the declaration, I felt great pressure to do so because it was my impression and understanding that I needed to cooperate or my severance package from NEI would be threatened or not provided and I had no way of supporting myself financially.
>
> [Exh. E, Declaration of Matthew Leberer dated Nov. 12, 2010 at ¶3 ("2d Leberer Dec")]

Mr. LaVelle provided the Release and Indemnity Agreement to Mr. Leberer. It was obtained solely so that Mr. Leberer would not feel any pressure from Mr. Loomis or Plaintiffs' counsel and could and would therefore provide truthful testimony in this case. *See* LaVelle Dec., ¶10. That this was, in fact, its purpose is clear from the language of the one page long Release and Indemnity Agreement itself, which in bold letters states:

> **This Release and Indemnity Agreement is provided so that Mr. Leberer may provide complete, truthful and accurate testimony in connection with existing or future litigation in**

---

[4] As for Mr. LaVelle, the Court will learn that he is one of two partners in an AV-rated law firm in Phoenix, Arizona, that his involvement in this matter is very limited and that he operated in good faith at all times. Indeed, the only reason he had any contact with Ms. Snyder and Mr. Leberer was precisely because Mr. Loomis was trying to stay out of harm's way with respect to any claim that he was in violation of any orders. A declaration provided by Mr. LaVelle that further details his involvement is attached hereto as Exh. D. The undersigned has spoken to Mr. LaVelle and can represent that he appears to be an individual of the highest ethics. Mr. LaVelle and his partner were also vouched for by Mr. Smith of Lewis & Roca.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
P.L.L.C.

> **which Mr. Loomis is or may become involved.  Nothing in this agreement shall be construed in any way to prevent Mr. Leberer from providing truthful information, to any person, at his own discretion.**

[LaVelle Dec., ¶11 & Exh. A]

Indeed, no lesser an authority than Professor Geoffrey Hazard, who literally wrote the book on legal ethics, agreed that providing an indemnity agreement to permit reluctant witnesses to speak with Mr. Loomis' counsel and to provide truthful testimony did not violate any ethical rules.  Professor Hazard has opined:

> However, it is often the case that third-party witnesses who get brought into litigation are reluctant and afraid, and it is correspondingly legitimate to try to calm their fears.  Offering to provide help if they get in trouble can have that effect.  It is my opinion giving that help in the form of an indemnification agreement is within the reasonable gauge of reasonable means for that purpose.

> [*See* Exh. B, Hazard opinion letters]

Thus, the acquisition of the Release and Indemnity Agreement, which Mr. Herich did not have any role in obtaining in any event, cannot be a proper basis for his disqualification.

### C.  The Alleged Wrongdoing On The Part Of Mr. Herich's Representation Of Mr. Loomis In Alleged Violation of the September 3, 2010 Disqualification Order Cannot Form A Proper Basis to Overrule The Objections To That Order.

Mr. Loomis is entitled to counsel in Arizona, and the Arizona court has ruled that Mr. Herich may be one of those counsels.  Plaintiffs do not like it, but that is how it is.  It is unfair and inappropriate to castigate Mr. Herich with contrived allegations of wrongdoing based on his honest efforts to provide zealous representation to Mr. Loomis within the approved ambit of the Bankruptcy Cases which include all sub-issues that flow therefrom.

In this regard, Plaintiffs attack Mr. Herich for allegedly representing Mr. Loomis in this case in violation of this Court's September 3, 2010 order which, by its terms, disqualified him

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
PLLC

from appearing as counsel for Defendant in this action.  Plaintiffs assert that the violation

occurred because Mr. Herich met with witnesses (Mr. Leberer and Ms. Snyder) in Arizona and

obtained declarations from them for use in this case in Arizona.  Plaintiffs contend that although

the declarations were obtained in Arizona they were clearly intended for use in this case because

the captions on the declarations reference this action.  Plaintiffs incorrectly contend that the fact

that Mr. Herich is litigation counsel for Mr. Loomis in his pending Arizona bankruptcy case is of

no moment because neither the witnesses nor the declarations had any bearing on that

proceeding.  Plaintiffs also incorrectly contend that the Arizona bankruptcy court has never

addressed the conflict of interest issue, except in relation to Mr. Herich's disclosures.

Plaintiffs' arguments are without merit and are stretched unreasonably thin.  Plaintiffs

obtained the disqualification order in this Court on September 3, 2010.  Defendant Loomis

promptly challenged the order by timely filing a motion for reconsideration of the order and by

filing written objections with this Court.  On October 29, 2010, this Court heard multiple

motions pertaining to this matter.  The Court first took up Plaintiff's motion to enforce a

purported settlement of the case.  The Court denied the motion.  Because the bankruptcy court

had granted relief from the stay of bankruptcy only to determine the enforceability of the

settlement, this Court ruled all remaining motions were "moot."  While Plaintiffs contend that

the Court's order left in effect the disqualification of Mr. Herich, a legitimate question is raised

as to how an attorney can be found in violation of an order expressly found to be moot,

particularly when the attorney's actions are undertaken under color of another court's order

rejecting the claim that the attorney should be disqualified as to the same subject matter.

Next, Plaintiffs purposefully downplay the significance of the pending Arizona

bankruptcy litigation by arguing that it is entirely separate from this case and by incorrectly

stating in a footnote that "Mr. Herich sought information related to this case and Mr. Leberer had

no information related to the bankruptcy case." This allegation is completely absurd. As Mr.

Herich states in his declaration, and as is patently obvious from the nature of the approved

bankruptcy employment itself, Mr. Herich's employment in the bankruptcy case included work

directly related to this case. Herich Dec., ¶¶ 2-3. In this regard, at the time that the declarations

were obtained from Mr. Leberer, Plaintiffs had filed a $14,000,000 proof of claim in the

bankruptcy case based on the same exact allegations as those that form the basis for this action

here. Herich Dec., ¶ 12 & Exh. I. Is that not the same case? Beyond this glaring problem with

Plaintiffs' assertions, there are clearly related claims and defenses, and potential claims and

defenses, emanating from the penumbra of this case that also are a part of the Bankruptcy Cases.

Moreover, at the time the questioned declarations were obtained, this action was stayed

and, while it is true that Plaintiffs had filed a motion for relief from stay, it is also true that Mr.

Loomis had opposed the motion for relief from stay. The bankruptcy court had not yet ruled on

the motion and Mr. Loomis and his counsel had at least a good faith belief that the motion would

be denied. Had the then-pending motion for relief from stay been denied, all of Plaintiffs'

claims, including the spoliation motion supported in large part by the first Leberer declaration,

would have been heard in Arizona. Moreover, Mr. Herich filed in the Arizona bankruptcy court

objections to Plaintiffs' $14,000,000 proof of claim which is/was based on the same claims as

those that are pending before this Court and a counterclaim seeking, *inter alia*, equitable

subordination of Plaintiffs' claim based on their conduct in obtaining the Leberer declaration.

Herich Dec., ¶ 12. These Arizona proceedings required Mr. Herich to meet with and to obtain

declarations from potential witnesses, including Mr. Leberer and Ms. Snyder.

Finally, Plaintiffs' allegation that the Arizona court did not address the conflict of interest

issue is simply not true. In moving for reconsideration of Mr. Herich's employment in the

bankruptcy case, Plaintiffs contended that "the Debtor has failed to disclose the details regarding

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
PLLC

16

Mr. Herich's connections with NEI, including the fact that Mr. Herich's law firm currently represents NEI." At the hearing on the motion for reconsideration, Plaintiffs' counsel informed the bankruptcy court of the disqualification order. As recently as January 12, 2011, in arguing against a motion for summary judgment brought by Mr. Loomis in his action for declaratory relief against Plaintiffs as to the continued viability/enforceability of covenants not to compete, Plaintiffs again raised the disqualification argument. *See* Exh. F, Defendants' Memorandum of Points and Authorities In Opposition to Debtor Joseph C. Loomis' Motion for Summary Judgment, at note 1. Despite these arguments, Mr. Herich remains litigation counsel for Defendant Loomis in the Arizona bankruptcy case.

Based on the evidence presented, the Court can and should conclude that Mr. Herich's meeting with witnesses in Arizona and obtaining declarations from them in Arizona is not a proper basis for sanctions or disqualification. In this regard, Professor Hazard has concurred and stated:

> This responds to your inquiry as to whether the disqualification of Mr. Herich in the Virginia case also precludes him from acting in the Arizona bankruptcy case.
>
> In my opinion it does not. The disqualification was of his right to appear pro hac vice in the U.S. District Court in Virginia, not a disqualification in his admission to the bar in his state of residence, California, or in courts where he has been admitted, such as in Arizona. There is serious doubt whether a court could properly disqualify a lawyer in another jurisdiction as well as in matters before the instant court. The general practice is that, if more extensive disqualification is to be accomplished, a further proceeding would be required, for example, in this case in Arizona.

[Exh. B, Hazard opinion letters]

While the declarations that Mr. Herich obtained contained a caption of the Virginia action, this is not evidence of improper conduct. At the time of the acts, Mr. Herich or his secretary used a template for a declaration his office had previously used in the Virginia action.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

The undersigned understands that this was inadvertent and Mr. Herich did not focus on the caption being used. At the time the declarations were obtained, the Virginia action was stayed and Mr. Herich could have used a caption for the Arizona case or no caption at all. Mr. Loomis submits however, that the use of the wrong caption should not be a basis for disqualification. Furthermore, Mr. Herich has explained that his work as bankruptcy counsel for Mr. Loomis involves not only asserting claims within the scope of his employment, but also mitigating potential damages to Mr. Loomis. As indicated by Professor Hazard, it cannot be said that carrying out such duties in a forum where he is admitted violates an order striking his appearance from this case. What matters is substance, not accidental form.

### D. The "Ambush" of Mr. Leberer And/Or Coercion By Subpoena Allegations Do Not Warrant Disqualification.

Plaintiffs contend that in October or November of 2010 (while this case was stayed and/or about the time that Plaintiffs had filed a $14,000,000 proof of claim in the bankruptcy court based on the same allegations they have made in this case), Mr. Herich approached Mr. Leberer at a public restaurant and identified himself as Mr. Loomis' counsel. Plaintiffs paint this meeting as an "ambush" because, according to them, Ms. Snyder, Mr. Leberer's former girlfriend, had "previously asked Mr. Leberer to meet with one of Mr. Loomis' attorneys but Mr. Leberer refused." Plaintiffs go on to state that "ultimately, Mr. Herich 'threatened' Mr. Leberer with a subpoena to convince Mr. Leberer to meet with him to discuss the Spoiliation Motion Declaration which Mr. Leberer had signed and which Plaintiffs had filed in this Court in support of their motion for sanctions related to Mr. Loomis' [alleged] intentional destruction of evidence." Docket No. 235, p. 6.

When stripped of its colorful language, this charge of "wrongdoing" is reduced to the fact that Mr. Herich stopped by a restaurant at the request of Ms. Snyder and introduced himself to

Ms. Leberer.  In this regard, the statement that Mr. Leberer had previously refused to meet with

Mr. Loomis' counsel is demonstrably false.  Mr. Leberer, by his own admission, had met with

Mr. LaVelle months before and had discussed with him the declaration that Mr. Leberer had

given to Plaintiffs.  *See* Exh. G, Declaration of Matthew Leberer dated February 16, 2011, at ¶2

("3d Leberer Dec.").

     Moreover, the meeting was hardly an ambush.  As Ms. Snyder explained in her

declaration:

> Subsequently, I was contacted by Emil Herich who identified
> himself as Joseph's [Loomis] lawyer.  Mr. Herich was interested in
> meeting Matthew to discuss getting a declaration from him.  Mr.
> Herich said that he would be in town and I told him that he should
> meet Matthew and me, and I told him when and where we would
> be dining.  Mr. Herich said he would stop by to say hello.  I
> informed Matthew that Mr. Herich was coming into town and that
> I had asked him to come by the restaurant.
>
> Mr. Herich did come by the restaurant.  He introduced himself to
> us…Mr. Herich told Matthew that a prior declaration that Matthew
> had given against Joseph Loomis was a problem for Joseph.  Mr.
> Herich said he thought the declaration was not accurate and he
> asked Matthew if he could call him to discuss the declaration.
> Matthew said yes.  Mr. Herich said he did not want Matthew to be
> uncomfortable and that all he wanted was for Matthew to be
> truthful and set the record straight.
>
> [Exh. H, Declaration of Sheilah Snyder, ¶¶7-8 ("Snyder Dec.")]

     The alleged coercion by subpoena argument is similarly flawed.  The fact of the matter is

that, at times, Mr. Leberer was enthusiastic about helping Mr. Loomis and then he would

suddenly change his mind and become reluctant.  At some point, during a meeting at Ms.

Snyder's home, Mr. Leberer questioned Mr. Herich as to his alternatives to giving a declaration.

Mr. Herich told Mr. Leberer that, in that case, that "he" or "we" would try to subpoena him to

testify at a deposition.  Herich Dec. ¶18; Snyder Dec. ¶ 9.  In fact, Mr. Leberer may well be

deposed in the Bankruptcy Cases on a forward-looking basis.

Most importantly, neither Plaintiffs nor Mr. Leberer state, suggest or in any way imply that Mr. Leberer gave a false declaration on account of the threat of a subpoena. Second, the statement by Mr. Herich was not coercion, it was the truth. Mr. Leberer had given (or Plaintiffs had obtained) a misleading declaration that was the principal support for Plaintiffs' motion for sanctions based on alleged spoliation. Had Mr. Leberer not provided that declaration, Mr. Loomis would have certainly requested and been allowed to subpoena Mr. Leberer for a deposition. Moreover, telling a third party witness that they do not need to provide a declaration, but if they elect not to do so they will be served with a subpoena and deposed, is a common and accepted practice.

Plaintiffs, however, attempt to make the truthful statement by Mr. Herich into "misconduct" by contending that, because Mr. Herich was no longer counsel of record in the Virginia action, "he no longer had the authority to subpoena Mr. Leberer." This argument adds nothing to Plaintiffs' claims for multiple reasons, including: 1) the Virginia action was stayed and Mr. Herich was counsel of record in the Arizona action with the complete authority to issue a bankruptcy court subpoena as to Mr. Leberer and 2) in this regard, Mr. Loomis had filed an adversary proceeding in the Arizona bankruptcy case that included a claim for equitable subordination based in part on the original declaration of Mr. Leberer, making a subpoena to depose him in that case appropriate. Moreover, even if Mr. Herich could not have issued a subpoena (which he clearly could in his capacity as bankruptcy counsel for Mr. Loomis), Mr. Loomis could have sought leave to do so through the undersigned. In sum, the truthful statement that Mr. Loomis would attempt to subpoena Mr. Leberer for a deposition if he did not want to provide a truthful declaration cannot be the proper basis for a disqualification of Mr. Herich.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy P.L.L.C.

In contrast, the Court should consider the coercion placed on Mr. Leberer by Plaintiffs. As Ms. Snyder has stated in recounting a conversation with Mr. Leberer where he explained to her his sudden motivation to provide still another declaration for Plaintiffs' counsel:

> Within the past two weeks, I saw Matthew Leberer. He told me that he had been afraid to make any changes to the Declarations provided to him by Intersections, Inc. and Net Enforcers, Inc. because he was afraid of making them upset if (a) he did not simply sign whatever they provided him or (b) contradicted anything he had previously stated for them. Specifically, he felt required to do what they wanted him to do because of his Termination Agreement. Likewise, he said he had been careful to make changes in the Declarations that were presented to him by Mr. Herich so that they would not hurt Intersections, Inc. or Net Enforcers, Inc.
>
> [Snyder Dec., ¶ 12]

### E. The Alleged Instruction To Mr. Leberer To Not Speak To Plaintiffs' Counsel Does Not Support a Disqualification.

In his most recent declaration that he provided to Plaintiffs' counsel, Mr. Leberer states:

> At Mr. Herich's suggestion, I met with him and Ms. Snyder at her apartment on November 12, 2010. We met for approximately five to six hours. We discussed the Virginia litigation, and Mr. Herich told me that I did not have to talk to counsel for Intersections or NEI because Joe and I had entered into an Indemnity Agreement in July 2010.
>
> [3d Leberer Dec., ¶ 9]

Although Mr. Leberer also states in his declaration that he signed a declaration at the request of Mr. Herich because Mr. Herich indicated there were ambiguities in his prior declaration and he could be accused of lying if he testified at trial (3d Leberer Dec., ¶ 12), Plaintiffs contend that the foregoing testimony establishes that Mr. Herich was attempting to cause Mr. Leberer to "disappear" and not testify at trial.

In fact, Mr. Leberer is again being misleading in his declaration and Mr. Herich was not doing anything remotely dishonest or unethical.  As both Mr. Herich and Ms. Snyder explain in their declarations, the conversation in question arose after Mr. Leberer had signed a declaration and provided it to Mr. Herich.  Mr. Leberer and Ms. Snyder were discussing the declaration and Mr. Leberer stated that he was very concerned that Plaintiffs' counsel, Ms. Dickinson, would be upset about it and would certainly call him.  Mr. Leberer told Mr. Herich he did not want to speak further with Ms. Dickenson at all.  He asked Mr. Herich if he was required to do so.  Mr. Herich told him that he was not required to speak to Plaintiffs' counsel if he did not want to do so.  Mr. Leberer then asked whether NEI could sue him for providing the declaration.  Mr. Herich stated that if it happened, Mr. Loomis had agreed to indemnify him.  Herich Dec., ¶18; Snyder Dec., ¶10.  Mr. Herich never said anything to Mr. Leberer about not testifying at trial.  Snyder Dec., ¶10.

## IV.  CONCLUSION

For all of the foregoing reasons, Mr. Loomis' objections to the order disqualifying Attorney Herich should be sustained.  In the alternative, and if the Court believes that disqualification of Mr. Herich is appropriate, the undersigned would request future guidance as to what this Court would consider improper practice by Mr. Herich given the reality that another federal court has rejected attempts to disqualify him from the subject matter of this very case.  In all cases, Mr. Loomis seeks such other and further relief as justice may require.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

Respectfully submitted,

/s/_____

Timothy J. McEvoy, VSB No. 33277
CAMERON McEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
Counsel for Defendant, Joseph C. Loomis

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2011, I have filed a true and correct copy of the foregoing with the Clerk of Court via the CM/ECF efiling system which will send notification of this filing to the following counsel of record:

Tara Lee, Esquire
Ryan C. Berry, Esquire
DLA Piper LLP
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Counsel for Plaintiffs

David Clarke, Esquire
Michelle J. Dickinson, Esquire
Melissa R. Roth, Esquire
DLA Piper LLP
6225 Smith Avenue
Baltimore, Maryland 21209
Counsel for Plaintiffs

And Via Overnight to:

Ms. Jenni Loomis
212 Esquire Lane
Cary, North Carolina 27513
(919) 280-8251
Defendant *Pro Se*

/s/
_____
Timothy J. McEvoy, VSB No. 33277
CAMERON MCEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
Counsel for Defendant, Joseph C. Loomis

24